[S. F. No. 1870.   Department Two.—June 7, 1900.]

JOHN W. MACKAY and R. V. DEY, Trustees, etc., Appellants, v. CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

TAXATION—BONDS OF FOREIGN RAILROADS—DOMICILE OF TRUSTEE—SITUS. Bonds of foreign railroads payable in the city of New York, which were the property of a deceased resident of this state, and were distributed by the superior court to trustees named in the will, are taxable at the domicile of the trustees; and where only one of the trustees is a resident of this state, and the nonresident trustee has the bonds on deposit in the city of New York, in the joint names of both of the trustees, are taxable in this state only as to the undivided half thereof legally owned by the resident trustee.

ID.—INTEREST OF NONRESIDENT TRUSTEE.—The interest of the nonresident trustee in the bonds is not "property in the state" within the meaning of the constitution of California, and cannot be taxed in this state.

ID.—INTEREST OF RESIDENT TRUSTEE—IDENTITY OF BONDS—CONTROL OF LOCAL AGENT FOR INVESTMENT.—The interest of the resident trustee in the same identical bonds which had been the property of the estate of the deceased owner, and which are on deposit in New York in the name of both trustees, is taxable in this state, and does not fall within the rule that where credits are in the possession and control of a local agent in another state, who holds them for the purpose of transacting a permanent business of investment and reinvestment therein, such credits have a local situs in that state.

ID.—PAYMENT UNDER PROTEST—RECOVERY OF TAXES ASSESSED TO NON-
RESIDENT TRUSTEE.—Where the entire legal interest in such bonds
was assessed in this state, and the taxes were paid under pro-
test, the taxes on the half interest in the bonds legally owned
by the nonresident trustee may be recovered back at suit of
both trustees.

ID.—PROTEST AGAINST ENTIRE TAX—SUFFICIENCY TO SUSTAIN—RECOVERY
OF PART.—Where the protest specified that the bonds were bonds
of foreign corporations held in New York by a trustee who was
a nonresident of this state, it sufficiently showed that the whole
assessment was void as to such trustee; and the fact that the
protest was against the entire tax, and not against the interest
of the nonresident trustee therein does not preclude the re-
covery back of his undivided interest. The greater protest in-
cluded the less; and the protest was a substantial compliance
with the statute.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order denying a
new trial.   William R. Daingerfield, Judge.

The facts are stated in the opinion.

Lloyd & Wood, for Appellants.

Though taxation of the bonds was proper during administra-
tion (*Mackay v. San Francisco*, 113 Cal. 392), yet after distribu-
tion of the estate to the trustees, while they are in the custody
and control of a nonresident trustee, they are not taxable in this
state.   They are not "property in the state" within the meaning
of the constitution.   (Const., art. XIII, sec. 1.)   Whenever the
state loses sovereignty, it loses the power of taxation.   (*McCul-
loch v. Maryland*, 4 Wheat. 429; *Johnson v. Oregon City*, 3 Or. 13;
*People ex rel. Jefferson v. Smith*, 88 N. Y. 576; *Goldgart v. Peo-
ple*, 106 Ill. 25, 29; *People v. Ogdensburgh*, 48 N. Y. 310; *People
v. Gardner*, 51 Barb. 352; *Herron v. Keeran*, 59 Ind. 472; 26
Am. Rep. 87; Burroughs on Taxation, sec. 45; *Catlin v. Hull*,
21 Vt. 158; *Estate of Romaine*, 127 N. Y. 80.)   The interest of
Mackay is certainly not "property in the state." (*Trustees etc.
v. City Council of Augusta*, 90 Ga. 634, 648; *State v. Matthews*,
10 Ohio St. 431; *Latrobe v. Baltimore*, 19 Md. 13; *Baltimore v.
Stirling*, 29 Md. 48; *Foreign-held Bond Cases*, 15 Wall. 300.)

Franklin K. Lane, City and County Attorney, and W. I.
Brobeck, for Respondents.

The bonds in question are subject to the taxing power of this state. (*Mackay v. San Francisco*, 113 Cal. 392; *People v. Park*, 23 Cal. 139; Desty on Taxation, 326-28, 355, 356; Burroughs on Taxation, secs. 41, 43, 50; Cooley on Taxation, 22, 23, 79, 271; *Kirtland v. Hotchkiss*, 100 U. S. 491, 498; *Delaware R. R. Tax Case*, 18 Wall. 206-28; *Farrington v. Tennessee*, 95 U. S. 679; *Murray v. Charleston*, 96 U. S. 432; *Hartman v. Greenhow*, 102 U. S. 672; *Matter of James*, 144 N. Y. 6; *Seward v. Rising Sun*, 79 Ind. 351; *Bradley v. Bauder*, 36 Ohio St. 28; 38 Am. Rep. 547; *People v. Bradley*, 39 Ill. 144; *Commonwealth v. Gloucester etc. Co.*, 98 Pa. St. 105; *Finch v. York Co.*, 19 Neb. 52; 56 Am. Rep. 741; *Johnson v. Oregon City*, 2 Or. 327; 3 Or. 13; *Arapahoe County Commissioners v. Cutler*, 3 Colo. 349; *State ex rel. etc. v. Gaylord*, 73 Wis. 317; *Hunter v. Board of Supervisors*, 33 Iowa, 376; 11 Am. Rep. 132; *Lewis v. County of Chester*, 60 Pa. St. 325.) The title and possession of a joint trustee extends to the entire property held jointly, and the possession of one trustee is the possession of the other; and the trust must be jointly executed. (Civ. Code, sec. 2268; Perry on Trusts, secs. 343, 415, 416; *Saunders v. Schmaelzle*, 49 Cal. 59; *Learned v. Welton*, 40 Cal. 349; *People ex rel. Day v. Barker*, 135 N. C. 656; *People v. Coleman*, 42 Hun, 585; *Sloo v. Law*, 3 Blatchf. 459; *Green v. Miller*, 6 Johns. 39; 5 Am. Dec. 184; *Fuller v. O'Neil*, 69 Tex. 349; 5 Am. St. Rep. 591; *Taylor v. Hopkins*, 40 Ill. 442; *Berger v. Duff*, 4 Johns. Ch. 368; *Crewe v. Dicken*, 4 Ves. 97.)

COOPER, C.—This is an appeal from a judgment in favor of defendants and from an order denying the plaintiffs' motion for a new trial. The action was brought to recover twenty-eight thousand four hundred and forty-five dollars taxes paid by plaintiff under protest and claimed to have been illegally assessed. Theresa Fair died testate in September, 1891, being at said time a resident of the city and county of San Francisco, and leaving a will in which plaintiffs were named as executors and trustees. In October, 1891, the will was admitted to probate in the city and county of San Francisco, and plaintiffs appointed executors thereof. Among the assets of the estate were certain bonds of the Southern Pacific Railroad Company of Arizona, and certain other bonds of the West Shore

Railroad Company of New York, of the aggregate value of one million two hundred and eighty-two thousand dollars. In August, 1894, the administration of the estate was closed and a decree of final distribution entered, whereby the said bonds, with certain other real and personal property, were distributed to plaintiffs as trustees, under and in pursuance to the terms of the will. At the time the decree of distribution was made Mackay was and has continued to be a resident of the state of Nevada, but has lived and transacted business during the greater part of the time in New York City, while Dey was and is a resident of the city and county of San Francisco. The bonds were, at the time they were assessed, and have since been kept in New York City, in the American Exchange Bank, deposited in the joint names of plaintiffs as trustees. The trust estate consists of other real and personal property situate and kept in California. The beneficiaries under the trust reside in New York, and the interest upon the bonds, as well as the principal, is payable in that city.

The assessor of the city and county of San Francisco assessed the bonds as being property owned by and in the possession of plaintiffs, as trustees, on the first Monday in March, 1895. The question to be here determined is the situs of the bonds for the purposes of taxation.

The bonds are evidences of indebtedness due or to become due from the Arizona corporation and the New York corporation to the plaintiffs as trustees and as the legal owners thereof. The weight of authority is that a debt so due or to become due should be taxed at the place of residence of the creditor or owner, and that the situs of the debt is that of its owner, and that it is not property in the state of the debtor. (Burroughs on Taxation, sec. 41; *San Francisco v. Lux*, 64 Cal. 484; *State Tax on Foreign-held Bonds*, 15 Wall. 320.) The rule is well stated by Mr. Justice Field with his usual clearness in the latter case, and is thus given: "But debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense; they are obligations of the debtors, and only possess value in the hands of the creditors. With them they are property, and in their hands they may be taxed. To call debts property of the debtors is simply to misuse terms. All the property there

can be in the nature of things in debts of corporations belongs to the creditors to whom they are payable, and follows their domicile, wherever that may be. The debts have no locality separate from the parties to whom they are due."

Judge Cooley, in his work on Taxation, second edition, page 372, says: "The general rule that personalty is to be assessed to the owner where he has his domicile has been mentioned. This rule is applicable to bonds and other choses in action, though the debtor resides out of the state, and though they are secured by mortgage on lands out of the state."

In *Mackay v. San Francisco*, 113 Cal. 397, these plaintiffs, as executors of the will of Theresa Fair, deceased, contended that the bonds upon which the taxes were levied in this case, or a portion of them, were not property within the state, and not taxable to the estate of Theresa Fair, deceased. But it was held that the bonds had their situs in San Francisco, and were there taxable. The court said: "The bonds in question were held here. Their situs was the city and county of San Francisco. They could not be taxed in Arizona, where the property mortgaged to secure them is situated." In that case the court followed the general rule sustained by the weight of authority. The rule is, that the personal property of decedents is taxed at the domicile of the decedent. As said by law-writers: "During the settlement of the estate it must have a situs somewhere, and none so appropriate as where the decedent lived." In fact, the appellants seem to agree with what has thus far been said, for in their brief they use this language: "When Theresa Fair died these bonds had their situs within the state, because she had been a resident, and it is not now questioned that they continued to be liable to taxation in the state during the administration of the estate."

The discussion is, therefore, narrowed to the proposition as to whether the same rule applies to plaintiffs as trustees after the estate had been closed and the property distributed to them as such trustees. If the property had been distributed directly to the heirs and possession given to them, they being nonresidents of the state and the bonds being out of the state, there would be no doubt but that the state of California could no longer tax it. But here we have the property which during the lifetime of Mrs. Fair had its situs in San Francisco. After her death

its situs continued here during administration until August, 1894. Did its situs then change? It is conceded that plaintiffs were appointed trustees under the will of Mrs. Fair, and the decree distributed the property to them as such trustees. The plaintiffs therefore, as trustees, were the owners of the legal title to the property at the time of the assessment.

The general rule is, that personal property in the hands of a trustee is to be assessed to him at his place of domicile. (Cooley on Taxation, 2d ed., 375; Burroughs on Taxation, 224.)

The reason given is that the trustees are the representatives of the fund, and the fund contributes to the support of the state through the trustees. The property under this rule could not be assessed to the plaintiffs in San Francisco, because that is the place of domicile of only one of them. It could not be assessed to them in Nevada, because that is the place of domicile of only one of them. The property is not in California nor in Nevada, but, being intangible personal property, is said by defendants to follow the person of the owner. If it follows the person of the owner, it could not, as matter of law, be said to follow the person of the plaintiff who resides in California and to forsake and refuse to follow the person of the plaintiff who resides in Nevada. It follows one as much as the other, and its situs is that of the place of domicile of its owners. Therefore, on the first Monday of March, 1895, the plaintiff Mackay was a resident of Nevada and was the owner of an undivided one-half of the bonds, and, neither the property nor the owner being within the jurisdiction of the state, the assessment, as to Mackay's interest, was void. The language of the constitution is: "All property in the state . . . . shall be taxed in proportion to its value."

The interest of Mackay in this property was not "property in the state" within the meaning of the constitution. It was said by Chief Justice Marshall in *McCulloch v. Maryland*, 4 Wheat. 429: "All subjects over which the sovereign power of a state extends are objects of taxation, but those over which it does not extend are upon the soundest principles exempt from taxation. This proposition may almost be presumed self-evident."

It was held by the court of appeals of Maryland in *Mayor etc. of Baltimore .v. Stirling,* 29 Md. 48, that where property was held by trustees who resided one in Baltimore city and one in Baltimore county that the property should be taxed in equal proportions as of the place of residence of each trustee. In the opinion the court said: "The tax laws of this state .do not expressly provide for such a case, and our decision must be made to rest upon what we regard to be equity and right.· The property is certainly not liable to double tax. . . . . We .think it should be taxed one-half as of the place of residence of each trustee—that is, one-half should be taxed to the trustee residing in Baltimore city and the other half to the trustee residing in Baltimore county."

This case was followed and approved in the late case of *Appeal Tax Court etc. v. Gill,* 50 Md. 396, in which it was held ·that where two of the trustees resided in Maryland and one in New York that two-thirds of the property should be assessed to the Maryland trustees and one-third .to the New York trustee. It was held in *Hardy v. Yarmouth,* 88 Mass. 277, that where trustees of trust property reside .in different towns the property should be taxed in proportion, and the interest of each trustee taxed in the town in which he resides. The following authorities support the views expressed in the Maryland cases: Cooley on Taxation, 2d ed., 375, note 3; 1 Desty on Taxation, 61; *Trustees etc. v. City Council of Augusta,* 90 Ga. 634; *Davis v. Macy,* 124 Mass. 193; *Stinson v. Boston,* 125 Mass. 348.

We are therefore of the opinion, both upon principle and authority, that the assessment as to plaintiff Mackay was void. Defendants claim that the property is still within the jurisdiction of California and in charge of the superior court of the city and county of San Francisco by virtue of the Code of Civil Procedure, section 1699, which provides: "Where any trust has been created by or under any will, to continue after distribution, the superior court shall not lose jurisdiction of the estate by final distribution, but shall retain jurisdiction thereof for the purpose of the settlement of accounts under the trust."

We do not think under the section that the court retained any jurisdiction except for the one purpose of .settling the accounts of the trustees. It was no doubt intended by the legis-

lature that the trustees,.without any independent proceeding or without being called upon by the beneficiaries, might file their accounts in the court in which the estate was administered and have it settled as a matter of convenience. It could not have been intended that the court should retain jurisdiction as to the property of the trust, or that its jurisdiction should be exclusive. The administration was closed, the accounts of the executors allowed, and the property distributed to them in a different capacity. By their discharge as executors they were as completely separated from the business of the estate as if they had been dead. (*Willis.v. Farley,* 24 Cal. 502.) The rule that the executors were succeeded by trustees whose duties were entirely different is well stated in *Wheatley v. Badger,* 7 Pa. St. 462, where it is said: "It would be as absurd for a trustee to attempt the duties of an executor as for an executor to attempt the duties of a trustee, and it is therefore the business of the court to separate the two offices, in a question like the present, *reddendo singula singulis.* As executor he was to pay the legacies; as trustee he was the devisee and depositary of the legal title for the accomplishment of confidential purposes, with which the office of an executor has no necessary connection. Had not the creation of the two offices in the same person been coupled also in the same clause, there would not have been a doubt of their severance in the contemplation of the testator; the will would have presented the union of distinct rights in the same person which are always treated as if they existed in different persons."

Suppose that in this case the plaintiff Dey immediately after the decree of distribution had removed to and continued to live in New York; how could the trustees have been held by the courts of San Francisco within their exclusive jurisdiction? If the beneficiaries and the trustees, after the decree of distribution, had all become residents of New York, the property also being there, how could section 1699 prevent the courts of New York from exercising jurisdiction or give the San Francisco courts jurisdiction? Counsel for defendants rely upon *Lewis v. County of Chester,* 60 Pa. St. 328, and a sentence used by Judge Cooley, in his work on Taxation, page 376, in which he says: "If the fund is in charge of a court it is taxable in the juris-

diction having control of it." The sentence from the text-book refers as authority to the single case of *Lewis v. County of Chester, supra.* In the latter case the estate had not been distributed, and the same rule was followed as in *Mackay v. San Francisco, supra.* It is true the court had settled the accounts of the executrix as such, and the decree provided: "That said executrix keep said balance invested, and that she retain the same on trust to apply the income thereof pursuant to the trusts and limitations of the said last will and testament until the further order of this court, and it is ordered that the said executrix be hereafter entitled to expend the sum of fifteen hundred dollars annually out of the income of said estate for the support and maintenance of each of said infants." And the court in its opinion said: "And distribution yet remains to be decreed upon the further order of the surrogate."

Therefore, the case is not authority in support of the proposition that the superior court of San Francisco has control of the bonds distributed to plaintiffs. It is claimed by defendants that plaintiffs cannot recover any less than the whole tax, for the reason that the protest, instead of specifying that one-half the tax upon the bonds is void, is directed to the whole tax. We think the protest was sufficient. It specified that Mackay is not a resident of the state, that the bonds are in New York and are bonds of foreign corporations. The protest, while it specified and pointed out that the whole assessment was void, did not for that reason fail to point out and show that the assessment of all the property owned by Mackay was void. The greater includes the less, and, although the whole assessment was claimed to be void, the protest showed that the whole assessment as to Mackay was void. The notice was a substantial compliance with the statute. (*Mackay v. San Francisco, supra; People v. Assessors of Albany,* 40 N. Y. 163.)

It is claimed by plaintiffs that the bonds were in the exclusive control and possession of plaintiff Mackay and were in New York for the purposes of sale and reinvestment, and had thus acquired what is termed in some of the cases a "business situs" in New York.

The authorities generally agree that where the owner is not a resident of the state in which the credits are situated, and

the credits are in the possession and control of a local agent, who holds them for the purpose of transacting a permanent business, and of investing and reinvesting the proceeds from the principal or interest in such manner that the property or credits comes in competition with the capital of the citizens of the state in which the agent resides, that the credits have a situs for the purposes of taxation in the place of residence of the local agent. (*New Orleans v. Stempel,* 175 U. S. 318, and cases cited.)

We do not think the facts of this case bring the bonds as to the interest of plaintiff Dey within the rule. As trustee he is the legal owner of an undivided one-half of them. They are the same identical bonds owned by Mrs. Fair at her death. They have not lost their identity simply by being on deposit in a bank in New York City. They have not been sold and the proceeds reinvested in New York or elsewhere. We advise that the judgment be reversed and the court below directed to enter judgment on the findings in favor of plaintiffs for the sum of fourteen thousand two hundred and twenty-two dollars and fifty cents, and interest thereon at the legal rate since the nineteenth day of November, 1895.

Chipman, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed, and the court below directed to enter judgment on the findings in favor of plaintiffs for the sum of fourteen thousand two hundred and twenty-two dollars and fifty cents, and interest thereon at the legal rate since the nineteenth day of November, 1895.

McFarland, J., Temple, J., Henshaw, J.

Hearing in Bank denied.

# INDEX.

# INDEX.

ABATEMENT. See Appeal, 7, 8.

ACCOUNTING. See Pleading, 6-12.

ACCOUNT STATED. See Statute of Limitations, 1, 2.

ADVERSE POSSESSION.

1. QUIETING TITLE—EVIDENCE—VOID TAX TITLE—PRESCRIPTIVE TITLE—
HARMLESS ERROR.—In an action to quiet a title based upon pre-
scription, a void tax deed, though not admissible to prove title,
is admissible in connection with proof of adverse possession
thereunder, to bring the plaintiff within the provisions of sec-
tion 323 of the Code of Civil Procedure; but the exclusion of
such evidence is harmless error, where the plaintiff failed to
establish his prescriptive title. (Simmons v. McCarthy, 455.)

2. UNCHALLENGED FINDING AGAINST PRESCRIPTIVE TITLE.—A finding
that plaintiff has not for any period of five years, under claim
of right or title, or otherwise, been in the actual, or open, or
notorious or exclusive possession or occupancy of the lands in
controversy, unchallenged by any specification of the insuffi-
ciency of the evidence to justify it, taken in connection with
evidence showing that the defendant was in possession under
claim of right at the time when plaintiff entered, is conclusive
against a prescriptive right claimed by the plaintiff. (Id.)

3. LOCATION OF MINING CLAIM—BOUNDARIES—CROSS-EXAMINATION OF
WITNESS.—Where a witness for plaintiff had stated in chief the
boundaries of a mining claim located by him for the plaintiff,
and that the notice of location posted by him gave the same
boundaries, and had testified on cross-examination that he did
not know whether the recorded notice read to him was the
notice he put up, he may be further asked to state from memory
whether the notice he put up contained a statement that the
notice was made for the purpose of re-establishing the bound-
aries of the claim which the undersigned claimed to own. (Id.)

4. POSSESSION OF DEFENDANT AS CO-OWNER—LEASE.—When the evi-
dence showed that the defendant purchased an interest in the
mine, and was in possession as a co-owner, until the execution
of a lease of the mine for three years, extending beyond the

(691)

ADVERSE POSSESSION (Continued).

time of plaintiff's entry, such lease is admissible in evidence as tending to show that defendant claimed an interest in the mine and was in possession by his lessee at a time when plaintiff was claiming exclusive and adverse possession. (Id.)

5. CONTENTS OF LOST CONVEYANCE—HARMLESS RULING.—Where the defendant testified that he received a conveyance of an interest in the mine from one of the original owners, and, when asked to state its contents after proof of loss, his answer showed that he was unable to do so, the admission of the answer against plaintiff's objection was not injurious to the plaintiff. (Id.)

See Deed, 6; Trusts, 15.

AGENCY. See Brokers; Evidence, 1; Negligence, 3; Negotiable Instruments, 2, 3.

ALIMONY. See Divorce, 1, 2.

APPEAL.

1. WILL—ORDER REFUSING TO REVOKE PROBATE—DISMISSAL.—An order refusing to revoke the probate of a will is not one of the "probate matters" with respect to which an appeal is provided for in section 963 of the Code of Civil Procedure, and an appeal therefrom must be dismissed. (Estate of Winslow, 311.)

2. APPEAL IN PROBATE MATTERS STATUTORY—ORDER MADE AFTER JUDGMENT.—Probate matters are appealable only when the statute gives an appeal therein; and it is immaterial, with respect to the right of appeal, whether, for certain purposes, a proceeding in probate is a civil case or a special proceeding, or whether, in certain aspects, an order in probate is a final judgment. An order refusing to revoke the probate of a will is not appealable as being "a special order made after final judgment." (Id.)

3. ESTATES OF DECEASED PERSONS—VACATING DECREE OF DISTRIBUTION.—An order vacating a decree of final distribution of the estate of a deceased person is not appealable, and an appeal taken therefrom will be dismissed. (Estate of Murphy, 339.)

4. PRESUMPTION UPON APPEAL—VALIDITY OF JUDGMENT.—Every presumption upon appeal is in favor of the validity of the judgment, when not otherwise affirmatively shown by the record. (Pereira v. City Savings Bank, 45.)

5. FRIVOLOUS APPEAL—DAMAGES.—Where an appeal is clearly frivolous, the judgment appealed from will be affirmed, with damages. (Hearst v. Hart, 327.)

6. DIVORCE—APPEAL FROM JUDGMENT—LIMITATION.—A judgment is not open to review where the appeal therefrom was taken more than six months after its entry. (Begie v. Begie, 154.)

7. APPEAL FROM ORDER DENYING A NEW TRIAL—DEATH OF APPELLANT—ABATEMENT—DISMISSAL.—An appeal from an order denying a new trial in an action for divorce in which no money question is

APPEAL (Continued).

involved abates upon the death of the appellant, and the appellate court is deprived of all authority to review the action of the superior court, and the appeal must be dismissed. (Id.)

8. QUESTION OF COSTS—EFFECT OF ABATEMENT.—Where no costs were allowed in the judgment, the appeal cannot be retained after the death of the appellant to determine the question as to who is entitled to recover the costs upon appeal. Upon the abatement of an action or appeal by death of a party, there can be no judgment for costs in favor of the survivor, but each party must bear his own costs incurred prior to the death. (Id.)

9. COSTS INCIDENT TO JUDGMENT.—Costs are but an incident to a judgment; and if the court, by abatement of the action, loses power to render any judgment in the case before it, it is powerless to render any judgment for the costs incurred therein. (Id.)

10. ORDER DENYING NEW TRIAL — DELAY IN SERVICE OF NOTICE OF INTENTION—SETTLEMENT OF STATEMENT.—Upon appeal from an order denying a new trial, where alleged delay in service of the notice of intention to move for a new trial does not appear in the record, and the statement was settled by the judge, an objection to the hearing of the appeal on account of such delay should be overruled. (Nippert v. Warneke, 501.)

11. ADDRESS OF NOTICE—DISMISSAL.—A notice of appeal is not required to be addressed to the persons constituting the adverse parties thereto, and the fact that it is addressed to the attorneys on whom it is properly to be served under the provisions of sections 940 and 1015 of the Code of Civil Procedure is not ground for the dismissal of the appeal. (Estate of Nelson, 242.)

12. AMENDABLE MISTAKE OF SCRIVENER.—Where attorneys served had appeared for three executors, the fact that the notice described them as "attorneys for executor" will be deemed a mere mistake of the scrivener, which could not have misled the attorneys. Such mistake is amendable, of course, under section 473 of the Code of Civil Procedure, and will be disregarded upon appeal. (Id.)

13. RIGHT OF APPEAL—CONSTITUTION—LIBERAL CONSTRUCTION OF STATUTES AND RULES.—The right of appeal is conferred by the constitution, and statutes and rules of procedure for its exercise are to be liberally construed; and no appeal will be dismissed on technical grounds, where there has been no violation or disregard of any express rule of procedure. (Id.)

14. APPEAL FROM JUDGMENT—MOTION TO DISMISS—TIME FOR FILING TRANSCRIPT—SETTLEMENT OF STATEMENT.—The time for filing the transcript on appeal from the judgment under rule II of this court does not begin to run until the settlement of a proposed statement of the case—to be used on the motion for a new trial; and a motion to dismiss the appeal made within less than forty days after the settlement of such statement will be denied. (Wall v. Mines, 136.)

APPEAL (Continued).

15. **CONSTRUCTION OF CODE—RECORD UPON APPEAL—USE OF BILL OF EXCEPTIONS OR STATEMENT.**—The first sentence in section 950 of the Code of Civil Procedure permits the use, upon appeal from the judgment, of any bill of exceptions, or statement in the case upon which the appellant relies, without regard to whether the same has been used upon a motion for a new trial. The provision of the second sentence in that section for the use of a settled bill of exceptions or statement of the case which has been used on the motion for a new trial does not affect or impair the provisions of the first sentence in the section. (Id.)

16. **APPEAL FROM JUDGMENT AFTER SIXTY DAYS—USE OF SETTLED STATEMENT NOT INVOLVED IN MOTION TO DISMISS.**—The question as to what use can be made, upon an appeal from the judgment, taken more than sixty days after its entry, of a statement settled to be used upon a motion for a new trial, is not involved in a motion to dismiss the appeal from the judgment, where it does not appear affirmatively that it cannot be used for any purpose upon such appeal. (Id.)

17. **REVIEW UPON APPEAL.**—What use can be made of the statement will be determined when the appeal from the judgment is reviewed upon its merits. The insufficiency of the evidence to justify the decision cannot be considered upon such an appeal taken more than sixty days after entry of the judgment, and the use of the statement will be limited at the hearing to such matters as are authorized to be determined upon the appeal. (Id.)

18. **ORDER DENYING NEW TRIAL—REVIEW UPON APPEAL—FINDINGS—PLEADINGS—ERRORS OF LAW—EVIDENCE.**—Upon appeal from an order denying a new trial, the questions whether the findings are sufficient to support the judgment, or correspond to the issues presented by the pleadings, and as to what issues the pleadings represent, cannot be considered; and the only questions to be reviewed are those relating to alleged errors of law, and whether the findings are justified by the evidence. (Schroeder v. Pissis, 209.)

19. **WAIVER—GROUNDS OF SPECIAL DEMURRER—OBJECTIONS TO EVIDENCE—OBJECTIONS AFTER VERDICT.**—Where the defendant failed to object to any defective allegations in the complaint, either by special demurrer or by objections to evidence, which might have been obviated by amendment, the evidence in proof of the allegations is deemed consented to, and objections to the defective allegations cannot be urged after verdict, or upon appeal for the first time. (Larkin v. Mullen, 449.)

20. **DELAY IN BRINGING ACTION—OBJECTION UPON APPEAL.**—A defendant who has gone to trial and suffered defeat, without having urged any objection to the plaintiff's delay in bringing the action, will not be permitted to urge such objection upon appeal for the first time. (Id.)

APPEAL (Continued).

21. INSUFFICIENT UNDERTAKING—NEW UNDERTAKING—MOTION TO DISMISS.—An undertaking on appeal which was filed in due time, the verification to which was signed by both sureties, but which was signed in the usual place by only one of them, evidently through oversight, is merely "insufficient" within the meaning of section 954 of the Code of Civil Procedure, and if a good and sufficient undertaking signed by both sureties and approved by the chief justice is filed before the hearing of a motion to dismiss the appeal, the motion must be denied, and the new undertaking will stand as the undertaking on appeal. (Bay City Building etc. Assn. v. Broad, 670.)

22. BILL OF EXCEPTIONS—SPECIFICATIONS OF ERROR.—No specifications of error occurring at the trial are required in a bill of exceptions, in order that the erors of law therein set forth may be reviewed upon appeal. (Harper v. Gordon, 489.)

23. LIMITATION OF TIME—DISMISSAL.—An appeal from a judgment not taken within the time allowed by law therefor must be dismissed. (Sutter County v. Tisdale, 180.)

24. ORDER DENYING NEW TRIAL—SERVICE OF NOTICE—MOTION TO DISMISS APPEAL—PROOF OF SERVICE.—At the hearing of a motion to dismiss an appeal from an order denying a new trial for want of proof of service of the notice of appeal, the fact of such service, which gives this court jurisdiction to entertain the appeal, may be proved by affidavits not incorporated in the transcript. (Id.)

25. INSUFFICIENT GROUND OF DISMISSAL—WANT OF SERVICE OF NOTICE OF INTENTION.—The want of service of the notice of intention to move for a new trial is not a ground for dismissing an appeal from the order. (Id.)

26. APPEAL FROM ORDER—INSUFFICIENT RECORD—CERTIFICATE OF JUDGE—ABSENCE OF BILL OF EXCEPTIONS—DISMISSAL OF APPEAL.—Upon appeal from an order denying a motion to vacate and set aside a judgment and order denying a new trial, and to stay execution, the *ex parte* certificate of the judge that certain papers annexed were used by the moving party on the hearing of the motion, and that he used no other evidence, but that the court of its own motion took notice of its records, is not the equivalent of the bill of exceptions required under rule XXIX of this court; and, in the absence of such bill of exceptions, the appellant is not entitled to be heard, and the appeal will be dismissed. (Ramsbottom v. Fitzgerald, 75.)

See Arbitration and Award, 1, 2; Attachment, 3; Bill of Exceptions, 2; Cancellation, 3; Divorce, 2, 3; Ejectment; Estates of Deceased Persons, 4, 5, 8, 9; Evidence, 2, 3; Injunction, 1, 3; Judgment; Mechanic's Lien, 5, 6, 10; Mortgage, 3; Municipal Corporations, 8; New Trial, 4-8, 11, 13, 14; Parties, 1, 3; Practice, 1, 2, 5, 7, 12; Receiver; Water and Water Rights, 2.

APPEARANCE. See Practice, 5, 6.

ARBITRATION AND AWARD.

1. REVIEW UPON APPEAL—AFFIDAVIT—BILL OF EXCEPTIONS—STATE-MENT.—Where an award of arbitrators was entered as an order of court by stipulation of the parties to the arbitration, any alleged errors, if reviewable upon appeal, cannot be reviewed upon an *ex parte* affidavit of the appellant, which cannot take the place of a bill of exceptions or of a statement of the case. (Arbitration Between Connor and Pratt, 279.)

2. FAILURE TO SWEAR WITNESSES — MISCONDUCT NOT SHOWN. — An affidavit merely stating that the arbitrators failed to swear the witnesses, without showing that the appellant asked to have them sworn, or objected to their not being sworn, or excepted to their unsworn statements, does not show any misconduct of the arbitrators. (Id.)

3. LEGAL RULES INAPPLICABLE — EQUITABLE NATURE OF AWARD. — Arbitrators are not bound to make their award on principles of dry law, or in strict adherence to the legal rules and procedure expected in judicial trials, but may decide on the principles of equity and good conscience, and make their award *ex aequo et bono*. (Id.)

4. GROUNDS FOR VACATING OR MODIFYING AWARD.—The only grounds for vacating or modifying an award are those set forth in sections 1287 and 1288 of the Code of Civil Procedure, which do not include ordinary errors or faults of judgment, but only things that are "gross." An award will not be disturbed upon appeal, which does not appear to be invalid upon any of the grounds specified in those sections. (Id.)

5. FINDINGS AND REASONS NOT REQUIRED.—Arbitrators are not required to find facts nor to give reasons for their award. (Id.)

6. AMOUNT DUE UPON NOTE—MODIFICATION OF AWARD—ABSENCE OF EVIDENCE — COMPUTATION OF INTEREST.—In the absence of the evidence given before the arbitrators as to the amount due upon a note, their award fixing the amount cannot be modified for supposed error in the computation of interest, or in not computing it for a sufficient period of time. (Id.)

7. REJECTION OF DISTINCT MATTER NOT COVERED BY SUBMISSION.— An award is properly modified by striking out matter inserted therein which was not included in the submission, and is a part thereof which can be separated from other parts, and does not affect the decision on the matter submitted. (Id.)

ASSIGNMENT.

1. JUDGMENT—FORMAL WRITING NOT REQUIRED—AGREEMENT FOR SALE— TELEGRAMS — OWNERSHIP — DEPOSIT OF DRAFT IN POSTOFFICE.—A formal written assignment of a judgment is not necessary to evidence a sale thereof nor to pass title thereto, and where an

ASSIGNMENT (Continued).

agreement is made by telegrams between the owner and purchaser of a judgment for a sale and assignment thereof for a specified sum in cash to be sent by draft on New York, the owner to take the purchaser for the balance, the deposit of a draft for the cash agreed upon in the postoffice, by the purchaser, according to the direction of the owner, has the effect of a cash payment, and makes the purchaser the owner of the judgment, subject to an immediate right of action against him for the balance of the judgment. (Smith v. Peck, 527.)

2. RETURN OF DRAFT—WRITTEN ASSIGNMENT TO THIRD PERSON.—The vendor, after the deposit of the draft by the purchaser according to his direction, cannot repudiate the agreement of sale by a return of the draft; and the written assignment of the judgment to a third person after the date of the agreement of sale passed no title. (Id.)

3. DIRECTION TO EXECUTE PAPERS MAILED TO VENDOR.—A telegraphic direction to the vendor to sign papers mailed and to return them to the purchaser, intended merely to obtain written evidence of the transfer, the terms of which were already agreed to by the parties, and which would be complete without such writing, does not purport to change the terms of the agreement, and is immaterial. (Id.)

4. ACTION BY ASSIGNEE—PLEADING—GENERAL DENIAL TO UNVERIFIED COMPLAINT—BURDEN OF PROOF.—In an action by the assignee of a cause of action, a general denial to an unverified complaint puts in issue the assignment and plaintiff's right to sue upon the cause of action, and the burden of proof is upon the plaintiff to establish the assignment. (Brown v. Curtis, 193.)

5. RIGHT OF ACTION AS ASSIGNEE DISTINGUISHED FROM CAPACITY TO SUE.—The right of action of the plaintiff as assignee is distinct from his capacity to sue, and must be established when denied, whatever may be the capacity of the plaintiff to sue. The question of assignment does not go to the capacity of the plaintiff to sue, and the absence of assignment need not, like the want of capacity to sue, be pleaded as a special defense. (Id.)

6. INSUFFICIENT PROOF OF ASSIGNMENT—DEMAND BY PLAINTIFF—NOTICE OF ASSIGNMENT.—Where there is nothing to show that the defendants, or either of them, dealt with or recognized the plaintiff as assignee, proof that the plaintiff made demand of the defendants, and that the defendants received notice from the original owner of the claim that he had assigned the claim to the plaintiff, is not sufficient proof of an assignment to overcome the denial thereof. (Id.)

7. DESCRIPTION IN SPECIAL DEFENSE—ADMISSION—DENIAL.—The description in a special defense of the original owner of the claim, so as to append to his name the descriptive words "the assignor of plaintiff," does not amount to an admission of the assignment, in contravention of the denial thereof, and those words can only be regarded as descriptive of the person named. (Id.)

ASSIGNMENT (Continued).

8. **Action by Assignee of Contract for Street Work—Release by Assignor—Sufficient Defense Unassailed—Absence of Discretion to Grant New Trial.**—In an action by the assignee of a contract for street work, in which a personal judgment is sought against the defendant, an answer pleading that when the contract was executed by plaintiff's assignor it was agreed that the defendant should not be personally liable upon the contract, and that, as part of the contract, said assignor executed and delivered an acquittance and release of the defendant from all liability on the contract, states a sufficient defense, which, if supported by evidence, is a bar to the action. Where the sufficiency of the evidence to support such defense is not assailed by plaintiff's statement on motion for a new trial, the court has no discretion to grant a new trial. (Rauer v. Fay, 523.)

9. **Notice of Release to Assignee.**—The mere fact that the assignee was not aware of the release of the defendant when he took the assignment is immaterial. The plaintiff, as assignee, took the contract *cum onere*, subject only to the duty of the defendant to notify him of any conditions not specified in the contract itself. (Id.)

See Assignment for Benefit of Creditors; Attorney and Client, 6-10; Claim and Delivery, 4; Fraudulent Conveyance, 4-9; Growing Crops, 6-8; Specific Performance; Swamp and Overflowed Lands.

## ASSIGNMENT FOR BENEFIT OF CREDITORS.

1. **Rights of Assignee—Transfer in Fraud of Creditors.**—An assignment for the benefit of creditors does not pass to the assignee any greater or other rights than those possessed by the debtor; and the assignee has no power or right to maintain an action to recover property previously transferred by the debtor in fraud of his creditors. (First Nat. Bank of San José v. Menke, 103.)

2. **Unverified Chattel Mortgage—Good Faith—Validity Against Elected Assignee.**—An unverified chattel mortgage, made in good faith, and not intended to be fraudulent as to creditors, and which was valid as between the parties, and as to all others except creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value, is valid as against an assignee elected by the creditors, after a voluntary assignment for the benefit of creditors made by the mortgagor to the sheriff. (Id.)

3. **Amendment of Code—Assignment to Sheriff—Election of Assignee—Constructive Fraud as to Creditors.**—The amendment of section 3449 of the Civil Code in 1899, so as to require that voluntary assignments for the benefit of creditors, shall be made in the first instance to the sheriff, and that after the election of an assignee by the creditors, the sheriff shall assign to the

ASSIGNMENT FOR BENEFIT OF CREDITORS (Continued).

elected assignee the property assigned to him, does not affect or alter the rule that the assignee has no authority to sue to set aside an unverified chattel mortgage made in good faith, and which operates only as a constructive fraud against creditors by force of the statute. (Id.)

4. CONSTRUCTION OF CODE—FRAUD AS TO CREDITORS—"DEVOLVING" OF ESTATE IN TRUST—OPERATION OF LAW.—Section 3439 of the Civil Code, which makes every transfer, etc., made "with intent to delay any creditor," void as to all creditors of the debtor, "and against any person upon whom the estate devolves in trust for the benefit of others than the debtor," only applies to an estate so devolving by operation of law upon an assignee in insolvency, without any voluntary act of the owner; and does not apply where a voluntary assignment is made for the benefit of creditors. (Id.)

ATTACHMENT.

1. GARNISHMENT—SHERIFF'S RETURN—ADMISSION OF INDEBTEDNESS— PARTIES — JURISDICTION—JUDGMENT AGAINST GARNISHEE.—The service of a writ of attachment upon a garnishee is not the commencement of an action against him, nor is the return by the sheriff of an admission of indebtedness by him to the attachment defendant conclusive of that fact; and if the garnishee is in no way brought into court or made a party to the action, the court has no jurisdiction to render judgment against him, based merely upon the return of the sheriff. (Broadway Ins. Co. v. Wolters, 162.)

2. VOID JUSTICE'S JUDGMENT—INSUFFICIENT DOCKET—PRESUMPTION.— Where judgment was rendered against a garnishee in the justice's court based merely upon the sheriff's return of an admission of indebtedness, and the justice's docket and the judgment failed to show that the garnishee was brought into court by any process, no presumption can be indulged in favor of the validity of the judgment, and it is void upon its face. (Id.)

3. EQUITABLE RELIEF AGAINST JUDGMENT—REMEDY BY MOTION OR CERTIORARI—WAIVER OF OBJECTION—APPEAL.—Where the garnishee brought an equitable action to set aside and enjoin the execution of the justice's judgment, averring that the return of the sheriff was false, and that the garnishee had no knowledge of it until forty days after the judgment was rendered, and the defendant failed to demur to the complaint, but answered to the merits, without objection in the court below, that the plaintiff had a remedy by motion or by *certiorari* to set the judgment aside, objection to a judgment for plaintiff on that ground is waived, and cannot be urged upon appeal for the first time. (Id.)

ATTORNEY AND CLIENT.

1. ACTION—RIGHT OF ATTORNEY TO CONTROL CAUSE—POWER OF COURT.— A party to an action must be heard in court through his attorney, when he has one, and the court has no power or authority of law to recognize any person in the conduct or disposition of the case other than the attorneys of record. (Toy v. Haskell, 558.)

2. POWER OF PARTY TO SETTLE CAUSE—INVALID STIPULATION FOR DISMISSAL—VACATION OF ERRONEOUS JUDGMENT.—The power of a party to compromise, settle, and acknowledge satisfaction of the cause of action, and the effect of such settlement as a defense to the action, is to be distinguished from his power to control the course of the action otherwise than through his attorneys. A stipulation for a dismissal of the action signed only by the plaintiff and not by his attorneys of record, and made without their consent, is invalid, and the court should correct its erroneous judgment of dismissal based upon such stipulation by setting the judgment aside upon motion properly made to that effect by plaintiff through his attorneys. (Id.)

3. NOTICE OF MOTION TO SET ASIDE DISMISSAL—WAIVER—APPEARANCE. The appearance of the defendants at the hearing of a motion to set aside a judgment of dismissal of the action, and their resisting the motion upon its merits, without any objection to the want of sufficient notice of the motion, is a waiver of the usual notice of the motion. (Id.)

4. VACATION OF UNAUTHORIZED JUDGMENT—CONSTRUCTION OF CODE— AFFIDAVIT OF MERITS.—A motion to set aside an erroneous judgment of dismissal, based upon an invalid stipulation made by a party without the knowledge or consent of his attorneys, is to set aside a judgment entered without authority of law, and not to open a default or to set aside a judgment under the provisions of section 473 of the Code of Civil Procedure, and no affidavit of merits is necessary upon such a motion. (Id.)

5. DISREGARD OF GROUND STATED—"INADVERTENCE AND SURPRISE."— Where it appears that the motion should be granted for invalidity of the stipulation for dismissal, the court may disregard the fact that one of the grounds stated for the motion was "inadvertence and surprise," under section 473 of the Code of Civil Procedure. (Id.)

6. ASSIGNMENT BY ATTORNEY OF SPECIFIED SUM OUT OF PERCENTAGE FEE—LIEN OF ASSIGNEE.—The assignment by an attorney of a specified sum to be paid out of the first money to be received by him upon a percentage fee contracted to be paid on the value of the property realized by his client creates an equitable lien on such percentage fee in favor of the assignee in the sum specified. (Goad v. Hart, 197.)

7. COMPOSITION WITH CLIENT—TRANSFER OF REALTY FOR PERCENTAGE— ENFORCEMENT OF LIEN BY ASSIGNEE—REASONABLE TIME.—Where the attorney compounded with his client, and received a transfer of real estate in lieu of the proposed percentage fee, the right of

ATTORNEY AND CLIENT (Continued).

the assignee to enforce his lien upon the fee and to demand and receive the specified sum became absolute; and the attorney was only entitled to a reasonable time to procure the money. (Id.)

8. OPTION OF CLIENT TO PAY PERCENTAGE AND TAKE RETRANSFER—MATURITY OF ASSIGNEE's CAUSE OF ACTION.—An agreement that the realty transferred to the attorney should be retransferred to the client, upon the exercise of the client's option to pay the percentage in money within a specified time, is not a condition attached to the grant, but is a mere covenant for an option which the client in fact declined to exercise; and the existence of such covenant could not affect the maturity of the cause of action by the assignee to enforce his lien, after allowing a reasonable time from the transfer of the realty to raise the money. (Id.)

9. ACTION BY ASSIGNEE—CLIENT NOT A NECESSARY PARTY.—In an action by the assignee against the attorney, the client is a proper, but not a necessary, party. The rights of the client under the contract giving the option, being known to the assignee, could not be injured by an adjudication for the payment of the specified sum agreed to be paid by the attorney to his assignee. (Id.)

10. NEGOTIATION OF LOAN FROM CLIENT BY ATTORNEY—PAYMENT FOR ATTORNEY's SERVICES BY BORROWER—VALIDITY OF CONTRACT.—Where one attorney negotiates a loan through another attorney from the client of the latter, promising to pay him for his services by the assignment of an interest in his own fee, which arrangement was fully understood and agreed to by the client making the loan, the contract to pay for the services of the attorney negotiating the loan is upon sufficient consideration, and is not against good morals or public policy. (Id.)

BENEVOLENT ASSOCIATIONS. See Corporations, 5-8.

BILL OF EXCEPTIONS.

1. TRIAL—EXCEPTIONS TO RULINGS—SETTLEMENT OF BILL—ADJOURNMENT OF COURT—NOTICE OF SETTLEMENT.—Section 649 of the Code of Civil Procedure contemplates the settlement of a bill of exceptions to a decision made in the progress of a trial at the time the decision is made, during the trial, and in the presence of the counsel for both parties, and does not contemplate a settlement of the bill after the adjournment of the court, and without any notice to the adverse counsel. Section 650 of that code makes ample provision for the settlement of a bill of exceptions after the trial upon notice to the adverse party. (Estate of Scott, 579.)

2. EX PARTE BILL OF EXCEPTIONS—RULINGS UPON SETTLEMENT OF ADMINISTRATOR's ACCOUNT—REVIEW UPON APPEAL.—An ex parte bill of

BILL OF EXCEPTIONS (Continued).

exceptions to the rulings of the court in passing upon the accounts of a special administrator, in striking out certain items and reducing others, upon the objection of a creditor, which was not settled at the time of the rulings, but was settled on the following day, without service of any draft thereof upon the creditor, who was not present in person or by counsel at the settlement thereof, and did not agree to the same, cannot be considered upon appeal from the order settling the account. (Id.)

3. AMENDMENTS NOT PROPOSED—PRESENTATION FOR SETTLEMENT—CONSTRUCTION OF CODE.—Where no amendments are proposed to a proposed draft of a bill of exceptions, or if proposed are acceded to, the proponent of the bill is not required, by the terms of section 650 of the Code of Civil Procedure, to present the same to the judge for settlement within ten days, and no absolute time is limited in such a case in which the judge can certify the bill. (Houghton v. Superior Court, 352.)

4. SKELETON DRAFT—ENGROSSMENT BEFORE PRESENTATION—NECESSARY DELAY.—Where, in accordance with the practice created by the profession, the proposed bill of exceptions was in the form of a skeleton draft, for the insertion of documents and exhibits, and the attorney proposing and serving the same by mail resided over five hundred miles distant from the court, and from the attorneys of the opposite party, a delay of forty-one days after amendments were due, during which time it is admitted that the attorney proceeded diligently to engross the proposed bill by copying into it all the exhibits referred to, making in all five hundred and twenty-five typewritten pages, and to forward the same as soon as the engrossment was completed, to be presented to the judge for his certificate, cannot be held to be unnecessary, or to have at all delayed the certification of the bill by the judge, where it does not appear that his settlement thereof would require a new engrossment. (Id.)

5. REFUSAL TO SETTLE BILL UNDER FALSE CONSTRUCTION OF CODE—MANDAMUS.—Where the refusal of the judge of the superior court to settle a bill to which no amendments were proposed was based upon an erroneous construction of the code, upon the alleged ground that the bill was not presented for settlement within the time required by law, and because the delay beyond that time was unnecessary and without excuse; and the question of reasonable delay under the true construction of the code, in view of the admitted facts, was not passed upon by him, *mandamus* will lie from this court to compel him to settle the proposed bill. (Id.)

See Appeal, 15-17, 22, 26; Arbitration and Award, 1; New Trial, 4-6.

**BILL OF EXCHANGE.** See Negotiable Instruments.

**BONA FIDE PURCHASER.** See Claim and Delivery, 5.

**BONDS.**

1. BUILDING CONTRACT — CONTRACTOR'S BOND — ACTION BY MATERIAL-MEN — DEMAND AND NOTICE NOT REQUIRED.—An action by material-men against the sureties on the bond of a contractor executed pursuant to section 1203 of the Code of Civil Procedure may be maintained immediately on default of the principal, without any previous demand or notice. No notice is required by that section to fix the obligation sued upon; and, in the absence of a contract to that effect, no notice is required, whether the liability upon the bond be regarded as that of sureties or of guarantors. (Carpenter v. Furrey, 665.)

2. CONTRACT NOT AN OFFER OF GUARANTY.—The obligation of the bond is absolute, and it is not an offer of guaranty, requiring a notice of acceptance. (Id.)

3. CONSTITUTIONALITY OF CODE PROVISION — ADDITION OF NEW SECTION — TITLE OF ACT — SPECIAL LEGISLATION.—The act adding section 1203 of the Code of Civil Procedure to the mechanic's lien law entitled, "An act to add a new section to the Code of Civil Procedure of the state of California, numbered section 1203, relating to liens of mechanics and others," sufficiently embraces the subject of the act in the title, and is not special legislation, nor in conflict with any provision of the constitution. (Id.)

4. FAILURE OF SURETIES TO JUSTIFY — PROTECTION OF OBLIGEES — ESTOPPEL OF SURETIES.—The requirement of section 1057 of the Code of Civil Procedure that the sureties shall justify by affidavit accompanying the bond is intended solely for the protection of obligees; and the sureties cannot object to the sufficiency of the bond merely because of their failure to comply with that requirement. (Id.)

5. PLEADING — DETAILS OF CONTRACT — PRESUMPTION — GENERAL DEMURRER.—A complaint on the contractor's bond need not set out in detail the contract between the owner and the contractor, and is sufficient, as against a general demurrer, if it only sets out facts showing that plaintiff had pursuant to his contract furnished materials that were used in the building by the contractor in pursuance of the contract with the owner. In the absence of a special demurrer, it will be presumed from the fact that the materials were furnished to be used by the contractor in the construction of the house that they were so furnished and used in pursuance of the contract with the owner. (Id.)

6. VALUE OF MATERIALS — CONTRACT PRICE — UNCERTAINTY — ABSENCE OF SPECIAL DEMURRER.—Where the complaint on the contractor's bond alleged and the court found the contract price of the materials furnished, the fact that the value of the materials is not

BONDS (Continued).

> alleged or found in pursuance of section 1203 of the Code of
> Civil Procedure does not affect the judgment, in the absence of
> a special demurrer for uncertainty in the complaint as to value.
> (Id.)

7. BOND OF BUILDING CONTRACTOR—DELIVERY—FILING FOR RECORD—
MANDATORY STATUTE.—A bond given by a building contractor in
support of the contract, as contemplated by section 1203 of the
Code of Civil Procedure, in an amount equal to twenty-five
per cent of the contract price, and which by its terms is to
inure to the benefit of persons performing labor or furnishing
materials for the contractor, must, as a substitute for delivery,
accompany the contract and be filed for record with the con-
tract, as required by that section, which is mandatory; and
without such filing there can be no valid delivery of the bond.
(Mangrum v. Truesdale, 145.)

8. DELIVERY OF BOND TO AGENT OF BUILDING AND LOAN ASSOCIATION—
INVALIDITY OF BOND.—A delivery of such bond to the attorney for
a building and loan association which agreed to furnish a loan
of money upon the lot to aid in the building, when the bond
was executed, cannot be a valid substitute for the filing of the
bond for record required by the statute, and, if not filed for
record, such bond is invalid and cannot be enforced.   (Id.)

9. REDRESS OF LABORERS AND MATERIALMEN.—If the bond is not filed
for record, and is void, the laborers and materialmen have their
redress by the terms of the statute, which gives them a remedy
against the owner and contractor for such damages as they
may have suffered.   (Id.)

> See Municipal Corporations, 7-9; Taxation.

BOUNDARIES.   See Adverse Possession, **3.**

BROKERS.

1. BROKERS' COMMISSIONS—NEGOTIATION OF LOAN FOR ADMINISTRATOR.—
A broker who has negotiated a loan for an administrator under
a written contract for a specified commission, and who has done
all that he was required to do under his contract and under the
terms of the written application of the administrator for the
negotiation of the loan, and has found a purchaser who was
willing and ready to make the loan applied for, is entitled to
the commission agreed upon.   (Maxon v. Jones, 77.)

2. LOAN UPON MORTGAGE SECURITY—REFUSAL OF ORDER OF COURT—
RIGHT TO AGREED COMMISSION.—Where the administrator applied
to the broker for the negotiation of a loan to be secured by
mortgage upon the lands of his deceased father, and represented
that all of the heirs were agreed thereto, and that he had an
order of court authorizing it, there being no conditions expressed
in the agreement to pay the commission other than that a loan

BROKERS (Continued).

should be obtained by the broker, his right to the agreed commission upon obtaining the loan from one willing and ready to make it upon the security proposed, does not depend upon the validity of the proposed mortgage, or the power of the administrator to make it, and is not affected by the refusal of the proffered loan on the ground of the refusal of the court to authorize the mortgage upon the objection of an heir thereto. (Id.)

3. PERSONAL LIABILITY OF ADMINISTRATOR.—Where there was nothing in the written application or in the contract for the negotiation of the loan limiting the payment of the broker's commission so as to make it expressly payable out of the estate only, the administrator is personally liable for the commission earned by performance of the contract on the part of the broker. (Id.)

BUILDING CONTRACT. See Bonds.

CANCELLATION.

1. CANCELLATION OF DEED—FRAUD—PLEADING.—In an action to cancel a deed on the ground of fraud, where there is not an entire absence of allegation of facts constituting the fraud, though alleged in a somewhat general and defective manner, and where it is competent for the plaintiff to prove fraud under the allegations, and for the court to find the facts constituting the fraud as being within the issue, a general demurrer to the complaint is properly overruled. (Larkin v. Mullen, 449.)

2. OFFER OF RESTITUTION — PLEADING — WANT OF CONSIDERATION OF DEED—FINDINGS.—The plaintiff is not required to allege or prove an offer of restitution, when the complaint does not show anything received by the plaintiff of which he was required to make restitution, and avers that no part of the money agreed to be paid for the deed was paid, and that the defendant failed to comply with her promises to provide for the plaintiff in consideration thereof, and repudiated all parts of the agreement. and claimed to hold the land adversely, and where the answer does not claim that any money was paid for the deed, and denies that any promises were made in consideration therefor and where the finding of the court is unassailed that there was no consideration of indebtedness for the deed. (Id.)

3. CONCLUSION—OUTSIDE ISSUES UNSUPPORTED—DECREE FOR COMPENSATION — ACQUIESCENCE OF PLAINTIFF—APPEAL OF DEFENDANTS.— Where the court finds as a conclusion of law outside the issues, that one of the defendants is entitled to a reasonable compensation for care of the plaintiff during his illness, and for board, and renders a judgment, unsupported by the issues, directing the payment of the sum of two hundred and fifty dollars on receipt of the deed, in which the plaintiff has acquiesced without appeal, the defendants appealing have no ground of complaint on account of such finding and direction in the judgment. (Id.)

CERTIORARI. See Attachment, 3.

CHARITY. See Trusts, 5-9.

CHATTEL MORTGAGES. See Assignment for Benefit of Creditors, 2, 3; Growing Crops, 1-4; Mortgage, 21-27.

CLAIM AND DELIVERY.

1. CLAIM AND DELIVERY OF NOTE—PLEADING—RELIEF DETERMINED BY COURT—PRAYER.—Where a complaint states a cause of action to recover the possession of a note owned by the plaintiff, as against the defendants, who had wrongfully invaded plaintiff's ownership and right of possession of the note, the relief to which plaintiff is entitled thereupon is to be determined by the court; and the cause of action is not impaired by the fact that the complaint prays for relief to which the plaintiff is not entitled. (More v. Finger, 313.)

2. AVERMENT OF CONVERSION—RELIEF UPON ISSUE JOINED.—A statement in the complaint that the defendants had converted the note to their own use does not preclude the right of the plaintiff to recover possession of the note, or its value, in case a return cannot be had, if, after issue joined, the evidence should justify such relief. Under section 580 of the Code of Civil Procedure, the court is authorized. after answer, to grant any relief consistent with the case made by the complaint and embraced within the issue. (Id.)

3. GIST OF ACTION—CONSPIRACY OF DEFENDANTS IMMATERIAL—RELIEF AGAINST DEFENDANTS UNITING IN WRONG.—The gist of the action is the injury done to the plaintiff by the wrongful acts of the defendants. The averment of a conspiracy is immaterial, and need not be proved; but the plaintiff is entitled to relief for the injury against all of the defendants who have united or co-operated in doing the wrong to the plaintiff. (Id.)

4. SUFFICIENCY OF EVIDENCE—PLEDGED NOTE—ASSIGNMENT BY PAYEE TO PLAINTIFF—COMBINATION OF DEFENDANTS—PAYMENT OF PLEDGEE— SALE AND DELIVERY OF NOTE BY INTOXICATED PAYEE. — Evidence showing that the payee of a pledged note made a written assignment thereof to the plaintiff, and that after notice of the assignment to the maker and the pledgee, the maker combined with other defendants to defeat plaintiff's rights, who, having paid the pledgee, induced the payee, while intoxicated, to sell and deliver the note to them, without any indorsement thereof to them, sufficiently establishes the right of plaintiff to verdict and judgment against the maker of the note and the other defendants for the possession thereof, or for the recovery of the value thereof, in case a return cannot be had. (Id.)

5. BONA FIDE PURCHASER OF NEGOTIABLE NOTE BEFORE MATURITY— DELIVERY WITHOUT INDORSEMENT TO PURCHASERS—RIGHTS OF PRIOR ASSIGNEE.—In order to protect a bona fide purchaser of a negotiable note before maturity, without notice of a defect in the title,

CLAIM AND DELIVERY (Continued).

under sections 3123 and 3124 of the Civil Code, such purchaser must be a regular indorsee of the note in good faith in the ordinary course of business; and where there is a mere sale and delivery of the note by the payee before maturity, without indorsement thereof by him to the purchasers, they cannot, under the law merchant, acquire a title thereto as against a prior assignee of the payee, whose rights are paramount to theirs. (Id.)

6. SUPPORT OF VERDICT OF JURY — INTOXICATION OF PAYEE — ABSENCE OF INTENT TO DISPOSE OF NOTE.—Where the evidence is sufficient to sustain a special verdict of the jury that the payee was intoxicated when he made the transfer to the defendants, and that he did not at that time intend to dispose of the note to them, the jury were authorized from these facts to find generally that there had been no valid transfer of the note by him to the defendants, and that they were not purchasers of the same in good faith; and, plaintiff's title having been established, their general verdict that the plaintiff was entitled to the possession of the note must be sustained. (Id.)

7. REIMBURSEMENT OF DEFENDANTS NOT REQUIRED.—The plaintiff was not required, as a condition of recovery of the note or of its value, in case a return of the note could not be had, to reimburse the defendants for the money paid by them to the payee of the note for rights which he did not have therein; nor was the plaintiff required to reimburse them for the money paid to the pledgee, without taking to themselves any transfer of his rights, or of the obligation for which he held the note as collateral security. (Id.)

8. EVIDENCE—CONVERSATION WITH MAKER OF NOTE—OBJECTION OF OTHER DEFENDANTS—PRESUMPTION UPON APPEAL.—Where the maker of the note was one of the defendants, a conversation of the plaintiff with him was admissible against him, and it may be assumed upon appeal that the court limited the effect of the evidence to the maker of the note, if the record does not contain the instructions. (Id.)

9. CONSPIRACY—ORDER OF PROOF—DISCRETION—MOTION TO STRIKE OUT. If the conversation with the maker of the note was offered to show a conspiracy between him and the other defendants, the order of proof was in the discretion of the court, and, if the evidence subsequently failed to connect the other defendants therewith, they had their remedy to move to strike it out as evidence against them. (Id.)

10. NOTICE TO DEFENDANTS OR EITHER OF THEM—SPECIAL ISSUE—FINDING SUSTAINED BY EVIDENCE.—Where a special issue was submitted to the jury as to whether three defendants named, including the pledgee of the note, "or any of them," had knowledge of the previous transfer to the plaintiff, an affirmative answer is sustained by proof that such pledgee had notice of such previous transfer. (Id.)

CONSTITUTIONAL LAW.  See Bonds, 3; Criminal Law, 7; Irriga-
tion District, 3; Justice's Court, 1; Municipal Corporations,
1; Office and Officers; Street Assessment, 7; Taxation.

CONTRACT.

1.  CONTRACT OF FRUIT COMPANY WITH FRUIT GROWERS—SEVERAL RIGHT
OF ACTION FOR BREACH.—A contract between a fruit company and a
number of fruit growers to receive and dry and market their
crops in the most approved manner, at specified rates per pound,
under which the fruit delivered by each fruit grower was
weighed and dried separately, and weighed again to the owner,
and then mingled with other fruit, and a receipt given to the
owner for so many pounds in bulk, is a several contract with
each fruit grower, and each has a several right of action against
the fruit company for breach of its contract. (Arnold v. Pro-
ducers' Fruit Co., 637.)

2.  COMMINGLING OF DRIED FRUIT—OWNERSHIP IN COMMON.—The com-
mingling of the dried fruit had no effect upon the title of the
several owners, other than simply to convert it into an owner-
ship in common. (Id.)

3.  NEGLIGENCE IN DRYING AND HANDLING PRUNES — EVIDENCE — BAD
CONDITION OF PRUNES IN BINS—GENERAL NEGLIGENCE.—In an action
by a fruit owner whose interest is an undivided third of dried
prunes commingled in bins, charging negligence of the defend-
ant in drying, curing, packing, and handling plaintiff's prunes,
evidence is admissible to show the bad condition of the fruit
in the bins, and the causes of its deterioration, and to show
general negligence in the drying process of the commingled
fruit, before it was commingled. (Id.)

4.  MEASURE OF DAMAGE TO COMMINGLED FRUIT. — Where damaged
fruit is commingled with the knowledge and consent of the
parties, the measure of damage to each owner of an undivided
share thereof is his proportion of the aggregate damage to the
commingled mass. (Id.)

5.  CONSTRUCTION OF CONTRACT—"MOST APPROVED MANNER"—METH-
ODS IN GENERAL USE—"GREEN GRADING" OF PRUNES—IMPROPER
RULINGS UPON EVIDENCE.—The provision of the contract that the
fruit should be handled and marketed "in the most approved
manner" is to be construed as referring simply to the methods
most generally used by competent men in the trade of fruit dry-
ing, though they may not be the best methods obtainable, or
secure the best results; and it is erroneous to permit proof that
the process known as the "green grading" of prunes was the
best process, and to exclude evidence that more men in the
state who handle and dry large quantities of prunes do not
adopt the process of "green grading" than those who do. (Id.)

6.  FIGURES GIVEN TO WITNESS BY ACCOUNTANT — REFUSAL TO STRIKE
OUT—ERROR DEEMED MATERIAL.—The testimony of the plaintiff as
a witness to a balance of account of which he had no personal

CONTRACT (Continued).

knowledge, the figures of which were given to him by an accountant, should be stricken out, and the refusal to strike it out is to be deemed material error, where the record does not clearly show otherwise. (Id.)

7. CONVERSION OF FRUIT—REJECTION OF REFUSE.—The fruit company is not liable for a conversion of fruit consisting only of the rejection of refuse fruit which was authorized by the terms of the contract. (Id.)

8. ACTION UPON CONTRACT—CONSTRUCTION OF RAILWAY EMBANKMENT—EVIDENCE—MEASUREMENT BY PLAINTIFF'S ENGINEER.—In an action upon a contract for the construction of a railway embankment, which provided for a percentage of shrinkage not to be paid for, but to be added to the fill, to be specified by the engineer of the company, who fixed it at five per cent, and made the grade that much higher to allow for settlement, where there is no question but that the embankment was constructed in a workmanlike manner, and was accepted by the company's engineers, evidence of a measurement of the cubical contents of the embankment made after the work was well settled by plaintiff's engineer, a competent expert, in the use of an ordinary and not unprofessional method, which was shown to be sufficiently accurate for practical purposes, is sufficient to justify the court in accepting his measurement and computations as the basis of its decision. (Scanlan v. San Francisco etc. Ry. Co., 586.)

9. DEDUCTION OF PERCENTAGE FOR SHRINKAGE.—Where the court, notwithstanding the measurement of plaintiff's engineer was made after the settlement of the embankment, deducted five per cent therefrom for shrinkage, its finding of the amount of earth in the embankment after allowing such deduction is not unwarranted by the evidence. (Id.)

10. EXCLUSION OF FIELD-NOTES OF DEFENDANT'S ENGINEER—FAILURE OF PROOF.—The field-notes made by the defendant's surveyor and engineer, who did not testify to their correctness, and the correctness of which was not proved by any competent evidence, were properly excluded. (Id.)

11. CONTRACT TO PAY FOR HOGS PURCHASED BY THIRD PERSON—ORIGINAL OBLIGATION—ABSOLUTE GUARANTY—NOTICE OF ACCEPTANCE—PRINCIPAL DEBTOR.—A contract by the defendant to pay for all the hogs which a third person should buy from the plaintiffs is an original obligation, and an absolute guaranty which requires no notice of acceptance to the guarantor, but, when accepted and acted upon by the plaintiffs by selling hogs to such third person upon the faith of the absolute promise of the defendant, he becomes the principal debtor of the plaintiffs, and liable as such. (Scribner v. Schenkel, 250.)

12. ABSOLUTE SALE TO THIRD PERSON—DELIVERY AND PAYMENT—CONCURRENT OBLIGATIONS.—Upon an absolute sale of a specified number of hogs by the plaintiffs to such third person at a fixed

CONTRACT (Continued).

price, with delivery upon demand of the purchaser, the delivery and payment of the purchase price were concurrent obligations. (Id.)

13. BREACH OF CONTRACT—OFFER OF DELIVERY—SALE IN MARKET—MEASURE OF DAMAGES.—Where the defendant, after payment for a portion of the hogs sold, declined to pay for any more of them, he thereby put himself in default, in breach of his contract, and plaintiffs became entitled to enforce the contract without further offer of delivery, and might, without any tender of delivery to the purchaser, sell the remainder of the hogs at the actual market price, at the time of sale, and recover from the defendant as the measure of damages for the breach of his contract, the difference between the contract price of the undelivered hogs and the price actually received in the market, in the absence of fraud, collusion, or unfair dealing. (Id.)

14. MARKET VALUE AT DATE OF PURCHASE—IMMATERIAL ISSUE.—An issue as to the reasonable market value of the hogs at the date of the purchase by the third person is immaterial, and no finding need be made thereupon. (Id.)

15. SALE OF GRAPES—MATURITY OF PURCHASE MONEY—REASONABLE TIME—CONSTRUCTION OF CONTRACT.—A contract for the sale of grapes be paid for when the purchaser shall have sold the wine made therefrom, or shall have sold other wine then on hand, is to be construed as allowing the purchaser a reasonable time in which to make, mature, and sell the wine from the grapes purchased, unless in the meantime he should in fact sell the other wine then on hand. (Campbell v. Heney, 109.)

16. ACTION FOR PURCHASE MONEY—INSUFFICIENT COMPLAINT—LACHES OF DEFENDANT NOT SHOWN.—A complaint in an action upon such contract to recover the purchase money, which alleges "that within a reasonable time after the delivery of said grapes" the plaintiff demanded payment of the price, instead of alleging that the demand was made after the lapse of a reasonable time for the defendant to fulfill his contract, does not show any laches of defendant, and does not state a cause of action. (Id.)

17. COMPARISON OF DATES—LAPSE OF REASONABLE TIME.—Where the court cannot, by the comparison of dates, see, as matter of law, that a reasonable time must have elapsed for the maturity and sale of the wine to be made from the grapes purchased, before the demand was made, the insufficiency of the complaint cannot be aided by such comparison. (Id.)

18. BREACH OF CONTRACT TO DELIVER WINE IN PAYMENT—RECOUPMENT—CROSS-COMPLAINT—PROOF OF GUARANTY.—A cross-complaint setting up damages by way of recoupment for breach of a contract that plaintiff should take wine from the defendant at an agreed price, in payment for the grapes sold by plaintiff to defendant, is sustained by proof that plaintiff agreed to take enough wine

CONTRACT (Continued). ·

to pay the debt, and find a purchaser at the agreed price. Such contract, whether construed as one of sale to plaintiff or of guaranty that the wine should be sold by plaintiff for enough to pay the debt, bound the plaintiff to accept the wine in full payment at the rate fixed, and the claim of damages in recoupment would be the same in either case. (Id.)

See Attorney and Client, 10; Bonds; Evidence, 2. 3; Growing Crops; Marriage; Pleading, 8-10; Sale; Specific Performance; Statute of Frauds; Street Assessment.

CONVERSION.

1. ACTION BY WIFE—COUNT NOT ALLEGING MARRIAGE—SEPARATE PROPERTY.—A count of a complaint by a wife for the conversion of goods belonging to her, which does not allege that she is a married woman, need not state that the property converted was plaintiff's separate property; but, if it is made to appear in proof that she is married, her right of recovery must depend upon the fact that such property was her separate property. (Hand v. Scodeletti, 674.)

2. ISSUE AS TO DEMAND—ANSWER DISPENSING WITH PROOF.—Where the answer takes issue upon the averment of demand in the complaint, but proceeds to aver facts showing that a demand, if made, would be unavailing, the averment of demand need not be proved. (Id.)

3. EVIDENCE—SALE TO PLAINTIFF—QUESTION ASSUMING FACT DISPROVED. Where a witness testified that he had purchased the goods in question at sheriff's sale, and had afterward sold them to the plaintiff, a question on cross-examination assuming a contrary fact that the goods were handed over to her husband, was properly disallowed as unfair. (Id.)

4. CROSS-EXAMINATION—OFFER OF EVIDENCE — ORDERS OF SUPERIOR COURT—RECORD—MATERIALITY NOT SHOWN.—Evidence offered upon cross-examination of plaintiff's husband relating to orders of the superior court is not shown to be material, where the record does not contain the orders, or show why they have any importance, or that any ruling was made excluding the evidence, but only that objection was sustained to a statement of fact made by counsel which the witness had denied. (Id.)

5. HARMLESS ERROR — ADMISSION OF EVIDENCE UPON COUNT WITHDRAWN FROM JURY.—An objection to evidence improperly overruled is harmless error, where the evidence relates only to a count of the complaint withdrawn from the jury by the instructions of the court, and could not affect the cause of action upon which the verdict was rendered. (Id.)

6. MEASURE OF DAMAGES FOR CONVERSION—VALUE—PRICE.—The measure of damages for the conversion of the plaintiff's goods is their value, not exceeding the price paid by plaintiff for them. (Id.)

CONVERSION (Continued).

7. INDEBTEDNESS NOT PART OF PRICE—INSTRUCTIONS—VERDICT FOR PRICE. Where no evidence appears in the record to show that a previously existing indebtedness of the plaintiff to the vendor of the goods was included in the purchase money, and it does not appear that defendant requested any instruction that such indebtedness must be deducted from the price, and the jury were properly instructed as to the measure of damages, a verdict for the full price of the goods will not be disturbed. (Id.)

See Growing Crops, 8; Pledge.

CORPORATION.

1. ACTION AGAINST STOCKHOLDERS — ASSIGNED NOTE — EVIDENCE — AGREEMENT FOR LOAN BY PLAINTIFF—CHECKS—NONSUIT.—In an action against the stockholders of a corporation upon a note of the corporation to a third person which was indorsed to the plaintiff, it is not ground for a nonsuit that it appears from plaintiff's evidence that plaintiff had agreed with one of the stockholders to loan the amount of the note to the corporation, and had given to such stockholder personally his check for that amount, and that a second check was afterward drawn by a firm of which such stockholder was a member, which was indorsed to the payee of the corporate note, who delivered the check to the corporation, and received its authorized note, which he immediately indorsed to the plaintiff. (Spreckels v. Butler, 645.)

2. LIABILITY OF CORPORATION AND STOCKHOLDERS.—The original liability of the corporation and its stockholders was to the one from whom the consideration of the authorized note was actually received, and to whom such note was made payable. Neither the corporation nor its stockholder could resist an action by him, on the ground that the money paid by him had been received from another person for the purpose of making the loan. The legal rights of the plaintiff rested upon his title to the note of the corporation indorsed to him by the authorized payee. (Id.)

3. No MATERIAL VARIANCE.—In such case there is no material variance between the complaint and the proofs of the actual advance of money by the plaintiff, which was finally passed through the hands of the payee of the note to the corporation, which could in any way mislead the defendants. (Id.)

4. EVIDENCE—LOAN—ASSIGNMENT—EXCLUSION OF TESTIMONY OF PAYEE. It is not material error to exclude general questions asked of the payee of the note, not purporting to relate to the transactions set forth in the complaint and testified to by the plaintiff, but generally as to whether such payee had at any time loaned any money to the corporation, or whether the corporation had borrowed any money from him. The further question as to whether he assigned the note to the plaintiff, after he had admitted that, was properly excluded as immaterial. (Id.)

CORPORATION (Continued).

5. ARTICLES OF SOCIAL OR BENEVOLENT ASSOCIATIONS—SUBSCRIPTION AND ACKNOWLEDGMENT—VERIFICATION.—The articles of incorporation of benevolent or social associations organized without profit under sections 593 and 594 of the Civil Code must be subscribed and acknowledged by at least five persons in accordance with section 292 of the Civil Code, in addition to the verification required by section 594 of that code. (People ex rel. Weatherly v. Golden Gate Lodge No. 6, Benevolent and Protective Order of Elks, 257.)

6. CONSTRUCTION OF CODE—NUMBER OF PERSONS INCORPORATING.—Sections 593 and 594 of the Civil Code providing for the incorporation of any number of persons associated together for any purpose where pecuniary profit is not their object, must be read in connection with section 292 of the Civil Code, as not providing for the incorporation of any number less than five persons. (Id.)

7. CONTENTS AND AUTHENTICATION OF ARTICLES—CONSISTENT PROVISIONS.—Effect must be given so far as possible to the consistent provisions of the Civil Code relating to the formation of corporations; and the fact that section 594 provides for the contents of articles of incorporation of the associations mentioned in section 593, in addition to the requirements of section 290, and further provides a mode of verification of such articles, cannot be construed as providing a complete scheme for their authentication, or as dispensing with the additional authentication required by section 292, which is not inconsistent with sections 290, 593, and 594. (Id.)

8. SUBSTANTIAL COMPLIANCE WITH LAW ESSENTIAL—QUO WARRANTO.— A substantial compliance with the law is essential to the valid organization of a corporation, and it cannot be dispensed with as against an attack upon its validity in an action of *quo warranto*. (Id.)

 See Guaranty; Insurance. 18, 19; Municipal Corporations; Pledge; Statute of Limitations, 6.

COSTS. See Appeal, 8, 9; Estates of Deceased Persons, 8, 9; Mechanic's Lien, 5.

COTERMINOUS OWNERS.

1. COTERMINOUS OWNERS OF LAND—INJURY FROM EXCAVATIONS FOR CONSTRUCTION—ORDINARY CARE AND SKILL—CONFLICTING EVIDENCE OUTSIDE OF ISSUES.—In an action by one of two coterminous owners of land against the other for injury to the soil and improvements of the plaintiff from excavations made by the defendant for the purpose of constructing a house on his land; where it is neither alleged nor found that the excavations were not made with ordinary care and skill, and that the defendant did not

COTERMINOUS OWNERS (Continued).

take reasonable precautions to sustain the land of the defendant, conflicting evidence on those points must be disregarded. (Nippert v. Warneke, 501.)

2. NOTICE OF EXCAVATION—CONSTRUCTION—GENERAL EXCAVATIONS.—A notice given to the plaintiff of the defendant's intention to excavate his lot adjoining that of the plaintiff to a depth somewhat below the foundation of plaintiff's house, and notifying the plaintiff to take the necessary measures to protect her property, is not to be construed as referring only to excavations immediately adjoining plaintiff's house, but as notice of intention to excavate the lot generally, and the foundation is referred to as indicating the depth of the proposed excavations. (Id.)

3. PARTY-WALL—EASEMENT—REMOVAL CAUSED BY DEFENDANT—SUPPORT OF FINDING.—Where a party-wall was erected by the original owner of the adjoining lots on the boundary line between them and partly on each lot, as the common foundation of two adjoining houses built by him upon the lots, and such owner conveyed one lot to the plaintiff and the other to the defendant, an easement resulted for the support of the party-wall, and where the defendant excavated his lot, and by his agents denied the existence of the party-wall, and announced his intention to continue the excavations to a depth beneath its foundation, with advice to the plaintiff to take care of it, a finding that the defendant caused the foundation wall to be removed is supported, notwithstanding it was in fact removed by plaintiff's agents, and a new foundation was built by plaintiff to support plaintiff's house. (Id.)

COUNTY. See Office and Officers.

COURTS. See Justice's Court.

CRIMINAL LAW.

1. FORGERY—FICTITIOUS CHECK—EVIDENCE—SHERIFF'S RETURN OF SUBPOENA.—Upon the trial of a defendant charged with forging the name of "J. P. Collin," alleged to have been a fictitious name, to a check payable to the defendant's order, which the defendant, a Chinese, claimed to have received from another Chinese person in the employ of a person named Collins in Santa Barbara county, the sheriff's return of a subpoena issued by the district attorney and directed to "J. P. Collins, Santa Barbara," stating that after diligent search and inquiry he was "unable to find J. P. Collins in the county of Santa Barbara," is not competent evidence against the defendant to prove the nonexistence of the person whose name was subscribed to the check, and this is so even if the name "Collin" could be considered as identical with "Collins." (People v. Lee, 330.)

CRIMINAL LAW (Continued).

.2. CONSTRUCTION OF STATUTE — SHERIFF'S ¦RETURN AS PRIMA FACIE EVIDENCE—TESTIMONY OF SWORN WITNESSES.—The statute making the return of the sheriff upon process *prima facie* evidence of the facts stated must be held to mean that the return is *prima facie* evidence when the question under investigation is of such a character as makes that mode of proof appropriate, and cannot be construed as dispensing with the testimony of sworn witnesses upon the trial of an issue which must be proved in the ordinary way, and not by a sheriff's certificate. (Id.)

3. LIBEL—EVIDENCE—ANONYMOUS LETTERS—OPINION OF EXPERT—COMPARISON OF HANDWRITING — ERRONEOUS ORDER STRIKING OUT EXHIBITS—PROVINCE OF JURY.—Upon the trial of a charge of libel contained in anonymous letters, where the defendant was convicted mainly upon the testimony of an expert in handwriting called for the plaintiff, and the defendant claimed and sought to prove by specimens of the handwriting of another expert that he had written them for the purpose of implicating the defendant in the charge, it was error for the court to strike out the exhibits of the handwriting of such expert, merely because plaintiff's expert witness testified that there was no similarity between such exhibits and the anonymous letters, and because there was no independent evidence tending to connect them; but the jury should be permitted to pass upon the question of similarity between them, from a personal inspection of them, and the plaintiff's expert witness cannot be substituted for the jury in passing upon that question of fact. (People v. Storke, 486.)

4. COMPARISON OF HANDWRITING BY NONEXPERTS—RIGHT OF JURORS TO DIFFER FROM EXPERTS.—In a case involving the comparison of different writings where the question is one of resemblance or similarity, an ordinary individual can arrive at a conclusion quite as correct as that of the opinion of the most skilled expert in handwriting. Jurors have the right to use their eyes as well as their ears in such a case, and may differ in their conclusion from the opinion of an expert witness. (Id.)

5. HOMICIDE—PRELIMINARY EXAMINATION—REASONABLE TIME TO EMPLOY COUNSEL.—Upon the preliminary examination of a defendant charged with murder, a continuance of six days after the reading of the complaint, and informing the defendant of his right to counsel and witnesses, allows the defendant a reasonable time in which to secure counsel. (People v. Flannelly, 83.)

6. REFUSAL OF FURTHER TIME—INSUFFICIENT SHOWING—DISCRETION. Where there was an insufficient showing of diligence, and no showing that the granting of further time would probably have a favorable result, the refusal of the magistrate to grant further time in which to secure attorneys is not an abuse of discretion: and the denial of a motion to set aside the information because of such refusal will not be disturbed upon appeal. (Id.)

CRIMINAL LAW (Continued).

7. PROSECUTION BY INFORMATION—CONSTITUTIONAL LAW—DUE PROCESS OF LAW.—The right conferred by the state constitution to prosecute persons charged with felony by information is not inconsistent with the provision for due process of law guaranteed by the state and federal constitutions. (Id.)

8. CHALLENGES TO JURORS—ACTUAL BIAS—OPINION FOUNDED ON RUMORS AND NEWSPAPER STATEMENTS—QUESTION OF FACT—DISCRETION.—The decision of challenges to jurors for actual bias in having opinions founded on rumors and newspaper statements is largely in the discretion of the court, and when the evidence on the subject presents a question of fact, and not of law, the decision will not be reviewed upon appeal. (Id.)

9. EVIDENCE—FLIGHT OF DEFENDANT—RESISTANCE OF ARREST.—Evidence is admissible for the prosecution to show the flight of the defendant after the homicide, and his resistance of arrest, as circumstances tending in some degree to show guilt; and the fact that the resistance amounts to another crime does not affect its admissibility to show conduct inconsistent with the claim of self-defense. (Id.)

10. INSTRUCTION AS TO FLIGHT AND RESISTANCE—QUESTIONS OF FACT.—An instruction that the flight or resistance of arrest of a person accused of crime is a circumstance to be weighed by the jury as tending in some degree to prove a consciousness of guilt, and is entitled to more or less weight according to the circumstances of the case, and that the weight to which such circumstances are entitled is to be determined by the jury, does not instruct the jury upon questions of fact, nor tell them as a fact that the defendant fled or resisted arrest, and is not substantially defective, though it could have been made more full and explicit. (Id.)

11. INSTRUCTION AS TO SELF-DEFENSE—DUTY TO RETREAT—HARMLESS ERROR.—Where the defendant was a trespasser upon the premises of the deceased, and found the deceased in bed in his own room, which he entered uninvited, and exhibited his pistol in a threatening manner, he was not justified in taking the life of the deceased, until he had first retreated; and the instruction upon the duty of retreat held prejudicially erroneous as applied to the facts appearing in other recent cases, and which contains objectionable features which ought to be eliminated in every case, and would be more satisfactory if qualified by involving the element of fault and wrongdoing upon the part of the defendant, is not prejudicially erroneous, as applied to the undisputed facts of this case. (Id.)

12. INSTRUCTION AS TO PREPONDERANCE OF EVIDENCE—HARMLESS ERROR—ABSTRACT PROPOSITION.—Where the defendant relied upon the plea of self-defense, and there was no issue as to insanity, an instruction that, "while the law requires the defendant's guilt to be established beyond a reasonable doubt, he may establish any

CRIMINAL LAW (Continued).

fact essential to his defense by a preponderance of evidence," should not be given, but the error being abstract, and the jury not being told that the defendant must establish any particular fact by a preponderance of evidence, no injury resulted from the instruction. [Temple, J., Henshaw, J., and Beatty, C. J., dissenting.] (Id.)

13. INSTRUCTION AS TO BELIEF OF DANGER— SATISFACTION OF JURY— REASONABLE DOUBT—HARMLESS ERROR.—Where the evidence clearly points to the defendant's guilt, and the court repeatedly instructed the jury that if they had a reasonable doubt as to the defendant's guilt, or as to the existence of any fact necessary to prove his guilt, he should be acquitted, an instruction upon the subject of the defendant's belief and fear of impending danger, that "you must be satisfied that he not only honestly entertained the belief, but that as a reasonable man was justified in so believing, and solely in consequence of such fear, and in order to save himself from death or great bodily injury, he killed the deceased," though objectionable in using the expression, "You must be satisfied," is not prejudicially erroneous, and does not constitute ground of reversal. [Temple, J., Henshaw, J., and Beatty, C. J., dissenting.] (Id.)

14. REFUSAL TO SET ASIDE ORDER DENYING NEW TRIAL—ADDITIONAL AFFIDAVITS—DISCRETION.—Where the showing made by affidavits is too weak to justify a new trial, and the court has made a proper order denying a new trial, it is not an abuse of discretion to refuse to set aside the order so as to allow additional affidavits to be filed. (Id.)

15. JUDGMENT—DESIGNATION OF PRISON—APPEAL—BILL OF EXCEPTIONS— RECORD.—Upon appeal from the judgment, where the judgment appearing in the record which answers to the judgment-roll in civil cases is perfect and complete in all its parts, and designates the prison where the defendant is to be confined and executed, the fact that the bill of exceptions shows a judgment announced in open court which did not designate the prison is immaterial. (Id.)

16. WARRANT OF EXECUTION—PRESENCE OF DEFENDANT—JUDICIAL ORDER —APPEAL—CASE OVERRULED.—A warrant fixing the time and place of execution is not required to be issued in the presence of the defendant, and its issuance is not a judicial order from which an appeal may be taken, within the purview of section 1237 of the Penal Code. *People v. Ebanks*, 117 Cal. 666, overruled on this point. (Id.)

See Municipal Corporations, 4-6.

DAMAGES. See Appeal, 5; Contract, 3, 13; Conversion, 6, 7; Malicious Prosecution, 9.

DEBTOR AND CREDITOR. See Assignment for Benefit of Creditors.

DEED.

1. CONVEYANCE IN SATISFACTION OF MORTGAGE—DEED NOT A MORTGAGE—LIMITED OPTION TO GRANTEE OF MORTGAGOR TO REPURCHASE—INDEPENDENT TRANSACTION.—Where a mortgagor transferred the mortgaged premises to his daughter as a gift, and subsequently, in consideration of the surrender, extinguishment, and satisfaction of the note and mortgage, the father and daughter made a deed absolute to the former mortgagee, without any agreement that it was to secure any debt, such absolute deed is not a mortgage; and an option given to the daughter to repurchase the granted premises within a limited period, upon payment of a sum equal to the principal and interest of the original mortgage debt, with the taxes for the year, and the expenses of deed, abstract, and record, the option to cease if not exer· cised within the time limited, is a new and independent trans· action as to her, who was never indebted to the grantee of the deed absolute. [Temple, J., dissenting.] (Garwood v. Wheaton, 399.)

2. QUIETING TITLE — EVIDENCE — WRITTEN MEMORANDUM OF ITEMS — PAROL PROOF.—In an action to quiet the title of the grantee of the deed absolute against the father and daughter, where the defendants offered in evidence a written memorandum showing the different items which made up the amount of the price to be paid by the daughter, including taxes for the year, under the option to repurchase, a question asking for parol proof as to who was to pay the taxes for the year was properly disallowed. (Id.)

3. INADMISSIBLE QUESTION BEGGING POINT IN ISSUE—WILLINGNESS OF GRANTOR TO CONVEY ABSOLUTELY.—A question asked of the daughter whether she was willing, and considered that she was deeding the property absolutely to the grantee named therein, is inadmissible, as begging the point in issue to be determined by the court from the evidence of the witnesses who had testified as to all that occurred prior to and at the time of the conveyance, and the reasons for executing the same. (Id.)

4. MARKET VALUE—IMPROPER QUESTIONS.—Questions as to the market value of the property not addressed to its value at the time of the conveyance, but as of the date of the trial, asked of a witness who testified that he did not know the market value of land in the vicinity of the land in question, are properly disallowed as not proper evidence. (Id.)

5. QUITCLAIM DEED—AMBIGUOUS TERMS—PAROL EVIDENCE—GRANT OF LICENSE TO MINE AND NOT OF FEE.—A quitclaim deed by the owner of a large tract of land of a small parcel described therein, with the words following the description, "the aforesaid premises to be occupied and used by the party of the second part

**DEED** (Continued).

for the purpose of working and operating the Boyleston mining claim," situated thereon, and referring to the record of the claim as located by the grantee for particular description, and with a *habendum* clause concluding, "for the uses and purposes aforesaid, and upon the conditions hereinbefore specified," is sufficiently ambiguous in its terms to admit of parol evidence of the circumstances and situation of the parties, and may be construed, in the light of such evidence justifying it, as intended to convey merely a license to work the mine described, and not a title to the premises in fee simple. (Baker v. Clark, 181.)

6. PRESCRIPTIVE TITLE—ADVERSE POSSESSION OF GRANTOR—ACTION TO QUIET TITLE.—Such quitclaim deed does not preclude the acquisition of a full title in the grantor by prescription as against the grantee of the mining right and those claiming under him; and upon repudiation of the contract by the grantor, and adverse possession by him of the whole of the tract, and payment of all taxes thereon for more than five years, a prescriptive title is acquired upon the basis of which the owner thereof may maintain an action to quiet his title against the grantee of the mining right and his subsequent grantees. (Id.)

7. CONDITION AS TO COST OF DWELLING — REMOVAL OF IMPROPER DWELLING TO LOT—BREACH OF PROMISE TO IMPROVE.—An express condition in a deed of several lots that any building to be used as a dwelling-house erected upon the premises within two years should cost not less than twelve hundred dollars, is broken by the removal to one of the lots, before the execution of the deed, with knowledge of its proposed condition, of a small, unsightly dwelling of no greater value than four hundred dollars, without the consent of the grantor, and under promise, after objection by the grantor, that he would improve the building so as to make it worth twelve hundred dollars, and by maintaining the same after the execution of the deed without further improvement, in breach of such promise. (Quatman v. McCray, 285.)

8. "ERECTION" AND "MOVING" OF BUILDING—"PLACING UPON" LOT —PLEADING—CONSTRUCTION OF DEED BY PARTIES.—In view of the facts accompanying the moving of the improper building upon the lot, and the construction placed upon the deed by both parties, it cannot be maintained that the "erection" of the building upon the lot was substantially different from the "moving" of a building thereupon; and a complaint averring that such building was "placed upon" a certain lot, "without the consent of the plaintiff," etc., sufficiently states that it was "erected" thereupon, as against a general demurrer. (Id.)

9. CONVEYANCE OF DISTINCT LOTS—TWO SETS OF ADJOINING LOTS— LOCATION OF BUILDING "UPON LOT"—FORFEITURE LIMITED TO SINGLE LOT.—In a conveyance of four distinct lots, containing nevertheless two distinct sets of adjacent lots, where it was conditioned "that any building to be used as a dwelling-house erected upon these

DEED (Continued).

premises within two years shall cost not less than twelve hundred dollars, and shall be located not less than twenty feet from front line of said lot," and where there is nothing in the deed expressly providing for a forfeiture of any other lot than that upon which the building of less cost is placed and maintained, in breach of the condition, the forfeiture is to be deemed limited to that particular lot, and not to include the lot adjacent thereto. . (Id.)

10. CONSTRUCTION OF DEED—CONDITION APPLICABLE TO EACH LOT.—The deed is to be construed as intending that the condition should apply to each lot conveyed, the same as if there had been four separate deeds of the separate lots, each containing the same condition set forth in the deed. (Id.)

11. WAIVER OF CONDITION—DELIVERY OF DEED—ACCEPTANCE OF NOTES AND MORTGAGE—COLLECTION OF INTEREST BY ASSIGNEE.—The delivery of the deed and the acceptance of notes and a mortgage upon the lots conveyed for the purchase money, under the facts of this case, could not operate as a waiver of the performance of the condition subsequent promised by the defendant and relied upon and insisted upon by the plaintiff, and which the defendant had the right thereafter to comply with within the period allowed by the deed for its performance. The subsequent collection of interest on the notes and mortgage by a bank, which was the assignee of the plaintiff, could not operate as a waiver of the condition on the part of the plaintiff. (Id.)

12. CONDITION RUNNING WITH TITLE—SUBSEQUENT DEED—NOTICE—RECITAL.—A condition subsequent in a deed is attached to the title, and runs with it as against the grantee of a subsequent deed, who has constructive notice by the record of the deed, or actual notice that his title would be subject to the condition. It is immaterial that the subsequent deed does not recite the condition contained in the deed to the grantor. (Id.)

See Cancellation; Easements; Fraudulent Conveyance; Trust; Vendor and Vendee.

DISTRICT ATTORNEY. See Oaths; Office and Officers.

DIVORCE.

1. ISSUE AS TO MARRIAGE—JUDGMENT—SUBSEQUENT ALLOWANCE OF COUNSEL FEES—MOTION FOR NEW TRIAL.—In action for a divorce by an alleged wife, where there is an issue as to the existence of the marriage relation, although it would be improper to allow counsel fees to the plaintiff in advance of a judicial determination of the existence of the marriage relation, yet, after a judgment establishing the marriage relation and granting a divorce, it is proper for the court to allow counsel fees to aid the plain-

DIVORCE (Continued).

tiff in defending against a motion for a new trial. (Harron v. Harron, 303.)

2. MOTION UPON FILES AND RECORD OF CAUSE—JUDGMENT NOT PRESENTED—JUDICIAL NOTICE.—Where the motion for the allowance of alimony was made upon an affidavit and upon the files and record of the cause, before the judge who presided at the trial, and who rendered the judgment, the fact that the affidavit and a counter-affidavit were the only papers read upon the motion, and that the judgment was appealed from, and was not formally presented to the court upon the motion, is immaterial. The record in the case was judicially before the court upon the motion, and it took judicial notice thereof. (Id.)

3. EFFECT OF APPEAL FROM JUDGMENT.—Although the appeal from the judgment suspended its operation, it did not prevent it from remaining the final determination of the court until reversed, for the purposes of subsequent proceedings in the case. (Id.)

See Appeal, 6, 7; Marriage.

DOMICILE. See Guardian and Ward.

EASEMENTS.

1. ACTION TO ABATE DAM—RISE OF LAKE—OVERFLOW OF PLAINTIFF'S LAND.—The owner of land adjoining a lake, whose right of possession has been protected for many years by a ditch forming an outlet to the lake for the purpose of reclaiming his land, may maintain an action to abate an obstruction of the outlet of the lake by a dam wrongfully erected by the defendant. which has caused the lake to rise and overflow the land of the plaintiff. (Hohenshell v. South Riverside Land etc. Co., 627.)

2. DEED TO PLAINTIFF'S GRANTOR—RESERVATION—RECLAMATION BY DITCH—PRESUMPTIONS AS TO OWNERSHIP.—Where land subject to occasional overflow by the lake at its natural level was subdivided into blocks and lots by the owners thereof and a deed of part thereof was made the following year by them as grantors to plaintiff's grantor, reserving to the grantors, their heirs or assigns, the right to reclaim the land for the benefit of the grantee, his heirs or assigns, in pursuance of which a ditch was constructed in that year by means of which the land was reclaimed by causing the sinking and keeping of the lake below its natural level, it must be presumed, in the absence of evidence to the contrary, that the land granted was owned by the grantors of plaintiff at the time of the deed, and was not included in any land not owned by them, and that plaintiff's grantor owned the land when the ditch was constructed in the same year. (Id.)

3. EFFECT OF RESERVATION—RECIPROCAL EASEMENTS—NOTICE TO DEFENDANT.—The reservation clause in the deed must be construed as reserving and granting reciprocal easements, viz., an ease-

EASEMENTS (Continued).

ment to the grantors over the land of the grantee for the purposes of reclamation thereof, and an easement to the grantee and his successors upon the lands of the grantors for the continuance and maintenance of the ditch by which the reclamation was effected; and the record of the deed was notice of these easements to the defendant, who claimed the right to obstruct the lake under a subsequent grant from one of the grantors named in the deed. (Id.)

4. THEORY OF COMPLAINT AS TO EFFECT OF RESERVATION—EXECUTORY CONTRACT—HARMONY WITH FINDINGS AND JUDGMENT.—The theory of the complaint as to the construction of the reservation clause in the deed to plaintiff's grantor, if regarding it as being a covenant or an executory contract, is immaterial, where such theory relates only to the legal effect of the material facts alleged as to the terms of the deed, and a correct theory thereof is in harmony with the findings and judgment. (Id.)

5. RIGHTS OF PLAINTIFF—RESTORATION OF DITCH TO FORMER LEVEL.— The plaintiff has the superior right to the precise relief of having the dam of the defendant abated and the ditch restored to and maintained at its former level. (Id.)

See Coterminous Owners, 3.

EJECTMENT.

PLEA OF FORMER JUDGMENT QUIETING TITLE—PENDENCY OF APPEAL— —STAY OF PROCEEDINGS—MANDAMUS.—In an action of ejectment where the answer pleaded a former judgment in the same court quieting the title of the defendant as against the plaintiff, and that an appeal was pending therefrom, and the plaintiff demanded judgment at the conclusion of the trial, the court had jurisdiction to set aside the submission of the cause, and to grant an application of the defendant to stay all proceedings in the action, to await the determination of the appeal in the former action to quiet title. The granting of such stay was a proper exercise of discretion; and the court cannot be compelled by mandamus to render a decision and judgment in the action of ejectment. (Smith v. Jones, 14.)

ELECTION.

1. ELECTION CONTEST—STATUTORY PROCEEDING — GROUNDS. — An election contest is a statutory proceeding which can only be inaugurated in one of the cases enumerated in section 1111 of the Code of Civil Procedure, and upon no other grounds than those therein specified. (Snibley v. Palmtag, 283.)

2. ILLEGAL VOTES—COMPARATIVE NUMBER OF VOTES.—A contest may be made on account of illegal votes; but it is not a ground of contest merely that some other person received a higher number of votes than the one declared, or an equal number of votes with him. (Id.)

ELECTION (Continued).

3. HIGHEST NUMBER OF LEGAL VOTES.—It is only where some other person than the one returned has received the highest number of legal votes that he can be declared elected. (Id.)

4. FINDING OF TIE VOTE—IMPROPER JUDGMENT ANNULLING CONTEST—DISMISSAL.—A finding upon an election contest that the contestant and the contestee have "received an equal and the highest number of votes cast for said office," cannot sustain a judgment annulling the election. The judgment should be that the contestant take nothing by the proceeding, and that it be dismissed. (Id.)

See Municipal Corporations, 7-9.

EQUITY. See Cancellation; Injunction; Pleading, 6-11; Specific Performance.

ESTATES OF DECEASED PERSONS.

1. PRESENTATION OF CLAIMS—NOTE SECURED BY MORTGAGE—RECITAL IN NOTE—MORTGAGE NOT PRESENTED.—The mere recital in a promissory note presented as a claim against the estate of a deceased person that it is secured by mortgage does not include a presentation of the mortgage, where no copy of the mortgage was set out in the claim, and no reference was made therein to the date, volume, or page of its record. (Estate of Turner, 388.)

2. SALE OF MORTGAGED LAND—PURCHASE BY MORTGAGEE—CREDIT UPON MORTGAGE NOTE.—Where land included in a mortgage not presented as a claim against the estate is purchased by the mortgagee, upon a sale thereof by the estate, he cannot claim an application of the purchase money as a credit upon the mortgage note presented and allowed as a claim against the estate. (Id.)

3. WAIVER OF LIEN OF MORTGAGE—RIGHT TO CONVEYANCE—PAYMENT OF PURCHASE MONEY.—By reason of the failure of the mortgagee to have the mortgage presented as a claim together with the mortgage note, he waived the right to have the mortgage considered as a lien on the property, and is not entitled to demand the conveyance from the administrator of part of the mortgaged property purchased by him, without payment of the price at which it was purchased from the estate. (Id.)

4. MOTION TO AMEND CLAIM TO INCLUDE MORTGAGE—ORDER DENYING MOTION—APPEAL—DISMISSAL.—An order denying a motion for an amendment of the claim upon the mortgage note by including the mortgage in the claim is not appealable; and an appeal therefrom must be dismissed. (Id.)

5. REVIEW OF ORDER AS ERROR—APPEAL FROM ORDER REFUSING CONVEYANCE UPON APPLICATION OF PURCHASE MONEY.—The order denying leave to amend the claim upon the mortgage note cannot be reviewed as error upon an appeal from an order refusing a previous motion to compel a conveyance upon application of

ESTATES OF DECEASED PERSONS (Continued).

the purchase money of mortgaged property purchased by the mortgagee from the estate, upon the mortgage note allowed as a claim. If the motion to amend had been granted, the amendment would not have been available upon the other motion, nor would it have been ground for a different ruling thereupon. (Id.)

6. INEFFECTIVE AMENDMENT OF CLAIM AFTER ORDER OF SALE AND CONFIRMATION—DIRECTION FOR CONVEYANCE.—The order of sale and the confirmation thereof having been made in view of the claims theretofore allowed against the estate, any amendment of a claim made after the confirmation of the sale could not affect the order of confirmation, nor take away from it the force of the direction therein made to execute the conveyance upon the payment of the purchase price, nor could it affect any sale of property previously had under the order. (Id.)

7. DELAYED APPLICATION FOR AMENDMENT — LIMITATION.—An application to amend the claim for inadvertence or mistake under section 473 of the Code of Civil Procedure could not be made after the lapse of six months from the allowance of the claim upon the mortgage note; and no substantial change can be made in an allowed claim after the expiration of the time allowed for the presentation of claims. (Id.)

8. APPEAL—SUBSTITUTION OF PARTIES—REPRESENTATIVE OF DECEASED PERSON—SUBSTITUTION IN SUPERIOR COURT—QUESTION OF COSTS.— The substitution of the representative of a deceased person as a party to an action pending an appeal to the supreme court ought regularly to be followed by a like substitution, upon a proper showing, in the superior court, in order properly to determine the responsibility for the costs upon appeal. (Reay v. Heazelton, 335.)

9. ACTION FOR COSTS ON APPEAL AGAINST REPRESENTATIVE OF SUBSTITUTED EXECUTRIX—STATUTE OF LIMITATIONS.—An action to enforce the payment of costs upon appeal awarded against the executrix of a deceased person substituted for such deceased person as a party to the action pending an appeal, brought two years after her death, against her personal representative and eight years after the decision of the appeal and filing of the cost bill, is barred under section 336, subdivision 1, of the Code of Civil Procedure. (Id.)

10. REPRESENTATIVE UNABLE TO WAIVE STATUTE — OBJECTION UPON APPEAL.—An executor or administrator acting for others, and in a trust capacity, cannot waive the statute of limitations by a failure to plead it by demurrer or answer, as may be done between parties acting in their own right. No claim barred by the statute can be allowed against the estate of a deceased person; and the executor or administrator may insist upon the bar of the statute, though not pleaded, whenever the bar ap-

ESTATES OF DECEASED PERSONS (Continued).

pears upon the record, and may raise the objection upon appeal for the first time. (Id.)

11. DISTRIBUTION—HEIRSHIP—EVIDENCE OF PEDIGREE—DECLARATIONS OF DECEASED BROTHER OF TESTATOR — PROOF OF FAMILY RELATION.— The declarations of the deceased brother of the testator are admissible upon the question of heirship of his estate arising upon distribution thereof, where there is other evidence to connect the declarant with the family of the testator, regardless of whether the rule of the common law requiring such other evidence has or has not been changed by sections 1852 and 1870 of the Code of Civil Procedure. (Estate of Williams, 552.)

12. BROTHER NAMED IN WILL — IDENTITY OF PERSON — PRESUMPTION— WILL AS PROOF—BURDEN OF PROOF.—The identity of the person of the deceased declarant, whose declarations were admitted in evidence, with the brother of the deceased testator named in the will, is presumed from the identity of name; and the will itself is sufficient evidence that the brother named in the will was a member of the family of the deceased testator. The presumption arising from the identity of name is rebuttable, but is sufficient to shift the burden of proof of the contrary upon the other side. (Id.)

13. INHERITANCE UNDER WILL—DEATH OF BROTHER WITHOUT ISSUE— DECLARATIONS OF ANOTHER DECEASED BROTHER.—Where the will of the testator gave the property to two brothers named therein, the death of one brother named in the will without issue prior to the death of the testator is sufficiently proved by declarations of the other deceased brother named in the will, whose children are claiming distribution of the estate, showing the family understanding and belief that such other brother enlisted in the army on the Federal side in the Civil War when a boy, and was believed to have been killed in the war before the death of the testator, and that he was never married. Such evidence is sufficient to sustain the finding of the court in favor of the children as entitled to distribution of the estate. (Id.)

See Appeal, 1-3; Homestead; Intervention, 1; Mechanic's Lien, 1, 2; Public Lands: Trusts, 10; Wills.

ESTOPPEL. See Bonds, 4; Jury and Jurors, 1; Trusts.

EVIDENCE.

1. GENERAL OBJECTION.—Where evidence is inadmissible for any purpose, the general objection that it is immaterial, irrelevant, and incompetent is sufficient. (Arnold v. Producers' Fruit Co., 637.)

2. ACTION FOR GOODS SOLD—MODIFICATION OF CONTRACT—REBATE FROM PRICE—AUTHORITY OF AGENT—CONFLICTING EVIDENCE—REVIEW UPON APPEAL.—In an action for goods sold and delivered, where a rebate from the agreed price is shown to have been made by an agent of the plaintiff in modification of the contract of sale,

EVIDENCE (Continued).

    and the evidence was conflicting as to the authority of the
    agent so to modify the contract, a judgment upon a waiver of
    findings, which in effect found in favor of the rebate, cannot
    be disturbed upon appeal. (Glenmore Distilling Co. v. Craig,
    264.)

3. REFUSAL TO ADMIT DEPOSITIONS—CONTENTS NOT SHOWN—STIPULA-
    TION—HARMLESS RULING.—The refusal to admit depositions taken
    under a commission issued to a notary public named because
    the commissioner failed to state in his certificate that he was a
    notary public does not appear to be prejudicial, where the
    transcript does not show the contents or materiality of the
    depositions; and where it was stipulated at the trial that one
    of the witnesses, who was president of the plaintiff corporation,
    would testify that he gave no authority to the agent to modify
    the original contract of sale from plaintiff to defendant.  (Id.)

    See Adverse Possession, 1-5; Appeal, 18, 19; Claim and Deliv-
        ery, 4-9; Contract, 5, 6, 8, 10; Conversion, 3-5; Corporation,
        1, 3, 4; Criminal Law, 1-4, 9, 12; Deed, 2-6; Estates of De-
        ceased Persons, 11-13; Insolvency, 2, 3, 10, 11; Insurance, 3;
        Malicious Prosecution, 1, 2, 5-7; Marriage; Mechanic's Lien,
        10, 11; Mortgage, 16, 17, 19; Negligence, 2, 3, 14; New Trial,
        1-3, 10, 17; Replevin, 2, 3; Wills, 9, 10.

EXECUTION.  See Fraudulent Conveyance, 1, 2; Growing Crops,
    6-8.

EXECUTORS AND ADMINISTRATORS.  See Brokers; Estates
    of Deceased Persons; Mechanic's Lien, 1, 2.

FINDINGS.  See Adverse Possession, 2; Appeal, 18; Jury and
    Jurors, 2; Marriage; Mechanic's Lien, 4; Mortgage, 1; Munic-
    ipal Corporations, 7-9; Nuisance, 2; Statute of Limitations,
    3, 4; Water and Water Rights.

FORFEITURES.

1. FORFEITURES NOT FAVORED—INTERPRETATION TO AVOID FORFEITURE.—
    Forfeitures are not favored by the courts; and, if an agree-
    ment can be reasonably interpreted so as to avoid a forfeiture,
    it is the duty of the court to avoid it.  The burden is upon
    the party claiming a forfeiture to show that such was the un-
    mistakable intention of the instrument.  (Quatman v. McCray,
    285.)

2. RECONVEYANCE OF LOT FORFEITED.—In an action to have the title
    to land adjudged forfeited for breach of condition subsequent,
    the court is authorized, under section 1109 of the Civil Code, to
    direct a reconveyance of the lot of land forfeited by the grantee
    to the grantor.  (Id.)

    See Deed, 9; Insurance, 12.

FORGERY. See Criminal Law, 1, 2.

FRAUD. See Cancellation, 1; Fraudulent Conveyance.

FRAUDULENT CONVEYANCE.

1. INSUFFICIENT CHANGE OF POSSESSION — LEVY UNDER EXECUTION — JUSTIFICATION—SHOWING REQUIRED.—An officer who would justify the taking of personal property from a stranger to the writ, and who would assail the transfer as fraudulent and void as to creditors because of an insufficient change of possession, must prove not only the execution, the levy, and that the execution plaintiff was a creditor of the defendant, but also the rendition of the judgment, and that the execution was issued thereupon. (Darville v. Mayhall, 617.)

2. ACTION AGAINST CONSTABLE AND SURETIES—INSUFFICIENT DEFENSE— ADMISSION AS TO EXECUTION.—In an action by a wife against a constable and his sureties to recover the value of personal property taken from plaintiff's possession, under execution against her husband, where the answer contains only a general denial and no plea of justification, a mere admission by the plaintiff that the property was seized under an execution issued out of a justice's court in a specified action against her husband, does not show any indebtedness of the husband nor any judgment against him, nor the issuance of execution upon such judgment, and does not, in the absence of any other showing, entitle the constable to question the validity of a transfer from the husband to the plaintiff. (Id.)

3. ACTION TO SET ASIDE DEED—FRAUD AND UNDUE INFLUENCE—STATUTE OF LIMITATIONS—NONSUIT.—Where a father died, leaving estate in the name of his brother, who sold it in 1872, and then paid the share of the deceased in money to his widow, who invested it and raised all of the children thereupon, and all of them, when of age, in 1887, joined in a deed of all their rights to their mother, in an action by one of them brought in 1897 to set the deed aside, for fraud and undue influence, alleged to have been discovered within two years to avoid the statute of limitations, if the plaintiff's evidence shows no fraud or undue influence connected with the deed, but the contrary, and shows that plaintiff knew all of the facts known by him when the deed was executed, a judgment of nonsuit is properly entered, and should be affirmed. (Sepulveda v. Sepulveda, 661.)

4. ASSIGNMENT OF INSURANCE POLICY—WANT OF CONSIDERATION—FRAUD UPON CREDITORS OF ASSIGNOR.—Where an insurance policy payable to the surviving wife of the insured was assigned by her after the death of the insured, without consideration moving to her. to an aunt who was a creditor of the insured, with intent to hinder, delay, and defraud the judgment creditors of the assignor, such creditors are entitled to the payment of their claims out of the proceeds of the policy as against the assignee. (Fidelity and Casualty Co. v. Thompson, 506.)

FRAUDULENT CONVEYANCE (Continued).

5. INTENT TO DEFRAUD CREDITORS—SUPPORT OF FINDING—APPEAL.— Evidence tending to show that the wife, who was the payee of the policy, was insolvent, and had declared a homestead upon her real property, and had assigned the insurance policy without legal consideration, so as to place all of her property beyond the reach of her existing creditors, sufficiently supports a finding of intent to defraud her creditors by such assignment, for the purposes of review upon appeal, where all reasonable implications derivable from the evidence must be considered as established facts. (Id.)

6. ASSIGNEE WITHOUT CONSIDERATION NOT PROTECTED—IGNORANCE OF FRAUDULENT INTENT.—An assignee who paid no consideration for the policy is not protected against the creditors of the assignor, however ignorant of the fraudulent intent of the assignor. (Id.)

7. GUARANTY BY WIDOW OF INSOLVENT HUSBAND'S NOTE—CONSIDERATION—PROMISE TO HUSBAND—MORAL OBLIGATION INSUFFICIENT.— Where the widow, without consideration other than a supposed moral obligation, and a promise made to the husband to pay his debt without legal obligation to do so, made a guaranty to pay her husband's note to the assignee of the policy, such guaranty was a mere legal gratuity, which could not be supported by a mere moral obligation, and could not constitute a legal consideration to support the assignment of the policy. (Id.)

8. TRANSFER OF NOTE IN TRUST.—The transfer of the note of the husband by the assignee of the policy to the assignor thereof in trust for collection, by the assignor, who was executrix of the will of her insolvent husband, and to pay the sums collected according to a declaration of trust made by the assignor, cannot constitute a consideration for a personal guaranty of the note by the assignor of the policy, nor for the assignment of the policy. (Id.)

9. ASSIGNMENT OF POLICY AS MEANS OF PAYMENT ON NOTE—DEPARTURE FROM TRUST.—The assignment of the policy, if made for the purpose of enabling the assignee to receive the proceeds of the policy as a means of payment of the husband's note transferred in trust to the assignor of the policy for collection, would contemplate a departure from the trust, and a violation of its provisions, for which the transfer of the note could not be the consideration. (Id.)

See Assignment for Benefit of Creditors; Insolvency, 1-9, 13-15.

FREEHOLDER'S CHARTER. See Justice's Court.

GROWING CROPS.

1. CHATTEL MORTGAGES ON CROPS—PRIORITY—SECOND MORTGAGE TO SECURE RENT—PRIOR AGREEMENT IN UNRECORDED LEASE—NOTICE.—

GROWING CROPS (Continued).

One who takes a first chattel mortgage on growing crops and crops to be grown during the year, duly verified and recorded to secure the payment of a *bona fide* indebtedness, is protected against a second mortgage of the growing crops to secure rent, though executed pursuant to a prior agreement therefor contained in an unrecorded lease, and though the first mortgagee had notice of the existence of the lease, if he had no actual notice of the agreement to give a mortgage to secure the rent therein contained. (Wilkerson v. Thorp, 221.)

2. KNOWLEDGE OF LEASE—CONSTRUCTIVE NOTICE—USUAL COVENANTS—UNUSUAL AGREEMENT FOR CHATTEL MORTGAGE.—The knowledge of the existence of an unrecorded lease is only constructive notice of the usual covenants ordinarily contained in a lease, and is not constructive notice of an unusual covenant therein agreeing to give the owner of the land a chattel mortgage to secure the payment of rent on all of the crops to be put in by the lessee, as soon as the crops should be out of the ground. (Id.)

3. REPLEVIN OF CROPS BY LESSOR—IMPROPER JUDGMENT FOR VALUE—LIENS FOR BALANCE OF RENT—CREDIT.—In an action of replevin for the crops brought by the lessor, a judgment in his favor for the full value of the crops in excess of the balance due for rent is improper in any event. The plaintiff, at the most, had only a lien upon the crop for the balance of rent due him; and, if he could not recover the identical crop, he was entitled to no greater sum as damages than the balance due him after crediting the value of crops received and sold by him, which should be applied as a payment on rent. (Id.)

4. VALIDITY OF CHATTEL MORTGAGE—CROP TO BE RAISED.—A valid chattel mortgage may be made not only upon growing crops, but also upon a crop to be raised upon specified land after the execution of the mortgage during a defined term. (Id.)

5. CROPPING CONTRACT—TENANCY IN COMMON.—Under a cropping contract giving to the cropper a certain share of the grain and hay raised by him upon a portion of a ranch, the cropper and the owner of the ranch are tenants in common in the crops. (Curtner v. Lyndon, 35.)

6. LEVY OF EXECUTION UPON OWNER'S INTEREST—ORDER TO PAY "RENT" TO CREDITOR—ASSIGNMENT—POSSESSION OF CROPPER FOR ASSIGNEE. Where an execution was levied upon the interest of the owner in the growing crops, and an order was given by the owner to the cropper to pay the "rent" to a creditor, who satisfied all liens upon the property, the word "rent" in the order is properly construed as referring to the interest of the owner in the crops, and as having the effect of an assignment thereof to such creditor, and of making the assignee a tenant in common with the cropper, whose possession is the possession of the assignee. (Id.)

GROWING CROPS (Continued).

7. ASSIGNMENT OF INTEREST LEVIED UPON—STATUTE OF FRAUDS.—The assignment of the undivided interest of the owner of land in crops growing thereupon under a cropping contract, by means of an order given in favor of a creditor, at a time when the owner's interest therein was levied upon under execution, is not subject to the provisions of section 3440 of the Civil Code, and does not require an actual delivery from the assignor to the assignee. In such case, the parties stand in no different position as to the law from that which they would have occupied if the cropper had had the actual and exclusive possession of the property at the date of the order rather than the sheriff. (Id.)

8. RIGHTS OF ASSIGNEE—SATISFACTION OF LIENS—SUBSEQUENT LEVY AND SALE—ACTION FOR CONVERSION.—The assignee of the owner's interest in the crop, having satisfied all existing liens against the property, became the owner thereof as against the sheriff, and, being in possession thereof as a tenant in common with the cropper, no subsequent levy of the sheriff upon the interest of the owner in the crops and sale thereof under execution can affect the rights of the assignee; and he may maintain an action for the conversion of the crops by such levy and sale. (Id.)

GUARANTY.

1. GUARANTY OF DEBT OF CORPORATION—NOTE SECURED BY MORTGAGE—BREACH OF GUARANTY—STATUTE OF LIMITATIONS.—A guaranty by stockholders of a corporation of the payment of a loan to the corporation secured by the corporate note and mortgage, "with interest thereon at the times and according to the terms expressed in said note and mortgage," is an absolute and unconditional guaranty, not dependent upon any condition of the foreclosure of the mortgage, and the exhaustion of the mortgage security; and a breach thereof occurred upon which to base an action when the note therein mentioned fell due and remained unpaid, and an action upon the guaranty was barred by the statute of limitations at the expiration of four years thereafter. (Pierce v. Merrill, 464.)

2. DISTINCTION BETWEEN GUARANTY OF PAYMENT AND INDEMNITY AGAINST LOSS. — An unconditional guaranty of payment is to be distinguished from a conditional guaranty in the nature of a contract of indemnity against loss. In the first case the liability of the guarantor is fixed by the failure of the principal debtor to pay at maturity; while in the second case, no liability is incurred until after, by the use of due and reasonable diligence, the guarantee has become unable to collect the debt from the principal debtor. (Id.)

3. CONSTRUCTION FROM CONDUCT OF PARTIES—UNAMBIGUOUS LANGUAGE. It is only an ambiguous contract that can be construed in the light of the conduct of the parties; and where the language of

GUARANTY (Continued).

an unconditional contract of guaranty is clear and unambiguous, the court will be guided only by the language used, and construe the intention of the parties to have been according to the terms of their agreement. (Id.)

4. REQUEST FOR POSTPONEMENT OF FORECLOSURE SALE.—The request of the guarantor for the postponement of a foreclosure sale against the corporation, made more than four years after the note and guaranty fell due, cannot affect the right of the guarantors to contend that the guaranty was unconditional and was barred by limitation. (Id.)

5. WRITTEN ACKNOWLEDGMENT OF INDEBTEDNESS — PLEADING — DEMURRER.—If the plaintiffs rely upon a written acknowledgment of the indebtedness of the guarantors to take the guaranty out of the operation of the statute of limitations, they must allege it in the complaint; and if it is not alleged, and the complaint shows a breach of the guaranty more than four years before the commencement of the action, it is insufficient as against a demurrer based on the statute of limitations. (Id.)

See Bonds, 2; Contract, 11, 18; Fraudulent Conveyance, 7; Statute of Limitations, 6.

GUARDIAN AND WARD.

1. DOMICILE OF MINORS—DEATH OF PARENTS—CHANGE OF DOMICILE.— Minors whose parents were domiciled in this state at their death retain the domicile of their deceased parents until it is shown to have been changed by competent authority. The minors, as infants, are powerless to change their own domicile from one state to another. (Estate of Henning, 214.)

2. PERMISSION TO TESTAMENTARY GUARDIAN TO REMOVE MINORS FROM STATE—RETENTION OF JURISDICTION—PRESUMPTION AGAINST CHANGE OF DOMICILE.—The jurisdiction of the superior court of this state over minors domiciled therein is not lost by an order permitting their testamentary guardian to remove them from the state until further order of the court. Such order implies the retention of jurisdiction over them, and it cannot be presumed that their domicile has been changed, or that their residence out of the state has become permanent, in the absence of evidence to show that it is otherwise than temporary. (Id.)

3. RESIGNATION OF TESTAMENTARY GUARDIAN—MINORS LEFT OUT OF STATE—JURISDICTION TO APPOINT SUCCEEDING GUARDIAN. — Where the surviving testamentary guardian of the persons and estate of minors domiciled in this state, after an order permitting him to remove them to South Carolina until further order of the court, resigned his trust, and was discharged without further order of the court as to the minors, who were left in the state of South Carolina, the superior court of this state must be presumed to have jurisdiction to appoint a succeeding guardian both of the persons and estates of the minors, in the absence of

GUARDIAN AND WARD (Continued).

proof of a change of their domicile or permanent residence by competent authority. (Id.)

4. FAILURE TO ORDER RETURN OF MINORS—ABANDONMENT OF JURISDICTION NOT PRESUMED.—The failure of the court to order the return of the minors to this state, when the testamentary guardian was discharged, creates no presumption that the court abandoned jurisdiction of the persons of the minors. (Id.)

5. RIGHT OF DISCHARGED GUARDIAN TO CONTEST APPOINTMENT—NON-RETURN OF MINORS—CLAIM OF FOREIGN GUARDIANSHIP—APPEAL.— Where the discharged testamentary guardian claimed an appointment as guardian of the minors by a court of competent jurisdiction in South Carolina, and was not ordered by the superior court to return the minors to California, and was served with notice of the application for the appointment of a succeeding guardian of their persons and estates, and appeared in opposition thereto, without objection, to contest the appointment of a guardian of the persons of the minors, it cannot be objected upon appeal that he had no right to contest the appointment, and ought not to be heard upon appeal, without first bringing the minors within the jurisdiction, he not being in default in that regard. (Id.)

HOMESTEAD.

1. ESTATES OF DECEASED PERSONS—INSOLVENT ESTATE—PROBATE HOMESTEAD—DISCRETION—LIMIT OF VALUE.—The law does not contemplate, in case of an insolvent estate, that the homestead set apart out of the separate estate of the decedent shall be sufficient in extent for the permanent support of the family, and although there is no limitation fixed by law to the value of a probate homestead not selected by the decedent, yet as an insolvent debtor cannot claim a homestead worth more than five thousand dollars against the demands of his creditors, a wise discretion should limit the value of the homestead so set apart out of his insolvent estate to that sum, where a homestead of that value can be divided from the remainder of the estate, or where the property sought to be set apart is capable of such admeasurement. (Estate of Adams, 380.)

2. LARGE FARM USED FOR FAMILY HOME—EXCESS IN VALUE—ABUSE OF DISCRETION.—Where it appears that the estate is insolvent, and the family home was a large farm, the separate property of the deceased, comprising two hundred and fifty acres of cultivated land, and about eighty acres more of land not cultivated in the creek bottom, worth in all more than eleven thousand dollars, and the property is so situated that a portion thereof not exceeding five thousand dollars in value could be selected and set apart as a homestead, an order setting apart the whole farm as a homestead is an abuse of discretion, and must be reversed. (Id.)

HOMESTEAD (Continued).

3. CORRECTNESS OF ORDER—CRITERION—CONDITION OF ESTATE AT TIME OF APPLICATION—SUBORDINATE RIGHTS OF CREDITORS—PROTECTION OF FAMILY.—In determining the correctness of an order setting apart a homestead out of the separate estate of the decedent, the character of the estate, or its amount and condition, at the time of the application or of the hearing thereon, and the rights of the creditors as then appearing, viewed as subordinate to the right of the family to the protection of a home, are to be considered; and an order which might have been supported at the outset of an administration may not be supported where it is clear that the estate has become insolvent. (Id.)

4. IMMATERIAL MATTERS—MANAGEMENT OF ESTATE—FAMILY ALLOWANCE.—In determining the right to have a homestead set apart, the court should not take into consideration any benefit that the estate may have derived from the care and provision of the widow as executrix, or any extravagance on her part in the management of the estate, or any amount previously allowed for the support of the family. (Id.)

5. ESTATES OF DECEASED PERSONS—TITLE OF PROBATE HOMESTEAD—SEPARATE PROPERTY OF HUSBAND—ORDER PRIOR TO 1881.—If the decedent left a widow and no minor child, an order setting apart a probate homestead to the widow out of the separate property of the husband, made prior to the amendment of 1881 to section 1465 of the Code of Civil Procedure, made such homestead the property of the widow, and the title did not vest at her death in the heirs or devisees of the deceased husband. (Hardwick v. Black, 672.)

6. CASE AFFIRMED.—*Mawson v. Mawson*, 50 Cal. 539, affirmed. (Id.)

HUSBAND AND WIFE. See Conversion, 1; Divorce.

INJUNCTION.

1. APPEAL FROM MODIFYING ORDER—REVIEW.—Upon an appeal by the plaintiffs from an order modifying an injunction no error of the court in not directly passing upon a pending motion of the defendant to reopen the hearing of a motion to dissolve the injunction can be reviewed; and no fact bearing upon such motion, or upon the refusal of the court to dissolve the injunction, can be considered where it does not clearly appear that the defendant's motion to dissolve the injunction was based upon the same pleadings and affidavits considered upon the order modifying the injunction. (Christopher v. Condogeorge, 581.)

2. ANSWER TREATED AS AFFIDAVIT—VERIFICATION—"INFORMATION AND BELIEF."—A verified answer denying the allegations and substantial equities of the complaint may be treated as an affidavit in making an order modifying an injunction granted upon a verified complaint, and if in the body of the answer no fact is stated upon information and belief the verification is to be

INJUNCTION (Continued).

    regarded as a positive affirmance of the truth of the allegations of the answer, notwithstanding the use of the form of verification containing the usual words, "except as to the matters and things therein stated on his information and belief," etc. (Id.)

3. MODIFICATION OF INJUNCTION—DISCRETION OF COURT.—The modification of a preliminary injunction is a matter in the sound discretion of the trial court, and unless this discretion appears to have been abused, this court will not interfere. (Id.)

    See Water and Water Rights.

## INSOLVENCY.

1. ACTION BY ASSIGNEE—FRAUDULENT TRANSFER.—An action may be maintained by an assignee in insolvency of a copartnership to recover property fraudulently transferred by the insolvents within one month before the filing of the petition in insolvency. (Ballou v. Andrews Banking Co., 562.)

2. TRANSFER OUT OF COURSE OF BUSINESS—NOTICE OF INSOLVENCY—PRIMA FACIE EVIDENCE OF FRAUD—BURDEN OF PROOF.—An assignment by a copartnership firm doing business as retail merchants of the accounts, books, journals, ledger, and blotters of the firm to a father in law of one of the partners, residing in another county, is not made in the usual and ordinary course of business of the firm, and is notice of its insolvency, and *prima facie* evidence of fraud, which throws the burden of proof upon the defendant to show that the transfer was in good faith and not fraudulent. (Id.)

3. ABSENCE OF EVIDENCE TO OVERCOME PRESUMPTION—RECOVERY BY ASSIGNEE AGAINST SECOND TRANSFEREE.—In the absence of evidence to overcome the presumption of fraud, raised by the *prima facie* case made by the transfer out of the ordinary course of business, the assignee is entitled to recover the property so transferred by the insolvent firm against a second transferee thereof, who took from the original transferee by transfer entered on the ledger on the same page with that of the original transfer, and with actual notice of the insolvency of the firm, and who applied the property so transferred on the indebtedness of the firm to such second transferee. (Id.)

4. VOID TRANSFER—TITLE OF SECOND TRANSFEREE.—Where the original transfer is void as against the creditors of the firm, a second transferee of the property taking it from the first transferee can take no greater title than that held by the first transferee. (Id.)

5. INTENTION OF TRANSFER—REFUSAL OF INSTRUCTIONS.—It is proper to refuse instructions to the effect that if, at the time of the transfer by the firm, it was not intended for the defendant,

INSOLVENCY (Continued).

plaintiff should recover, where the circumstances in evidence indicate that defendant was aware of the fraudulent intent of the firm in making the transfer, and there is no evidence that it was not intended for the defendant. (Id.)

6. INSTRUCTIONS AS TO FACTS KNOWN TO JURY—PRESUMPTION.—The jurors must be presumed to have ordinary common sense and intelligence, and could not reasonably be misled to believe from an instruction that they will "consider all the facts and circumstances by which the parties were surrounded" at the time they made the assignment, "so far as known to them," that they had the right to consider any facts not proven in the case before them. (Id.)

7. INSTRUCTIONS AS TO BELIEF OF JURY.—An instruction directing the jury that if they "believe" certain facts, then they should find for the plaintiff, is not misleading, where the context shows that it clearly meant to refer to facts which might be found by the jury, and the court elsewhere instructed the jury at appellant's request that if there is no testimony to support any fact alleged in the complaint, such fact should be found for the defendant. (Id.)

8. INSTRUCTION AS TO TRANSFER OF "ALL" BOOKS—APPLICATION TO EVIDENCE.—An instruction that a transfer by a retail merchant of all his books of account, and the accounts therein, is not in the usual and ordinary course of business, is correct, and is applicable to evidence showing an assignment of a ledger, "and each and every account therein contained, together with the blotters and journals and other books of account" of the firm "from which said accounts are taken and made." (Id.)

9. TRANSFER OF PART OF BOOKS—COURSE OF BUSINESS.—A transfer of part of the books of a retail merchant would not be in the usual and ordinary course of business. (Id.)

10. OPPOSITION TO DISCHARGE OF DEBTOR—ABSENCE OF ANSWER TO OPPOSITION — EVIDENCE — WAIVER — JURISDICTION.—The court is not deprived of jurisdiction to determine the merits of an opposition to the discharge of an insolvent debtor by one of his creditors, by reason of the fact that no formal answer was filed thereto by the insolvent. The creditor had a right to consider the affidavit of the debtor in support of his application for discharge as a substantial denial of the opposition thereto; and where the creditor introduced evidence in behalf of the opposition, a formal answer thereto was waived, and the court had jurisdiction to determine the merits of the case, and to grant the application for discharge. (Estate of Clark, 147.)

11. DELIVERY OF BOOKS TO CLERK—EVIDENCE OF DEPUTY—FINDINGS.— An averment in the opposition of the creditor that the books of account of the insolvent debtor were not delivered to the clerk, is not necessarily sustained by the evidence of a deputy clerk that he had access to the records and papers of the office, and

INSOLVENCY (Continued).

had never seen any account-books which had belonged to the insolvent. Where no evidence was given by the county clerk himself, the court was not required to find from the evidence of the deputy that the books were not delivered to the·clerk, nor that the defendant had not kept proper books of account. (Id.)

12. INSUFFICIENT AVERMENT IN OPPOSITION—FAILURE TO KEEP PROPER BOOKS OF ACCOUNT—DEFECTS NOT SPECIFIED.—The averment of the creditor, as his opposition to the discharge of the debtor, upon information and belief, that the insolvent had not kept proper books of account, without specifying or showing any defects in the mode in which they had been kept, is not sufficient to defeat the application. (Id.)

13. INVOLUNTARY INSOLVENCY—FRAUDULENT SALE—PAYMENT IN CONTEMPLATION OF INSOLVENCY — ACTUAL FRAUD — INSTRUCTIONS.—Where petition in involuntary insolvency alleged a sale to have been made by the defendant, being insolvent, with intent to delay, defraud, and hinder his creditors, and a payment made by him in contemplation of insolvency, actual fraud is necessarily involved in both of the charges, and, upon a trial by jury of issues joined thereupon, an instruction that the question involved is one of legal fraud upon the insolvency law, rather than fraud in fact or fraud upon the creditors, is properly refused. (In re Strock, 658.)

14. PREFERENCE OF CREDITOR BY DEBTOR. — A debtor, whether insolvent or not, may prefer any one of his creditors, provided he does not do so to hinder, delay, or defraud his creditors, or in contemplation of insolvency. (Id.)

15. QUESTIONS FOR JURY—CONTEMPLATION BY DEBTOR.—Upon the trial of the issues joined upon the petition of the creditors, an instruction that if the jury believed that the defendant was not insolvent within the meaning of the insolvency law of the state at the time of the filing of the petition, and did not contemplate insolvency prior to that date, they should find in his favor, is correct. (Id.)

16. PARTITION — FINDINGS—CONVEYANCE BY SECOND ASSIGNEE IN INSOLVENCY—DUE APPOINTMENT — COLLATERAL ATTACK — PRESUMPTION — DISCHARGE OF FIRST ASSIGNEE.—In an action for partition, where plaintiff's title depends upon a conveyance of the undivided property of a partner, made by a second assignee in insolvency under an order of sale and confirmation, and the court finds that the appointment of the second assignee was duly given and made, and that he thereupon became and ever since continued to be the qualified and acting assignee, it must be presumed, as against a collateral attack in the action for partition, that the order of appointment of the second assignee was regularly made within the jurisdiction of the court in the insolvency proceedings, and that it was supported by proof of

INSOLVENCY (Continued).

the discharge of the first assignee and that the first appointment was no longer in force. (Freeman v. Spencer, 394.)

17. TITLE OF ASSIGNEE IN INSOLVENCY—RELATION—INTERVENING JUDGMENT QUIETING TITLE.—The title of an assignee in insolvency relates to the filing of the petition in insolvency, and must prevail over an intervening judgment to quiet the title of a third party against one of the insolvent debtors, rendered after the filing of the petition, and before the date of the assignment. (Id.)

See Homestead, 1-4.

INSTRUCTIONS.

REFUSAL OF BEQUESTS. — Requested instructions which are embodied in the charge, or which are inapplicable to the evidence in the case, are properly refused. (Silveira v. Iversen, 187.)

See Criminal Law, 10-13; Insolvency, 5-8; Insurance, 10; Malicious Prosecution, 2, 8, 9; Mortgage, 18; Negligence, 6; New Trial, 2, 3.

INSURANCE.

1. FIRE INSURANCE—REINSURANCE—MISTAKE OF APPLICANT—REFORMATION.—A policy of reinsurance in another company taken by a fire insurance company for one year, dated one day prior to the date of its own policy for one year, does not cover a loss occurring on the last day of its policy; and the mistake of date by the applicant for reinsurance, not known to or concurred in by the company issuing the policy of reinsurance, is not ground for reforming that policy, which was issued according to the terms of the written application therefor. (Milwaukee Mechanics' Ins. Co. v. Palatine Ins. Co., 91.)

2. MUTUAL MISTAKE REQUISITE FOR REFORMATION.—Equity cannot reform a policy of insurance unless by mutual mistake of the parties it has failed to express their agreement, and such mutual mistake must be made out by the clearest evidence. (Id.)

3. INCOMPETENT EVIDENCE— CUSTOM OF INSURANCE COMPANIES.—Evidence as to the custom of insurance companies as to the period of reinsurance is incompetent to control the terms of a policy of reinsurance for a definite period between two dates, issued pursuant to a written application therefor. (Id.)

4. FIRE INSURANCE—LOSS UPON BUILDINGS PAYABLE TO MORTGAGEE—INTERESTS OF MORTGAGOR AND MORTGAGEE — DISCHARGE OF MORTGAGE DEBT.—A policy of fire insurance taken by a mortgagor upon the mortgaged buildings with loss made payable to the mortgagee, as further security for the mortgage debt, is upon the interest of the mortgagor, who is the party insured; and the relation of the mortgagee to the policy is merely that of a creditor having a

INSURANCE (Continued).

provisional assignment of the contingent proceeds of the policy, and his interest therein ceases whenever the mortgage debt is discharged. (Reynolds v. London and Lancashire Fire Ins. Co., 16.)

5. PURCHASE BY MORTGAGEE UNDER FORECLOSURE — EXTINGUISHMENT OF DEBT—CESSATION OF INTEREST IN POLICY.—A purchase by the mortgagee, under foreclosure, of the mortgaged premises for the amount of the mortgage debt and costs, operated as an extinguishment of the debt, and the mortgagee thereby ceased to be a creditor of the mortgagor, and had no further interest as such creditor in the policy of insurance taken by the mortgagor, and cannot recover thereupon for any subsequent loss. (Id.)

6. LOSS DURING PERIOD FOR REDEMPTION—PAYMENT TO MORTGAGOR—CHANGE OF POSITION OF MORTGAGOR.—The payment to the mortgagor of a loss which occurred during the period for redemption, cannot make the insurance company liable to the mortgagee as a creditor of the mortgagor, after his interest in the policy has ceased with the extinguishment of the indebtedness; and it is immaterial whether the mortgagor could or could not have recovered anything upon the policy. The change of the mortgagee from the position of creditor to that of purchaser cannot aid him in recovery upon a policy in which he had no interest but that of creditor. (Id.)

7. EFFECT OF SALE UNDER FORECLOSURE — REDEMPTION — CASE LIMITED.—Though a sale under foreclosure does not extinguish the mortgagor's equity of redemption, until the expiration of the statutory period for redemption, yet it does pass a defeasible title which may become absolute, and it operates to extinguish the mortgage debt if the purchase is made for the amount thereof. Redemption is not made by paying the extinguished debt, but by paying the purchase price, with statutory percentage and costs. The case of National Bank v. Union Ins. Co., 88 Cal. 497, limited so far as inconsistent with later cases, and with the opinion in this case. (Id.)

8. FIRE INSURANCE—TIME FOR PROOFS OF LOSS—CONDITION PRECEDENT TO ACTION.—A policy of fire insurance providing that proofs of loss shall be made within sixty days after the fire, unless such time is extended in writing by the company, and that no suit or action on the policy shall be sustainable "until after full compliance by the insured with all the foregoing requirements," makes the proofs of loss within the time limited a condition precedent to an action upon the policy. (White v. Home Mutual Ins. Co., 131.)

9. INSUFFICIENT COMPLAINT UPON POLICY.—A complaint upon a fire insurance policy which shows that the proofs of loss were made four months after the loss, and which does not set out any facts showing a waiver of the condition that the proofs must be presented within sixty days, does not state a cause of action. (Id.)

INSURANCE (Continued).

10. ERRONEOUS INSTRUCTION—REASONABLE TIME.—It is error to instruct the jury that they are to determine whether, under all the facts and circumstances of the case, the proofs of loss were presented within a reasonable time, and to find in favor of the plaintiffs, if they find the proofs were presented within a reasonable time under those facts and circumstances. (Id.)

11. LIFE INSURANCE—PAYMENT OF FIRST PREMIUM BY NOTE—CONDITION— DELIVERY OF POLICY—WAIVER.—Where the note of the insured was given for the first annual premium upon a life insurance policy, for which a receipt was given by the general agent specifying that if the application was accepted the policy should be in force from the date of acceptance, and the note was forwarded by such agent to the home office, and its amount was there charged to the agent, and the policy was issued and delivered to the insured, it must be held that the first premium was paid by the note, and the delivery of the policy is evidence that cash payment was waived in so far as it may have been a condition precedent to the delivery of the policy. (Harrigan v. Home Life Ins. Co., 531.)

12. NONPAYMENT OF PREMIUMS—NOTICE REQUIRED BY NEW YORK STATUTE—FORFEITURE—CONSTRUCTION OF POLICY.—A policy issued at the New York office by a New York life insurance company, and which is a contract to be performed in that state, is to be read as if the New York statute, requiring thirty days' written notice to be given after nonpayment of a premium before the policy can be declared forfeited, were incorporated in the policy; and there can be no forfeiture of such policy unless the company alleges and proves nonpayment after due service of the notice required by law. (Id.)

13. LIMITATION OF POWER—WAIVER OF NOTICE NOT PERMISSIBLE.—A New York life insurance company has no power to declare a forfeiture in the absence of the notice required by law; and the statute being a limitation upon its power, the statutory notice cannot be waived, though an express waiver of the notice is inserted in the policy. (Id.)

14. STATUTE OF LIMITATIONS—POLICY EXECUTED OUT OF STATE.—An action upon a policy of insurance executed out of this state is barred after the lapse of two years from the time of the accrual of a cause of action thereupon, under subdivision 1 of section 339 of the Code of Civil Procedure. (Id.)

15. PLACE OF EXECUTION OF POLICY—DELIVERY.—A policy of insurance which does not expressly stipulate that the policy shall not be in force until actual payment of the premium in cash, and which has been issued in consideration of a note for the premium, given to the general agent under a contract which expressly stipulated that the policy should be in force from the date of the acceptance of the application by the company, the note having been charged by the company to the agent when

INSURANCE (Continued).

the policy was issued, and which policy purports to be signed and delivered in the state of New York, is a binding policy from the date of its execution and transmission from New York, and is to be deemed executed out of the state. (Id.)

16. LAPSE OF PERIOD OF LIMITATION—ABSENCE OF NOTICE, PROOF, AND DEMAND.—Where the covenant of the policy was to pay within sixty days after notice and proof of death and the interest of the party giving the notice, the covenant is practically for a demand of payment, and, in the absence of any notice, proof of death, or demand of payment within the period of limitation, the claim is stale, and no action can be maintained thereupon. (Id.)

17. RUNNING OF STATUTE—ACCRUING OF CAUSE OF ACTION—POSSIBLE ACTS OF CREDITOR MAKING CLAIM PAYABLE.—A cause of action is deemed to have accrued in such case, for the purpose of setting the statute of limitations in motion, as soon as the creditor by his own acts could make the claim payable, in spite of the debtor. He cannot prevent the statute from running by failing to make a demand required to establish his right of action. (Id.)

18. RIGHT OF FOREIGN INSURANCE COMPANY TO PLEAD STATUTE—APPOINTMENT OF AGENT—GENERAL STATUTE—SPECIAL PROVISIONS OF CODE.—The general act of 1872, in relation to foreign corporations, precluding the plea of the statute of limitations, unless the name of a person residing in the county of its principal place of business upon whom process may be served shall be filed in the office of the secretary of state, has no application to a foreign insurance company doing business in this state, which is controlled by the special provisions of the Political Code requiring foreign insurance corporations to file in the office of the insurance commissioner their designation of the principal agent or chief manager of the business of such corporation in the state, giving his name and place of residence as the one on whom process may be served. (Id.)

19. STATUTORY CONSTRUCTION — AMENDMENTS OF SPECIAL STATUTE— ACTS IN PARI MATERIA—CONTROL OF GENERAL STATUTE.—All amendments made by the legislature to the special provisions of the statute regulating foreign insurance corporations must be construed together with the original provisions thereof as being *in pari materia*, and the intention of the legislature must be gathered from the consideration of all the special provisions enacted on that subject; and those special provisions must govern in relation to that subject matter as against general provisions elsewhere, although the latter, standing alone, would be broad enough to include the subject to which the more particular provisions relate. (Id.)

20. CERTIFICATE OF INSURANCE COMMISSIONER. — The certificate issued by the insurance commissioner pursuant to section 595 of the Political Code, showing that a foreign life insurance company

INSURANCE (Continued).

named has fully complied with the laws of the state and has appointed and commissioned a person designated therein as agent, and that said life insurance company and its agent are authorized to do business in this state, is *prima facie* evidence of the compliance of such insurance company with the special provisions of the Political Code. (Id.)

21. LOCALITY OF FOREIGN INSURANCE COMPANY DOING BUSINESS IN THIS STATE—RIGHT TO PLEAD STATUTE OF LIMITATION.—A foreign insurance company which is lawfully doing business in this state. and has duly submitted itself to the jurisdiction of its courts, must be deemed to be in the state, both for the purpose of suit against it and for the purpose of its right to plead the statute of limitations to an action brought against it in this state. (Id.)

See Mortgage, 15-17, 24.

INTEREST. See Mortgage, 1, 2, 6.

INTERVENTION.

1. FORECLOSURE OF MORTGAGE—DEFAULT OF ADMINISTRATRIX—INTERVENTION BY HEIR—DISMISSAL—DISCRETION.—In an action to foreclose a mortgage, the heir of the deceased mortgagor, if entitled to intervene at all, may properly be refused leave to intervene after default of the deceased administratrix, and the dismissal of his complaint in intervention thereafter filed is not an abuse of discretion. (Hibernia Sav. etc. Soc. v. Churchill, 633.)

2. INTERVENTION, WHEN NOT ALLOWED.—An intervention will not, as a general rule, be allowed when it would retard the principal suit, or require a reopening of the case, or delay the trial, or change the position of the original parties. (Id.)

3. PROVISION OF CODE—TRIAL—DEFAULT.—The code expressly requires an intervention to be made "before trial"; and a default by which all of the issues tendered by the complaint are admitted in favor of the plaintiff is the equivalent of a trial when the case is litigated. (Id.)

IRRIGATION DISTRICT.

1. PROCEEDING IN REM UNDER CONFIRMATORY ACT—RES ADJUDICATA—QUO WARRANTO.—A proceeding under the confirmatory act of 1889, supplemental to the Wright irrigation act, taken in the superior court, in which was confirmed the validity of the organization of an irrigation district, and of the bonds issued thereby, under the provisions of the Wright act, is a proceeding *in rem*, the judgment in which is *res adjudicata* and binds the whole world, including the state, and is a bar to a subsequent proceeding by the state in *quo warranto*, assailing the validity of the organization of the irrigation district. (People v. Linda Vista Irr. Dist., 477.)

IRRIGATION DISTRICT (Continued).

2. **AUTHORITY OF DECISIONS—CONSTRUCTION OF STATE STATUTES.**—The supreme court of this state has authority to construe a statute of this state according to its own lights, and in consonance with its own decisions, and is not bound to follow the authority of a decision of the supreme court of the United States upon that subject matter, where no question is involved under the constitution of the United States.   (Id.)

3. **CONSTITUTIONALITY OF CONFIRMATORY ACT—TITLE.**—The confirmatory act of 1889 is constitutional and valid.   Its title as "supplemental to an act entitled 'An act to provide for the organization and government of irrigation districts, and to provide for the acquisition of water and other property, and for the distribution of water thereby for irrigation purposes,' approved March 7, 1889, and to provide for the examination, approval, and confirmation of proceedings for the issue and sale of bonds issued under the provisions of said act," is sufficiently comprehensive to include a provision for ascertaining the validity of the organization of the district as a necessary condition precedent to the testing of the validity of the issue of bonds.  (Id.)

JUDGE.  See Place of Trial.

JUDGMENT.

**JUDGMENT UPON DEMURRER TO COMPLAINT — ORDER DENYING TRIAL — APPEAL.**—Where a judgment has been entered upon demurrer to the complaint, an error in its ruling can only be corrected upon appeal from the judgment.  A motion for a new trial is not permissible for the purpose of correcting such error, and an order denying a new trial must be affirmed upon appeal therefrom, without considering the merits of the demurrer.  (Jones v. Chalfant, 334.)

   See Appeal, 2, 4-6, 9, 14-17, 23; Assignment; Attachment, 1-3; Attorney and Client, 2-5; Criminal Law, 15; Divorce; Ejectment; Insolvency, 17; Mechanic's Lien, 5; Mortgage, 1-3, 5; Parties, 1; Pleading, 1-3; Practice, 2, 3, 6, 7.

JURISDICTION.  See Attachment. 1-3: Guardian and Ward, 2-4; Insolvency, 10; Justice's Court, 1, 2; Summons, 2.

JURY AND JURORS.

1. **ACTION TO QUIET TITLE—TRIAL BY JURY—STIPULATION FOR GENERAL VERDICT—ESTOPPEL—CONCLUSIVENESS OF VERDICT.**—In an action to title to a mining claim, alleged to be owned by the plaintiff, where the answer set up a title by prescription as an adverse claim, and the only issues raised were upon the answer, where a jury was impaneled without objection to try the legal issues raised by the answer, a stipulation by the parties that the jury might render a general verdict in favor of either party, is legiti-

JURY AND JURORS (Continued).

mate, and estops the unsuccessful party to repudiate the general verdict, which is conclusive of the whole case. (Johnson v. Mina Rica Gold Min. Co., 521.)

2. VERDICT IN EQUITY CASE—ACCEPTANCE BY COURT—ADDITIONAL FINDINGS—LOCATION OF MINING CLAIM.—In a purely equitable case, the court is not bound by the verdict, but when it calls a jury to its aid it may accept the verdict, and make findings in addition thereto. Where the title to a mining claim is involved in an action to quiet title, and a jury is impaneled to try legal issues, and renders a general verdict by stipulation, the court may accept the general verdict, and need not make any additional findings; and it cannot be objected upon appeal that under a general verdict for the plaintiff there were no findings to show a location of the mining claim owned by the plaintiff. (Id.)

See Criminal Law, 3, 4, 8.

JUSTICE'S COURT.

1. MUNICIPAL CORPORATION—FREEHOLDER'S CHARTER—CONSTITUTIONAL LAW — CONCURRENT JURISDICTION OF POLICE COURT AND JUSTICE'S COURT.—A freeholder's charter of a city adopted subject to section 8½ of article XI of the constitution, permitting it to provide "for the constitution, regulation, government, and jurisdiction of police courts," has no constitutional authority to confer exclusive jurisdiction over certain misdemeanors upon a police court; and notwithstanding such provision for exclusive jurisdiction in such a charter, a justice's court whose jurisdiction includes the corporate limits of the city, has concurrent jurisdiction with the police court over such misdemeanors, by virtue of the general law conferring such jurisdiction upon justices' courts. (Ex parte Dolan, 460.)

2. WORD "EXCLUSIVE" NOT PROPERLY IN CHARTER—MERE GRANT OF JURISDICTION NOT EXCLUSIVE—CONCURRENT GRANTS.—The word "exclusive" not being properly in the charter, the charter must be construed as if it were omitted therefrom. A mere grant of jurisdiction is not impliedly exclusive, and concurrent grants of jurisdiction to distinct courts confer concurrent powers upon each. (Id.)

3. REPEALS BY IMPLICATION NOT FAVORED.—Repeals by implication are not favored; and there is no implied repeal of the general law conferring jurisdiction upon a justice's court established in a city by the grant of jurisdiction over misdemeanors to the police court by the charter of the city. (Id.)

See Attachment, 2, 3.

LACHES. See Contract, 16, 17; Nuisance, 8.

LEASE. See Adverse Possession, 4; Growing Crops, 1-3; Sale; Statute of Frauds.

LIBEL. See Criminal Law, 3.

LICENSE. See Deed, 5.

LIEN. See Attorney and Client, 6-8; Growing Crops, 8; Mechanic's Lien; Mortgage.

## MALICIOUS PROSECUTION.

1. CIVIL ACTION FOR MONEY MISAPPROPRIATED—EVIDENCE—CORRECTNESS OF ACCOUNTS—CROSS-EXAMINATION—ITEMS OF MISAPPROPRIATION NOT SUED FOR.—In an action for the malicious prosecution of a prior civil action for the recovery of money alleged to have been misappropriated by the defendant therein while in the employment of the plaintiff therein, where the employee suing for the malicious prosecution testified in chief to the correctness of all the books of account kept by him while in the service of his employer, he may be properly cross-examined as to items of the account not included in the prior action, to test the accuracy of his statement, by showing misappropriations discovered since the original action was brought. (McKenna v. Heinlen, 97.)

2. LIMITATION OF EVIDENCE—WANT OF PROBABLE CAUSE—FAILURE OF PLAINTIFF TO REQUEST INSTRUCTION—RULING NOT PREJUDICIAL.—The defendant in the action for malicious prosecution could not establish probable cause for the prior action by showing the incorrectness of items of account not included therein, and thereafter discovered to be incorrect; and the plaintiff was entitled to an instruction limiting the evidence introduced on cross-examination as to such items to the purpose for which they were admissible, and telling the jury to disregard evidence of misappropriation of which the defendant had no knowledge when he brought the original action, as showing probable cause therefor. Upon failure of the plaintiff to request such instruction limiting the evidence, he will not be deemed prejudiced by its admission. (Id.)

3. MALICE—WANT OF PROBABLE CAUSE—INFERENCE—INSUFFICIENCY OF PROOF—NONSUIT.—The plaintiff in an action for malicious prosecution must establish both malice and want of probable cause for the prosecution. Malice may be inferred from want of probable cause, but the latter can never be implied from proof of malice; and where the evidence for the plaintiff fails to show want of probable cause, a nonsuit is proper upon that ground. (Id.)

4. FAILURE OF ORIGINAL ACTION.—No inference of want of probable cause for the original action can follow from the mere fact that the party who brought it failed to recover judgment therein, and that judgment passed against him. (Id.)

5. EVIDENCE OF ATTORNEY—SHOWING OF FACTS UPON WHICH ACTION PROCEEDED—RULE AS TO ADVICE OF COUNSEL INAPPLICABLE.—Where the evidence of the attorney for the plaintiff in the original ac-

MALICIOUS PROSECUTION (Continued).

tion is offered, not to show probable cause, but merely to show the facts upon which the action proceeded, from which the court might determine whether there was a want of probable cause, the rule that the advice of counsel will not conclusively shield the party unless he has made a full and fair disclosure of all the facts does not apply to the case. (Id.)

6. PROBABLE CAUSE FOR PROSECUTION—EXAMINATION OF BOOKS BY EXPERT—PRIMA FACIE SHOWING—BOOKS NOT KNOWN TO EXIST.—Where it appears that the action to recover misappropriated money was begun after the examination of all known books by an expert, and that the most of the items set forth in the complaint therein presented, so far as those books showed, an apparent misappropriation by the defendant, probable cause for the prosecution is thereby established; and the fact that the defendant was able to explain the discrepancy in the books by other books not known by plaintiff to exist when the action was brought, does not establish want of probable cause for bringing the action. (Id.)

7. NONSUIT—SUPPLY OF PROOF BY DEFENDANT.—In an action for malicious prosecution, an order denying a motion for a nonsuit will not be disturbed for want of sufficient proof by the plaintiff, at the close of his evidence, of want of probable cause and of malice in fact, where the testimony of defendant's witnesses cured the weakness of plaintiff's case, and supplied the necessary proof, so that the whole of the evidence, considered together, was sufficient to support the verdict and judgment for the plaintiff. (Scrivani v. Dondero, 31.)

8. PROBABLE CAUSE — QUESTION OF LAW AND FACT — HARMLESS INSTRUCTIONS.—What constitutes probable cause is a question of law, but the existence of sufficient facts to constitute probable cause is a question of fact. An instruction on the question of probable cause, indicating it to be a question of fact, though not perfect in form, is harmless, where the jury were strictly instructed in the charge that, if the evidence disclosed certain facts specified, there was no probable cause for the arrest of plaintiff. It is not strictly proper to define "probable cause" in an instruction, it being a question of law for the court, but the giving of such definition is harmless. (Id.)

9. INSTRUCTION AS TO "PRESUMED" MALICE—EXEMPLARY DAMAGES.— An instruction referring to "malice, actual or presumed," as a ground for exemplary damages, is to be construed as referring to "presumed" malice in fact, and not to malice in law. (Id.)

10. ADVICE OF COUNSEL—GOOD FAITH—DISCLOSURE OF KNOWN FACTS AND EXCULPATORY FACTS BELIEVED.—Good faith on the part of one who would justify an arrest upon a criminal charge under the advice of counsel requires not only that he should disclose to the counsel all material facts known to him, but also that, if he

MALICIOUS PROSECUTION (Continued).

· has reasonable ground to believe that other facts exist tending to exculpate the person excused, he should either himself make inquiry, or disclose his belief of such facts to the counsel, that he may have an opportunity to make such inquiry. (Id.)

MANDAMUS.

1. LEVY OF CITY SCHOOL TAX—DOUBLE DEMAND BY BOARD OF EDUCATION—REFUSAL BY COUNCIL—LEVY BY SUPERVISORS—QUESTION OF LEGALITY UNDECIDED.—Where the board of education of a city made demand both upon the city council and upon the board of supervisors of the county for the levy of a sufficient tax to pay the expenses of the public schools of the city, and the council, at the time of making its levy for city taxes, refused to make the levy demanded, while the board of supervisors, at its regular time for levying taxes, levied a sufficient tax upon all of the property of the city to defray the entire expenses of the city schools for the current fiscal year, this court will not undertake upon *mandamus* against the city council to determine which of the two bodies ought to levy the tax, the object sought by the writ having been accomplished through a different instrumentality, it being presumed that the taxes levied by the supervisors not already paid will be paid in due course during the fiscal year. (Board of Education of City of San Diego v. Common Council of City of San Diego, 369.)

2. WRIT OF MANDATE, WHEN NOT ISSUED.—The writ of mandate will not issue where it will work injustice, or introduce confusion and disorder, or operate harshly, or will not promote substantial justice; nor will it issue where the writ, if granted, could not be enforced, and would be unavailing. (Id.)

3. TIME OF LEVYING TAXES—PEREMPTORY PROVISION.—A provision in a city charter fixing the time within which the council are to levy taxes upon all of the property in the city sufficient to raise revenue to carry on the different departments of the municipal government for the year is peremptory; and a levy made after the date provided therein would be invalid and unavailing, and cannot be enforced by *mandamus*. (Id.)

See Bill of Exceptions, 5; Ejectment; Schools.

MARRIAGE.

CONTRACT—FINDING—INSUFFICIENT EVIDENCE—DIVORCE.—Prior to the amendment of 1895 to section 55 of the Civil Code, a mere contract to marry, without any solemnization of marriage, must have been followed by a mutual assumption of marital rights, duties, or obligations, in order to constitute a marriage; and where there was proof of such a contract, but no proof of any assumption of marital rights, duties or obligations, or of any general and undivided repute of marriage, or of any declaration

MARRIAGE (Continued).

· of the fact of marriage, except by the alleged wife in a single
· instance, a finding of the fact of marriage is not sustained by
the evidence; and a judgment of divorce based upon such find-
ing must be reversed. (Harron v. Harron, 308.)

See Divorce, 1.

MARRIED WOMEN. See Conversion, 1.

MASTER AND SERVANT. See Negligence, 5, 6, 11-18.

MEASURE OF DAMAGES. See Damages.

MECHANIC'S LIEN.

1. ESTATE OF DECEASED PERSON—POWER OF EXECUTOR—CONTRACT TO
WORK MINE—NOTICE TO LABORERS.—An executor has no power as
such to make any contract which would give laborers under
the contractor in a mine known to belong to the estate a right
to file liens thereupon. A contract to work a mine belonging
to the estate, signed by the executor, as such, if it is known to
laborers under the contractor, is notice of all that it contains,
and would preclude laborers' liens upon the mine. (Chappius v.
Blankman, 362.)

2. TITLE IN INDIVIDUAL NAME OF EXECUTOR—IMPLIED TRUST—PROBATE
PROCEEDINGS—NOTICE—PROTECTION OF BONA FIDE LIENHOLDERS.—
Where the laborers were ignorant of the existence of the con-
tract with the executor, and the title to the mine stood upon
the records in his individual name, as an implied or resulting
trust for an estate which he was administering in another
county, the laborers are not chargeable with notice of the pro-
bate proceedings, as affecting the legal status of the mine, but
are protected in their liens acquired for work done in actual
ignorance of the rights of the estate, as encumbrancers for
value without notice of the trust, within the meaning of section
856 of the Civil Code. (Id.)

3. LIENS UPON MINING CLAIM—LABORERS TAKING OUT ORE.—Work
done by laborers in a quartz mine in taking out ore, or breaking
down and tearing away from the face of the drifts and mine the
quartz and substance of the mine, is work for which a lien upon
the mine may be claimed under the terms of section 1183 of
the Code of Civil Procedure. (Id.)

4. CLAIM OF MATERIALMAN—PURPOSE OF FURNISHING MATERIALS—
FINDING.—In order to sustain the claim of a materialman for a
lien for materials furnished to a building contractor, it is not
sufficient that they were in fact used in the construction of the
building, but it must appear that they were furnished by the
materialman expressly for the particular building on which the
lien is asserted. A finding that the material was not sold by
the materialman to be used in said structure, but was sold to

MECHANIC'S LIEN (Continued).

the contractor without any agreement or understanding where it was to be used, though purchased by the contractor to be used, and was actually used, in the construction of the building, is fatal to the plaintiff's claim of lien. (Weatherly v. Van Wyck, 329.)

5. LABORERS' LIENS — JUDGMENTS — ORDER FOR PAYMENT — APPEAL — QUESTION OF COSTS.—Upon appeal from an order for the payment of judgments and costs in favor of laborers, each of whom had served upon the plaintiff in an attachment suit his affidavit to establish a laborer's lien upon the money attached, and had within ten days thereafter sued the debtor and recovered the judgments, the only question which can arise in favor of the appellant, by reason of the recovery of such judgments, is one merely of costs. (Rauer v. Silva, 43.)

6. DISPUTE OF CLAIMS—NECESSITY OF SUITS—INCOMPLETE SHOWING IN RECORD—PRESUMPTION UPON APPEAL.—Where the record upon such appeal merely shows that neither the plaintiff nor the sheriff disputed the claims, but does not show that the debtor did not dispute them, as he might have done, under section 1206 of the Code of Civil Procedure, it cannot be presumed upon the appeal that the suits were unnecessary; and the order appealed from will not be disturbed. If the suits were in fact unnecessary, the appellant must show it by the record. (Id.)

7. SERVICE OF NOTICE OF CLAIMS UPON PLAINTIFF—CONFLICTING AFFIDAVITS—SUPPORT OF RULING.—Where the court ruled upon conflicting affidavits that the notice of the claims of the laborers was served upon the plaintiff, by deposit thereof with the clerk in charge of his office, its determination of that fact will be upheld, and it cannot be contended upon appeal that the plaintiff had no opportunity to dispute their claims. (Id.)

8. ORDER IN ATTACHMENT SUIT—MOTION OF DEBTOR TO PAY JUDGMENTS. The order to pay the judgments in favor of the laborers should properly be made in the attachment suit for the protection of the sheriff; and it might properly be made upon the motion of the debtor, who was the defendant therein. (Id.)

9. FINDINGS CONFLICTING WITH ANSWER—FORECLOSURE OF LIEN—DEFENSE—COMPOSITION AGREEMENT—ALTERATION NOT PLEADED.—In an action by a subcontractor to foreclose a mechanic's lien, where the answer pleads a composition agreement alleged to have been signed by plaintiff and all the creditors of the contractors, agreeing to release the contractors and the property of the owner upon conditions specified, findings in conflict with the answer that the agreement was not signed by all of the creditors, and that it did not, when signed, contain the words set forth in the answer, "conditional upon all creditors signing this agreement," but that those words were inserted by some other person after the agreement was signed, can be reviewed as not being within the issues only upon appeal from the judgment,

MECHANIC'S LIEN (Continued).

and must be taken as correct and proper findings upon appeal from an order denying a new trial, if there is any evidence to sustain them. (Schroeder v. Pissis, 209.)

10. FAILURE TO OBJECT TO EVIDENCE—AMENDABLE ANSWERS—OBJECTION TO FINDINGS UPON APPEAL.—Where evidence was offered which supports findings made in conflict with the answer, and no objection was made thereto, and the answer might have been amended to meet the objection, if made, it cannot be urged upon appeal that a finding based upon such evidence is inconsistent with the pleadings. (Id.)

11. CONFLICTING EVIDENCE—TERMS OF COMPOSITION AGREEMENT—TIME OF PAYMENT.—Where the evidence is conflicting as to what were the terms of the composition agreement, and what time of payment was agreed upon, the findings thereupon will not be disturbed. (Id.)

12. TENDER OF MONEY AND NOTE AT DIFFERENT TIMES—FAILURE TO OBJECT.—Where the composition agreement provided for the payment of a certain sum and the execution of a note, the fact that money was tendered on one day and the note on another is immaterial if no objection was made at the time of the tender to its sufficiency. (Id.)

13. EXTINCTION OF LIEN BY COMPOSITION AGREEMENT—CONSIDERATION—MUTUAL PROMISES.—A composition agreement shown as a defense to the foreclosure of a mechanic's lien, signed by the plaintiff and other creditors of the contractors, agreeing to release the contractors and the owner upon the terms specified, operates to extinguish the liability which the lien was filed to secure; and the consideration therefor consists of the mutual promises of the signing creditors to take something less than or different from what they were entitled to under their previous contracts. (Id.)

14. SIGNATURES OF CREDITORS.—In the absence of a condition in the contract to that effect, all of the creditors need not sign a composition agreement to make it valid; but it is sufficient if two or more creditors sign such an agreement, the signature and promise of each being a sufficient consideration for the agreement of the others. (Id.)

MINES AND MINING. See Adverse Possession, 3-5; Deed, 5, 6; Jury and Jurors, 2; Mechanic's Lien, 1-3.

MINORS. See Guardian and Ward.

MISTAKE. See Insurance, 1, 2.

MORTGAGE.

1. FORECLOSURE OF MORTGAGE—INTEREST—CORRECTION OF FINDINGS AND DECREE BY ORDER OF APPELLATE COURT—RELATION TO ORIGINAL DE-

MORTGAGE (Continued).

CISION.—In an action to foreclose a mortgage, a correction of the findings and judgment made by direction of the supreme court, by deducting certain items from the amount found due, is not a new "decision" of the superior court upon the issues; but the corrected findings and judgment entered thereupon would relate to the time when the findings were originally filed, for the purpose of the computation of interest upon the "decision of the court from the time it was rendered or made," as provided for in section 1035 of the Code of Civil Procedure, and the allowance of interest on the corrected amount only from the date of the correction is erroneous. (Barnhart v. Edwards, 572.)

2. CONSTRUCTION OF CODE—DUTY OF CLERK AS TO INTEREST—RIGHTS OF PARTY—FORMULATION OF JUDGMENT BY COURT.—The provisions of section 1035 of the Code of Civil Procedure, requiring the clerk to include in the judgment entered up by him any interest on the verdict or decision of the court from the time it was rendered or made, create a right to such interest in the party in whose favor the decision was made, of which he is not to be deprived merely because the court formulates the judgment to be entered by the clerk, instead of leaving it to the action of the clerk alone. (Id.)

3. SETTING ASIDE SALE MADE PENDING APPEAL—MODIFICATION AS TO AMOUNT DUE—RESTITUTION.—The sale of mortgaged property made pending an appeal by the mortgagor, upon which no stay bond was given, and upon which the judgment was not reversed, cannot be set aside by the superior court merely because, as the result of the appeal, the findings and judgment were directed to be modified as to the amount due, without direction of change as to the order of sale. It cannot be said from that fact alone that the mortgagor has "lost" any property of which restitution is authorized to be made by setting aside the order of sale. (Id.)

4. ABSENCE OF TENDER BY MORTGAGOR—SHOWING REQUIRED TO SET ASIDE SALE—UNFAIRNESS—BENEFIT UPON RESALE.—In such case, where the mortgagor does not tender to the mortgagee who became the purchaser at the sale the amount of the modified judgment, together with the costs incurred upon the original sale, he must make it appear that there was some unfairness in the sale, or that the property would upon a resale bring a larger amount than at the first sale, before he can claim a right to have the sale set aside. (Id.)

5. SETTING ASIDE SALE UNDER MODIFIED JUDGMENT—APPEAL—PRIOR SALE.—The court could not take action to set aside the prior sale by reason of the entry of its modified judgment, which was deprived of effect by an appeal therefrom, and the enforcement of which the court could not, in any event, be authorized to stay by reason of what had occurred prior to its entry, and which the court could have considered before its entry. (Id.)

MORTGAGE (Continued).

6. FORECLOSURE OF MORTGAGE — EVIDENCE — INCREASED RATE OF INTEREST TO COVER TAXES.—In an action to foreclose a mortgage which does not stipulate for the payment of any taxes upon the mortgage by the mortgagor, parol evidence is inadmissible to show that the rate of interest was made two per cent greater than it otherwise would have been in order to cover the anticipated taxes on the mortgage. In the absence of a usury law in this state, any rate of interest may be agreed upon by the parties: and it is immaterial what business considerations led them to adopt the stipulated rate. (Hotaling v. Monteith, 556.)

7. VALIDITY OF ALLOWANCE OF ATTORNEY'S FEE—STIPULATION IN MORTGAGE.—An allowance of attorneys' fees in an action for the foreclosure of a mortgage based upon an express stipulation contained in the mortgage is not liable to the objection that such fees are not allowed in other actions, and that an allowance thereof in foreclosure cases is unconstitutional. (Id.)

8. FIXING OF FEE BY COURT—EVIDENCE UNNECESSARY—DISCRETION OF COURT.—No evidence of the extent or value of the services of the attorneys of the mortgagor is necessary as a basis of the allowance fixed by the court. The observation of the court is sufficient evidence of the services, and it has discretion to fix the fee without calling for the opinion of witnesses to assist it. (Id.)

9. FORECLOSURE OF MORTGAGE—EXTENSION OF TIME—PAYMENTS BY VENDEE OF MORTGAGOR—PREMATURE ACTION—DISMISSAL.—A written and acknowledged instrument executed by a mortgagee, and delivered to the vendee of the mortgagor, agreeing that in consideration of a large payment made by the vendee upon the principal of the note and mortgage, and of payment of the monthly interest upon the residue of the principal, the time of payment of such residue should be extended to a specified date, operates as a virtual renewal of the note and mortgage for the new principal to the date agreed upon; and an action to foreclose the mortgage commenced prior to that date is properly dismissed as premature. (Seaton v. Fiske, 549.)

10. FORECLOSURE OF MORTGAGE—RENEWALS OF NOTE—PLEADING—DEMURRER—UNNECESSARY ALLEGATIONS.—In an action to foreclose a mortgage, where the complaint describes the original note secured by the mortgage, and proceeds on the theory that there was but one indebtedness secured by the mortgage, which was not barred by statute and which was unpaid, allegations showing that the original note was renewed by a second note when the interest was paid and was delivered to the defendant by mistake, and that there were a series of renewals, after which a copy of the original note was given, are unnecessary, and such allegations do not render the complaint demurrable. (Bonestell v. Bowie, 511.)

MORTGAGE (Continued).

11. EXTINGUISHMENT OF ORIGINAL NOTE—CONFLICTING EVIDENCE—SUPPORT OF FINDING.—Where the testimony was conflicting as to whether the original note was extinguished, and it appears that the mortgage was never canceled, and that defendant admitted the original indebtedness by ·executing a copy of the original note, a finding that such note was not extinguished by any subsequent note is sufficiently supported. (Id.)

12. PAYMENT BY RENEWAL OF NOTE—ABSENCE OF EXPRESS AGREEMENT—PRESUMPTION.—A new note given by the debtor or by a third party, if not itself paid, does not constitute payment unless received by the creditor under an express agreement to accept it as absolute payment; and the presumption is against its being so received. (Id.)

13. SURRENDER AND CANCELLATION OF NOTE.—The fact that the original note was surrendered and marked paid on its face when the new note was given is not conclusive evidence of the extinguishment of the original debt if the new note is not paid; and it may be shown that the original debt was not in fact extinguished. (Id.)

14. STIPULATION IN MORTGAGE FOR COUNSEL FEES—BLANK PERCENTAGE—POWER OF COURT.—The court may fix a reasonable counsel fee, under a stipulation for a counsel fee at the rate of (blank) per cent, upon the amount found to be due. (Id.)

15. MORTGAGE OF INSURANCE POLICY—TRANSFER TO MORTGAGEE—ADMISSION OF GENUINENESS—ACTION BY HEIRS—AVERMENTS OF ANSWER—BURDEN OF PROOF.—In an action by heirs of an insured person to recover from the mortgagee of the policy the surplus proceeds collected by him above the debt, the failure of the plaintiffs to deny by affidavit the genuineness of a second instrument of transfer made by the insured to the mortgagee after the date of the mortgage, purporting to sign and transfer the title, which was set forth in full in the answer, does not relieve the defendant from the burden of proving averments made by him, and deemed denied by the plaintiffs, that the policy was absolutely sold and transferred by the insured to the defendant for its actual value, that the transfer was free from mortgage or other trust, and that the defendant thereafter owned the policy. (Clark v. Fast, 422.)

16. AVERMENT OF MORTGAGE IN ANSWER—BURDEN OF PROOF AS TO FAIRNESS OF SUBSEQUENT TRANSFER.—The answer having averred that· the original interest of the defendant in the policy was under a mortgage thereof to him by the insured, the burden of proof was upon him to show that the subsequent transaction, by which he claimed to have become the owner of it by transfer, was a fair transaction, that no advantage was taken of the necessities of the mortgagor, and that the consideration paid therefor was adequate, or what the policy was worth. (Id.)

MORTGAGE (Continued).

17. EVIDENCE—DESTROYED LETTER—DIFFERENCE OF COPY—HARMLESS RULING.—Where the defendant had testified that he had destroyed a letter received from the insured, and that what was handed to him as a purported copy was not a true copy of the letter he had received, the allowance of a question asked of him as to wherein it differed therefrom is not prejudicial error, where the copy was not received in evidence or shown to the jury. (Id.)

18. ARGUMENT TO JURY—TRUTHFULNESS OF DEFENDANT—IMPROPER REFERENCE TO COPY OF LETTER—ABSENCE OF INSTRUCTIONS FROM RECORD—PRESUMPTION UPON APPEAL.—An improper reference by counsel in his argument to the jury upon the truthfulness of the testimony of the defendant to the copy of the letter which was not introduced in evidence, instead of referring, as counsel properly might, to the destroyed letter about which the defendant had testified, is not a sufficient fault to justify a reversal; and, in the absence of the instructions from the record, it will be presumed upon appeal that the improper reference was corrected by an instruction to the jury to disregard it. (Id.)

19. SUPPORT OF VERDICT—FAILURE OF DEFENDANT'S PROOF—TRANSFER NEEDED FOR COLLECTION OF POLICY BY ASSIGNEE.—A verdict for the plaintiffs is supported by the failure of defendant to sustain his burden of proof as to the consideration for the transfer, or the extinction of the mortgage debt, and by the testimony of the agent for the insurance company that no transfer of a policy could be recognized by the company for any purpose, unless it was absolute upon its face, and that it was necessary that a new transfer should be made to make the security effective, as the company would not recognize any partial assignment, or deal with two persons. (Id.)

20. PRESUMPTION AS TO INTENTION OF SECOND TRANSFER.—The presumption arising from the second transfer, the first having been given as security only, is that it was intended simply to perfect the transfer as security under the rules of the insurance company. (Id.)

21. FORECLOSURE OF MORTGAGES—MATURITY—DEFAULT OF INTEREST FOR THREE MONTHS—INSANITY OF MORTGAGOR—PERIOD NOT EXTENDED.— An action for the foreclosure of three mortgages, one of which was mature, and the other two claimed to be due six days before the commencement of the action, at the option of the mortgagee, by reason of a default of three months in the payment of quarterly interest provided for in the mortgages, cannot be rendered premature as to the two mortgages by an addition to the three months' period of a period of five days' notice given of an application for guardianship of the mortgagor as an insane person, and of a further period of one week between the adjudication of his insanity and the issuance of the letters to his guardian, where it appears that one month

MORTGAGE (Continued).

of the three months period still remained after the issuance of the letters, and no offer was seasonably made by the guardian to pay the interest due, and the jurisdiction of equity was not invoked by him to be relieved from the penalty of its nonpayment. (Taylor v. Ellenberger, 411.)

22. SEPARATE MORTGAGES UPON REAL AND PERSONAL PROPERTY—AGGREGATE FORECLOSURE ERRONEOUS—SEPARATE ORDERS OF SALE REQUIRED. Where two of the mortgages foreclosed were upon the same real estate, and the third mortgage was of personal property only, it is erroneous to make an aggregate foreclosure of the three mortgages. The real and personal property should be ordered to be sold separately for the amount ascertained to be due upon each. (Id.)

23. APPORTIONMENT OF ATTORNEYS' FEES—LIEN ONLY PROVIDED FOR IN CHATTEL MORTGAGE—GENERAL ALLOWANCE.—Where the real estate mortgages did not make the attorneys' fees a lien upon the realty, and the only lien provided for was in the chattel mortgage, the fees should be apportioned, and the amount due upon the chattel mortgage separately ascertained and made a lien upon the personal property mortgaged. A general allowance of attorneys' fees cannot properly be made a lien upon any of the property; and an aggregate order of sale making the attorneys' fees payable out of the proceeds of the sale is erroneous. (Id.)

24. APPORTIONMENT OF INSURANCE—DEDUCTION OF EXCESS.—The amount allowed to the mortgagee for insurance paid upon the real and personal property should be properly apportioned between them, after deducting an excess in the allowance. (Id.)

25. CHATTEL MORTGAGE—CONTRACT FOR POSSESSION AFTER DEFAULT—REPLEVIN.—Where a chattel mortgage contains a special contract allowing the mortgagee to take possession of the mortgaged chattels after default, as permitted by section 2927 of the Civil Code, such contract may be enforced after default by an action of replevin. (Harper v. Gordon, 489.)

26. LIMITED EFFECT OF MORTGAGEE'S POSSESSION — ACTION TO FORECLOSE — CONSTRUCTION OF CODE.—The possession acquired by the mortgagee under contract therefor merely adds to the security of the mortgagee, but does not enlarge his interest. The action of replevin to enforce such contract is not inconsistent with section 726 of the Code of Civil Procedure, allowing but one action to enforce the debt or lien of the mortgage. That section is not applicable to an agreement for possession allowed as an incident to the mortgage by section 2927 of the Civil Code, and such an agreement may be enforced without foreclosure. (Id.)

27. MOTION FOR NONSUIT IN ACTION FOR REPLEVIN—DISMISSAL OF PRIOR ACTION TO FORECLOSE—GROUNDS OF MOTION—APPEAL.—Upon a motion for nonsuit in an action of replevin by the mortgagor, the

MORTGAGE (Continued).

question of the effect of the dismissal of a prior action to fore-
close the chattel mortgage upon application of the mortgagor
cannot be considered upon appeal where such dismissal was
not made one of the grounds of the motion.   (Id.)

See Deed, 1; Estates of Deceased Persons, 1-7; Guaranty, 1, 4;
Insurance, 4-7; Intervention, 1; Receiver; Trusts, 11, 12.

## MUNICIPAL CORPORATIONS.

1. VALIDITY OF ORDINANCE REGULATING STREET-CAR TRANSFERS—CON-
STITUTIONAL LAW.—A municipal ordinance regulating the issuance
and delivery of street-car transfers, requiring them to be issued
and delivered within the street-car from which the transfer is
made, and received only within the car to which it is
made, and forbidding any person, except the conductor    or
agent of the street-car line, to give, sell, or issue any transfer
check or ticket issued for passage on any street-car or line, does
not violate the constitutional guaranties protecting personal lib-
erty or the right of  private property, and  is not arbitrary, op-
pressive, or unreasonable, nor an illegal attempt to enforce the
obligations of private contracts by penal legislation, but, prop-
erly interpreted, is a valid exercise of powers expressly granted
to the municipal authorities.   [Van Dyke, J., and Garoutte, J.,
dissenting.]   (Ex parte Lorenzen, 431.)

2. OBJECT OF ORDINANCE— WELFARE OF TRAVELING PUBLIC— CON-
TINUANCE OF TRANSFER SYSTEM—CORRECTION OF ABUSE—FRAUDULENT
VIOLATION OF CONTRACT.—The primary object of the ordinance is
not to compel the passengers not to violate their contracts,
but to protect and advance the convenience and welfare of the
traveling public by continuing a transfer system, the abuse of
which needed correction, and, if not corrected by reasonable
regulations, might have resulted in the discontinuance of the
system, to the material injury of the community.   As an in-
cident to reasonable regulations thus promoting the welfare of
the traveling public, it is no objection that the ordinance makes
penal what was before an illegal act and against good morals,
consisting in the violation of an express contract, and the re-
sulting consummation of a fraud upon the street-car company.
(Id.)

3. GENERAL TERMS OF ORDINANCE—REASONABLE CONSTRUCTION.—The
general terms of the ordinance forbidding the giving away of
an issued transfer check to any other person are to be rea-
sonably and equitably construed, as not intended to forbid the
delivery to several persons of checks issued expressly for them
by the conductor to the one paying the fare for them, or the
passing up of a transfer to a conductor by the agency of an-
other passenger on the car, or any other innocent or lawful use
of the transfer check.   It will always be presumed that the
legislature intended exceptions to its language which would

MUNICIPAL CORPORATIONS (Continued).

avoid an absurd or manifestly unjust consequence, and that the law was only intended to apply according to its spirit to a forbidden act, in its nature illegal or fraudulent. (Id.)

4. MUNICIPAL ORDINANCE—GAMES PLAYED FOR MONEY—GENERAL DESCRIPTION—CONFLICT WITH STATUTE—EXCEPTIONS.—It is competent for a city by ordinance to prohibit all games played for money which are not specially denounced by the statute. The fact that it includes, by way of general description, games prohibited by statute, as well as those not so prohibited, does not affect the validity of the ordinance; but all games so prohibited must be excluded from the operation of the ordinance. (In re Murphy, 29.)

5. GAME OF "KENO"—JUDICIAL NOTICE—HABEAS CORPUS.—The court cannot judicially know how the game of "keno" is played, or that it is a percentage game prohibited by section 330 of the Penal Code; and a defendant convicted of playing that game for money, in violation of a municipal ordinance, will not be released upon *habeas corpus*, where the lack of jurisdiction under the ordinance is not made to appear. (Id.)

6. COMMITMENT UNDER ORDINANCE—CITY JAIL—BRANCH COUNTY JAIL—CUSTODY OF PRISONER.—A commitment for the violation of a municipal ordinance to the city jail, which is also used as a branch county jail, should properly be to the custody of the city marshal, rather than to that of the sheriff; but where the defendant was committed to the custody of the sheriff he will be remanded upon *habeas corpus* to the custody of the sheriff, unless he insists upon the custody of the marshal. (Id.)

7. BONDS FOR WATERWORKS—CONTEST OF ELECTION BY ELECTOR AND TAXPAYER—FINDING AGAINST QUALIFICATIONS OF CONTESTANT.—Upon a contest by one claiming to be an elector and taxpayer of a city to contest an election held for the purpose of authorizing the issuance of bonds of the city in a large sum for the construction or acquisition of waterworks, where the court finds that the contestant is not, and was not during any of the times mentioned in the complaint, an elector or taxpayer of the city, such finding should end the case; and other taxpayers and citizens ought not to be bound by a litigation which the plaintiff had no right to maintain. (McConoughey v. San Diego, 366.)

8. FINDINGS AND JUDGMENT UPON MERITS—APPEAL—REVERSAL—DISMISSAL OF ACTION.—Where the court below proceeded further to find upon the merits of the contest, and rendered judgment in favor of the validity of the election, which is in form at least binding upon citizens and taxpayers, although the contestant has no right to be heard upon appeal, and cannot be injured by the judgment, yet this court must, upon his appeal, reverse the judgment and remand the cause, with directions to the superior court to dismiss the action. (Id.)

MUNICIPAL CORPORATIONS (Continued).

9. ISSUE AS TO QUALIFICATIONS OF CONTESTANT—DENIAL BY CITY FOR WANT OF KNOWLEDGE—REGISTRY LISTS—ASSESSMENT-BOOKS.—An issue as to the qualifications of the contestant may be raised by a denial thereof by the city for want of knowledge. It cannot be claimed that the registry lists or assessment-books of the city would show conclusively whether the plaintiff was or was not an elector or taxpayer at the time of the commencement of the action, since prior thereto, and after the records were made up, the contestant may have ceased to be an elector or taxpayer of the city. (Id.)

See Justice's Court, 1, 2; Nuisance, 1-8.

MURDER AND MANSLAUGHTER. See Criminal Law, 5-16.

NEGLIGENCE.

1. INJURY FROM DEFECTIVE REEFING PENNANT—PLEADING—CAUSAL RELATION—DEFECTIVE ALLEGATION CURED BY VERDICT.—A complaint charging that it was the duty of the defendants to supply a schooner, upon which plaintiff was employed, with good, safe and strong ropes, tackle, and sailing apparatus, and that defendants, disregarding their duty, provided and used an old, worn-out, rotten, defective reefing pennant with which to reef the mainsail, of which they had notice, and that while plaintiff, in obedience to orders, was assisting in reefing the mainsail by pulling at the reefing pennant in the usual and proper way, it broke; and that when it broke plaintiff fell backward from the roof of the cabin and was injured, is liable to special demurrer for not distinctly alleging that the reefing pennant broke because it was defective, and that the breaking of it caused plaintiff to fall, but is sufficient after verdict for plaintiff to support the judgment in his favor. (Silveira v. Iversen, 187.)

2. EVIDENCE—OPINION—UNSOUNDNESS OF ROPE—DISCERNIBLE DEFECT. It is proper to inquire of a witness whether a defect in an unsound rope could have been discerned or discovered by the use of ordinary diligence; and the question as to how it can be determined whether a rope has become rotten and unsound is not objectionable as not being a proper subject of opinion evidence. (Id.)

3. INADMISSIBLE DECLARATION OF CAPTAIN—RES GESTAE—AGENCY—PREJUDICIAL ERROR.—The declaration of the captain of the vessel when examining the broken rope after the accident that "that looks pretty bad" is not admissible as part of the *res gestae*, nor as the declaration of an agent within the scope of his employment; and it cannot bind the owners of the vessel. Its admission must be deemed prejudicial error, which is not overcome because other competent evidence tended to prove the same fact. (Id.)

NEGLIGENCE (Continued).

4. INAPPLICABLE RULE—CONTINUOUS USE OF SAFE MACHINE.—The rule that when a machine not obviously dangerous has been in daily use for a long time, and has uniformly proved safe and efficacious, its use may be continuous without imputation of negligence, which is properly applied where some particular device or pattern in use is compared to another deemed more safe, is incorrect as applied to the use of a particular instrument which is defective. (Id.)

5. MASTER AND SERVANT—DISCOVERY OF DEFECTS IN APPARATUS.— A servant is not required to use any degree of care or diligence to discover defects in an apparatus which are not obvious, and he only assumes the risk when the defects are so obvious that he must be held to have known them, or to have been grossly careless in not observing them. The servant has a right to rely upon the master's inquiry as to all defects not obvious to view, because it is the master's duty to inquire as to their existence, and in such case the servant may justly assume that the apparatus is fit and suitable for the use he is directed to make of it. (Id.)

6. EQUALITY OF MEANS OF KNOWLEDGE—ERRONEOUS INSTRUCTION.—An instruction that the servant could not recover for injuries from a defective apparatus unless the defendants knew or ought to have known of the defect, and the servant had not equal means of knowledge, is erroneous. (Id.)

7. STOPPING STREET-CAR WITH LURCH ON CURVE—RAPID MOTION OF CAR— STOP BEYOND CROSSING—QUESTION FOR JURY—NONSUIT.—In an action for an injury to a passenger upon a street-car, evidence that the car was accustomed to stop at a street crossing before rounding a curve, and that plaintiff had duly signaled for a stop and the bell had rung for the usual stop, but the unusually rapid motion of the car took it past the crossing onto the curve, where it stopped with a lurch, which threw the plaintiff to the ground while preparing to alight, tends to show that the resulting injury was caused by the negligence of the defendant. It was a question for the jury whether the evidence was sufficient for that purpose; and a motion for nonsuit was properly denied. (Babcock v. Los Angeles Traction Co., 173.)

8. INJURY TO PASSENGER—PRIMA FACIE CASE. — When the plaintiff showed that the defendant had assumed to carry him as a passenger upon one of its cars, and that while so being carried he had sustained an injury by reason of the manner in which the car was propelled along its tracks, a *prima facie* case of negligence was established, which, in the absence of any other evidence, entitled him to a recovery. (Id.)

9. CONTRIBUTORY NEGLIGENCE—STARTING TO LEAVE CAR BEFORE FULL STOP—RIGHTS OF PASSENGERS—ABSENCE OF WARNING AGAINST DANGER.—It is not contributory negligence as matter of law for a pas-

NEGLIGENCE (Continued).

senger to start to leave a street-car before it comes to a full stop; and the court cannot withdraw the question of contributory negligence from the jury on the ground that the car had been going rapidly, and that, when stopped, it was rounding a curve, if the passenger had the right to expect the car to stop before reaching the curve, and had not been warned against the danger of being thrown off. (Id.)

10. STANDING UPON OUTER PART OF CAR — PACKAGES — AUTHORIZED BELIEF OF SAFETY.—The street-car company cannot claim that it was contributory negligence for the passenger to stand upon the outer part of the car, after it had assumed to carry him as a passenger, and had not furnished him with any seat. The fact that he had packages in his right hand, and attempted to take hold of the rail with his left hand, in preparing to leave the car, was not necessarily a contributing cause of his injury if he was authorized to believe that he could get off before the curve was reached, and would not need to protect himself against any lurch of the car. (Id.)

11. MASTER AND SERVANT—INJURY TO SERVANT FROM BLASTING—NEGLI-GENCE OF FELLOW-SERVANT—FAILURE OF FOREMAN TO GIVE WARNING.— A foreman employed in a stone quarry, whose duty it was to give warning to servants engaged in preparing a blast in one tunnel in a stone quarry, to come out before other blasts prepared in other tunnels were fired, and whose neglect to give the usual warning caused injury to servants so engaged, is a fellow-servant of those injured, under the rule fixed by section 1970 of the Code of Civil Procedure; and the master who was not negligent in the employment of the foreman is not responsible for his neglect to give the usual warning. (Donovan v. Ferris, 48.)

12. DUTY OF MASTER TO GIVE WARNING — EMPLOYMENT OF COMPETENT SERVANT—VICE-PRINCIPAL.—It is not the duty of a master to give personal warning of danger to persons employed in the business of blasting, and the employment of a competent servant to give them needed warning ends the responsibility of the master. Such a competent servant is not a vice-principal, but a fellow-servant of those to be warned by him, and the question of whether he is a vice-principal should not be left to the jury. (Id.)

13. VIOLATION OF MUNICIPAL ORDINANCE NOT SHOWN. — Where there is nothing in the record to show that the blasts which caused the injury used a quantity of powder in violation of a municipal ordinance, the question of the effect of such violation cannot be considered. (Id.)

14. EVIDENCE—CONTROL OF FOREMAN BY SUPERINTENDENT — CROSS-EX-AMINATION.—Where the foreman was called as a witness for the plaintiff, and had testified in his direct examination that he was employed by the superintendent, and was under his direction,

NEGLIGENCE (Continued).

the allowance of a question by the defendant on cross-examination as to whether the superintendent did or did not have control and authority to direct him, is not erroneous, and if so, would be harmless, as calling for a conclusion which necessarily follows from the testimony in chief. (Id.)

15. MASTER AND SERVANT—DEFECTIVE CAR—CONTRIBUTORY NEGLIGENCE— ASSUMPTION OF RISK—QUESTIONS OF FACT—NONSUIT.—In an action for an injury to the conductor of a defective car negligently used by an electric railway company, where the negligence of the company clearly appeared, and the evidence showed that the conductor had only used the car once before, a week previously, and had only used it one hour on his second trip, when he was injured by a lunging of the defective car, while doing his duty in watching the trolley at a crossing, and there was no evidence that he knew that the car was the same he had previously used, or that he knew it had not been repaired, the conductor cannot be charged with contributory negligence, or with assumption of the risk, as matter of law. These are questions of fact, which should have been submitted to the jury; and it was error to grant a nonsuit. (Murdock v. Oakland, San Leandro, and Haywards Elec. Ry., 22.)

16. REASONABLE TIME FOR COMPLAINT AND FOR REMEDY OF DEFECT— QUESTION OF FACT.—A servant is allowed a reasonable time, in view of the circumstances of the case, in which to complain of a discovered defect in an appliance furnished by the master, and is also justified after complaint made, in continuing work for a reasonable time in expectation that the defect will be remedied; and what, under the circumstances, would be a reasonable time for either purpose is ordinarily a question of fact for the jury. Under the circumstances of this case, it was essentially a question of fact, and not of law. (Id.)

17. NEGLIGENT MODE OF PERFORMING DUTY OF CONDUCTOR—QUESTION OF FACT.—The question whether the mode selected by the conductor for performing the duty imposed upon him of watching the trolley and holding the trolley rope at a crossing to replace it, if it should become displaced, amounted to contributory negligence, is a question of fact alone. The mere fact that, if he had selected another mode of performing his duty, the injury would have been avoided, does not conclusively show contributory negligence, as matter of law. (Id.)

18. NEGLIGENCE OF FELLOW-SERVANT—STARTING CAR WITHOUT BRAKES SET—QUESTION OF FACT.—When the setting of the brakes before the starting of the car was not authorized by the railway company, and was liable to result in damage to the car, and was out of the ordinary way, and was only a partial remedy for the defect in the lunging of the car, and where there is no evidence that the brakes were not set when the car started, at the time of the injury, the question of whether the injury was caused by

NEGLIGENCE (Continued).

the negligence of the motorman, as a fellow-servant, is one of fact for the jury, and not one of law for the court. (Id.)

19. INJURY FROM DEFECTIVE SIDEWALK—INSUFFICIENT COMPLAINT—DUTY TO REPAIR NOT SHOWN.—A complaint for damages for an injury occasioned by the breaking of a rotten plank in the sidewalk in front of the defendant's premises, alleging it to have been in such rotten condition solely by reason of the negligence of the defendants, and further alleging that defendants had notice posted on the part of the city and county of San Francisco of and concerning the rotten condition of the sidewalk, and were advised to repair the same, does not show an obligation of the defendants to repair the sidewalk, under the general street law. (Martinovich v. Wooley, 141.)

20. SIDEWALK PART OF STREET — OBLIGATION OF OWNER TO REPAIR STREET—NOTICE FROM SUPERINTENDENT OF STREETS.—A sidewalk is part of the street. No common-law duty is cast upon the owner of the abutting property to maintain the street in good repair; and no primary or inceptive duty rests upon such owner under the street law to repair the street, and no duty rests upon him under that law until written notice is given by the superintendent of streets requiring him to make the necessary repairs upon the highway fronting his lot. (Id.)

21. LIABILITY OF OWNER FOR INJURIES — NEGLECT TO REPAIR AFTER NOTICE.—The street law does not impose a liability upon the owner for injuries resulting from the nonrepair of the street in front of his lot, unless the defect continues after the lapse of twenty-four hours or more from the time of the giving of the statutory notice by the superintendent of streets requiring him to make the repairs. (Id.)

22. PLEADING—STATEMENT OF FACTS SHOWING LIABILITY — DEFECTIVE AVERMENT.—A complaint, in order to show the liability of the defendants for defects in the street, must aver that the notice to be given by the superintendent of streets had been given and had been disregarded by the owner for the specified time. It is not the equivalent of such an averment, to allege that each of the defendants had notice posted on the part of the city and county of and concerning the rotten condition of the sidewalk, and was advised to repair the same; and a complaint containing such allegation merely is defective, and is the proper subject of a general and special demurrer. (Id.)

See Contract, 3.

## NEGOTIABLE INSTRUMENTS.

1. BILL OF EXCHANGE—DISHONOR BY DRAWEE—ADVANCE BY PAYEE— ACTION AGAINST DRAWER.—The drawer of a bill of exchange, the amount of which has been advanced by the payee, is liable, after notice of dishonor, to an action by the payee to recover back the amount of the money advanced. (London and San Francisco Bank v. Moore, 650.)

NEGOTIABLE INSTRUMENTS (Continued).

2. DEFENSE NOT SUSTAINED—SPECIAL AGENCY OF PLAINTIFF—CERTIFICATE REQUIRED BY LETTER OF CREDIT—BILLS OF LADING AND INVOICES. A defense to such action upon the ground of the plaintiff's representation of its agency is not sustained, where the evidence discloses no other representation than that the plaintiff bank was the special agent of a Melbourne bank which authorized the bill of exchange to be drawn upon its London correspondent, merely for the purpose of giving a certificate, required by a letter of credit in favor of the drawer, that bills of lading and invoices of goods representing the amount of the draft had been forwarded to the manager of the Melbourne bank. The fact that such bills of lading and invoices were delivered by the defendant to the plaintiff bank to be forwarded to such manager as a means of obtaining the certificate from the plaintiff to be sent with the bill of exchange to London is immaterial (Id.)

3. CASHING OF BILL OF EXCHANGE NO PART OF AGENCY.—The cashing of the bill of exchange by the plaintiff bank, at the request of the defendant, was no part of such special agency, and had the same effect as if it had been cashed by any other bank. (Id.)

See Claim and Delivery, 4-9.

NEW TRIAL.

1. ORDER BY COURT OF ITS OWN MOTION — LIMITATION OF TIME — QUERY.—The question raised, but not decided, whether the time within which the superior court can set aside the verdict and grant a new trial of its own motion, for plain disregard of the instructions and the evidence, under section 662 of the Code of Civil Procedure, is limited to that allowed the losing party in which to give notice of intention to move for a new trial, or whether the court may act at any time before judgment is entered upon the verdict. (Mizener v. Bradbury, 340.)

2. DISREGARD OF INSTRUCTIONS OR EVIDENCE MUST BE GROSS.—In order to justify the action of the court in setting aside the verdict of the jury and ordering a new trial of its own motion, it must be made to appear that the jury plainly, palpably, and grossly disregarded either the instructions or the evidence; and if such gross disregard does not appear, the aggrieved party should be left to his remedy under a motion for a new trial, and the order of the court made of its own motion should be reversed. (Id.)

3. ACTION FOR PERSONAL INJURY—HOLES FOR TREES IN SIDEWALK—AUTHORITY OF GARDENER—EVIDENCE AND INSTRUCTION—DISREGARD BY JURY NOT GROSS.—In an action for personal injury from holes for trees dug in a sidewalk by defendant's gardener, in which the verdict was for the defendant, and there was evidence that the gardener acted directly under authority of a boy of thirteen,

NEW TRIAL (Continued).

in the absence of his mother, the defendant, and without her knowledge, direction, or consent, and that the gardener was not permitted during her presence to plant or remove trees without her authority, though he had discretion in other respects, and acted as he thought best during her absence, it cannot be said that the jury grossly disregarded clear and palpable proof that the gardener acted under defendant's authority, or that they grossly disregarded an instruction that the mother was not responsible for the torts of the child, and that if the boy caused the excavation, and defendant did not authorize it, or know of its existence until after the injury, their verdict should be for the defendant. The court should not, in such case, set aside the verdict of its own motion. (Id.)

4. ORDER DENYING NEW TRIAL—ABSENCE OF BILL OF EXCEPTIONS OR STATEMENT—REVIEW UPON APPEAL.—Where the notice of intention to move for a new trial stated that the motion would be made upon a bill of exceptions, and no properly authenticated bill of exceptions or statement of the case was presented to the trial court upon the hearing of the motion, that court was not in a position to review its own action as to alleged errors of law, or as to the insufficiency of the evidence, and the order denying the motion cannot be reviewed upon those grounds upon appeal. (Pereira v. City Sav. Bank, 45.)

5. UNSIGNED "ENGROSSED BILL OF EXCEPTIONS" — INCLUSION OF BILL IMPROPERLY SIGNED—FILING AFTER DECISION OF MOTION.—An instrument purporting to be a bill of exceptions to be used on motion for a new trial, as required by the notice of the motion, which is included in an unsigned "engrossed bill of exceptions," and is signed, not by the judge who tried the cause, but by the judge who passed upon the motion, and is filed with the unsigned engrossed bill, and as part of it, long after the hearing and decision of the motion, cannot be considered upon appeal from an order denying the motion. (Id.)

6. IRREGULARITY OF TRIAL COURT—INSUFFICIENT RECORD.—The alleged irregularity of the trial court, as ground for a new trial, cannot be considered upon appeal when the affidavits or other evidence used upon the hearing of the motion are not incorporated in a bill of exceptions as required by rule 29 of this court, and only one authenticated affidavit appears in the record, without anything to show that there were no counter-affidavits, or that the authenticated affidavit constituted the only evidence taken with reference to such irregularity. (Id.)

7. ORDER GRANTING NEW TRIAL—RECORD UPON APPEAL—SPECIFICATIONS.—Upon appeal from an order granting a motion for a new trial, the sole object of the appeal is to determine whether the court erred in granting the motion on the record made up by the moving party in respect of any one or all of the grounds specified by him. There can be no other record upon such an

NEW TRIAL (Continued).

appeal than that made up by the moving party; and no specifications are required to be made by the appellant. (Byxbee v. Dewey, 322.)

8. Review upon Appeal from Order — Pleadings—Claim and Delivery — Insufficient Complaint.—Upon appeal from an order granting a new trial in an action of claim and delivery, the insufficiency of the complaint to state a cause of action, or to support the judgment, for want of an averment of ownership or right of possession of the plaintiff at the time the action was commenced, is not open to review, and cannot be considered. The appeal involves only such matters as were presented on the motion for a new trial. (Id.)

9. Review of Grounds of Motion — Silence of Order.—An order granting a new trial, which is silent as to the grounds or reasons upon which it is based, must be presumed to have been made upon any valid ground upon which it can be sustained, which was specified by the moving party. (Id.)

10. Verdict—Insufficiency of Evidence — Conflicting Evidence — Duty of Trial Judge.—If the trial judge is not satisfied with the verdict of the jury, it is his duty to grant a new trial for insufficiency of the evidence to justify the verdict; and he is not bound by the rule of conflicting evidence in passing upon the motion. (Id.)

11. Order Consistent with Decision upon Former Appeal—Validity of Sale of Personal Property—Want of Delivery and Change of Possession.—Where the principal question of fact related to the validity of a sale of the personal property involved in the action to the defendant, and the evidence was substantially the same as that considered by this court upon a former appeal, upon which it was held that the evidence did not show an immediate delivery and actual and continued change of possession, as required by section 3440 of the Civil Code, an order granting a new trial, in harmony with the view of the evidence taken by this court, should be affirmed. (Id.)

12. Statement—Insufficient Specifications.—In a statement on motion for a new trial, specifications of insufficiency of the evidence to justify the findings and decision of the court, made in the form "that the court erred in finding" as set forth in the words of an entire finding repeated in the statement, "but, on the contrary, the court should have found" other facts stated, favorable to the moving party, fail to comply with the requirement of section 659 of the Code of Civil Procedure, that the statement shall specify the particulars in which the evidence is alleged to be insufficient; and such specifications are not entitled to be considered on the hearing of the motion. (Taylor v. Bell, 306.)

13. Review of Order upon Appeal—Argument—Errors of Law not Urged.—When the appellant does not urge the errors of law specified

NEW TRIAL (Continued).

in the statement on motion for new trial in his argument or points and authorities upon appeal from the order denying the motion, the court will not seek to discover any error therein. (Id.)

14. ORDER GRANTING NEW TRIAL—REVIEW UPON APPEAL—SUFFICIENCY OF COMPLAINT AND FINDINGS.—Upon appeal from an order granting a new trial, as well as from an order denying a new trial, this court cannot consider the sufficiency either of the complaint or of the findings to support the judgment. (Rauer v. Fay, 523.)

15. ERRONEOUS ORDER—INSUFFICIENT SPECIFICATIONS IN STATEMENT—TRUTH OF DEFENSES ESTABLISHED—IMMATERIALITY OF OTHER FINDINGS.—Where the plaintiff's statement on motion for a new trial does not specify the insufficiency of the evidence to sustain affirmative defenses set up in the answer which the court has found to be true, the truth of such defenses is established, and if either of them is a sufficient defense, an order granting a new trial is erroneous. In such case it is immaterial whether the court found against the evidence in favor of the denials of the answer to the allegations of the complaint. (Id.)

16. STATEMENT—INSUFFICIENT SPECIFICATION.— A specification in the statement on motion for a new trial that "the evidence is wholly insufficient to justify or sustain said verdict, and, on the contrary, the evidence shows that said verdict should have been in favor of the petitioners," is insufficient as a specification, and the objection to the insufficiency of the evidence must be disregarded. (In re Strock, 658.)

17. NEWLY DISCOVERED EVIDENCE — NEGLECT TO APPLY FOR CONTINUANCE.—A new trial cannot be granted for newly discovered evidence which was not in fact newly discovered, and the importance of which was fully known to the defendant making the motion before the trial, merely because the whereabouts of the witness was not known or discovered by the defendant at the time of the trial. In such case, the defendant should have moved for a continuance, and,· failing to do so, the trial was entered upon at the defendant's peril. (Scanlan v. San Francisco etc. Ry. Co., 586.)

See Appeal, 7, 10, 14, 16, 18, 24, 25; Criminal Law, 14; Divorce; Judgment.

NOTICE. See Growing Crops, 1, 2.

NUISANCE.

1. MAINTENANCE OF DITCH DIVERTING SURFACE WATERS—INJURY TO STREETS—ACTION BY TOWN.— The maintenance of a ditch by the owner of land which diverts surface waters from their natural flow, by means whereof the waters are forced and thrown violently into the streets of the town, and have been cutting down the gutters thereof and otherwise injuring the same, is a

NUISANCE (Continued).

nuisance, which the town may sustain an action to abate. (Town of Cloverdale v. Smith, 230.)

2. FINDINGS — INJURY BY DITCH—NONCONSTRUCTION BY DEFENDANT—OMISSION TO FIND AS TO MAINTENANCE — APPEAL—REVERSAL OF JUDGMENT.—Where the court in such action found that the ditch caused the injury complained of, but that the defendant did not construct the ditch, and rendered judgment for the defendant, the omission to find upon the material issue presented by the pleadings as to whether the defendant maintained the ditch is ground for reversal of the judgment upon appeal, and for ordering a new trial. (Id.)

3. IMPROVEMENT OF CITY PROPERTY — INAPPLICABLE RULE—CONDUCTING WATER UPON LAND.—The rule applicable to the improvement of city property, permitting the damming up of the outlet of surface water not assuming the form of a running stream, has no application in a case where the water is actually conducted by means of a ditch upon other land to its injury. (Id.)

4. RULE OF NUISANCE.—That the maintenance of such a ditch is the maintenance of a nuisance was the rule both of the common law and of the civil law, and is the rule prevailing in this state, as well in cities of every class, as in the country. (Id.)

5. NOTICE OF NUISANCE—DEMAND AND REFUSAL TO FILL UP DITCHES—ADMISSION OF ANSWER.—That defendants had notice of the nuisance appears by a failure of the answer to deny an allegation of the complaint that the plaintiff town had demanded of the defendants that they fill up the ditches over their land and that they had refused to do so. Such demand was sufficient to put the defendants on inquiry as to the injury done to the town by the ditch, and their refusal obviated the necessity of further notice that the maintenance of the ditch was a nuisance to the town. (Id.)

6. VALIDITY OF ORDINANCES IMMATERIAL.—The validity of any ordinances of the town is immaterial to the determination of the question whether the defendants are maintaining a ditch which diverts surface water into the streets to the injury of the town. If so, the ditch constitutes a nuisance which the town is entitled to have abated under the general law, irrespective of city ordinances. (Id.)

7. EVIDENCE—JUDGMENT-ROLL IN ANOTHER SUIT—DIFFERENT PARTIES. A judgment-roll in another suit between the town and other parties cannot bind or estop the defendants, and is not admissible in evidence against them. (Id.)

8. REMEDY OF TOWN TO ABATE PUBLIC NUISANCE—LACHES—STATUTE OF LIMITATIONS.—The remedy of a town to abate a continuous public nuisance cannot be barred by laches, nor by the statute of limitations. (Id.)

9. NOXIOUS GASES FROM CREAMERY — PRIVATE ACTION.—A nuisance arising from noxious gases emitted from the sour and putrid

NUISANCE (Continued).

refuse of whey, milk, and debris permitted to accumulate and stand in tanks by the defendant as the owner of a creamery, to the detriment of the plaintiff as a near neighbor, though also injurious to other neighbors more remote, may be abated at suit of the plaintiff as being as to him a private nuisance. (Fisher v. Zumwalt, 493.)

10. PRIVATE ACTION FOR PUBLIC NUISANCE—PRIVATE NUISANCE—MULTIPLICITY OF SUITS.—Although a nuisance may be public, that fact does not deprive an individual of an action, iif, as to him, the nuisance is private, and obstructs the free use and enjoyment of his private property. A nuisance, the effect of which extends to the dwellings or places of business of other persons to such an extent as to render their occupancy materially uncomfortable, is a private nuisance as to each of them, for which each one thus injured may have a private action, though there are many persons thus affected, and the result will be to promote a multitude of suits. (Id.)

OATHS.

1. PLEADING—VERIFICATION BEFORE DISTRICT ATTORNEY.—A district attorney has general authority to administer and certify oaths, under sections 1028, 4103, and 4118 of the Political Code, and may take and certify the verification of a pleading to be used in the superior court. (Haile v. Smith, 415.)

2. CONSTRUCTION OF CODES—PROVISION NOT EXCLUSIVE, BUT CUMULATIVE.—Section 2012 of the Code of Civil Procedure, providing that "an affidavit to be used before any court, judge, or officer of this state may be taken before any judge or clerk of any court, or any justice of the peace or notary public in this state," is not to be deemed exclusive of the power conferred by the Political Code upon the district attorney; but the provisions of the two codes are to be deemed cumulative. (Id.)

3. GENERAL AUTHORITY "TO ADMINISTER AND CERTIFY OATHS."—Where a general authority is given to an officer "to administer and certify oaths," that authority cannot be limited by judicial construction to particular kinds of oaths, and must be held to extend to the verification of pleadings. (Id.)

OFFICE AND OFFICERS.

COUNTY GOVERNMENT ACT—COMPENSATION OF ASSISTANT DISTRICT ATTORNEY—CONSTITUTIONAL LAW—CLASSIFICATION OF COUNTIES.—Subdivision 36 of section 25 of the County Government Act, conferring power upon the supervisors to authorize the district attorney to appoint an assistant, who shall receive a compensation of fifteen hundred dollars per annum, to be paid out of the county treasury, is unconstitutional and void, as being in violation of the mandatory provisions of section 5 of article XI of the constitution, which requires the compensation of all

OFFICE AND OFFICERS (Continued).

county and township officers to be adjusted in accordance with their respective duties, under a classification of counties by population made for that purpose. (Knight v. Martin, 245.)

See Oaths.

ORDINANCE. See Municipal Corporations; Negligence, 13; Nuisance, 6.

PARTIES.

1. Action to Quiet Title—Transfer of Interest After Judgment—Substitution of Parties—Construction of Code.—After the rights of the parties in an action to quiet title have been finally ascertained and determined, and judgment thereon entered, a transferee of the interest of the successful party takes the same subject to the judgment and with all of its protection; and the provision of section 385 of the Code of Civil Procedure, allowing the transferee of a cause of action to be substituted in the action, is inapplicable. That section relates to a transfer of interest made before the entry of judgment in the action. (Emerson v. McWhirter, 268.)

2. Permissive Statute—Discretion.—The provision of section 385 of the Code of Civil Procedure that "the court may allow the person to whom the transfer is made to be substituted in the action or proceeding" is permissive; and the discretion of the court in making the order is to be exercised in view of all the circumstances attending the application. (Id.)

3. Substitution upon Appeal — Identity of Attorney—Denial of Motion.—Where the assignee of the successful party, who had purchased his interest after judgment, moved to be substituted in his stead upon appeal, and the motion showed that the attorney for the respondent was the attorney both for the original party and for the party moving for the substitution, there is no occasion for making the order, and the motion should be denied. (Id.)

See Attorney and Client, 9; Estates of Deceased Persons, 8, 9; Specific Performance.

PARTITION. See Insolvency, 16.

PARTNERSHIP. See Pleading, 8.

PARTY-WALL. See Coterminous Owners, 3.

PLACE OF TRIAL.

1. Change of Place of Trial—Disqualification of Judge—Transfer to "Nearest" or "Most Accessible" Court.—In case of the disqualification of a judge by reason of his interest in the subject matter of the action, he is in duty bound to transfer the cause